Michael E Carey
150 Big Pine Lane
Jersey Shore, PA, 17740
570-974-1227



FILED '24 MAY 20 PM 1:58
CLERK, US COURT, PSMB

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------------------------------------x

IN RE:                                   Case No. **4: 23-bk-02191-MJC**

MICHAEL E CAREY,                         Chapter 13

              Debtor.          Judge: Mark J Conway

------------------------------------------------------------x

MICHAEL E CAREY,

            Debtor/Movant,

vs.

TOWD POINT MORTGAGE TRUST 2020-1;
US BANK NATIONAL ASSOCIATION AS
INDENTURE TRUSTEE; SELECT PORTFOLIO
SERVICING, INC; KML LAW GROUP, PC;
ROBERTSON, ANSCHUTZ, SCHMIED,
CRANE & PARTNERS, PLLC, JACK N
ZAHAROPOULOS, ESQ; US DEPARTMENT
OF JUSTICE,

Alleged Secured Creditor & Respondents,

------------------------------------------------------------x

   MOVANT'S MICHAEL E CAREY'S NOTICE OF MOTION AND CERTIFICATION
FOR AN (1) **ORDER TO CLASSIFY AND DECLARE** ALLEGED PROOF OF CLAIM
DEBT AS AN **UNSECURED DEBT,** *FURTHER,* TO (2) **ORDER** THE ALLEGED
MORTGAGE/SECURITY INSTRUMENTS AS **VOID AND NULL,** AND *FURTHER,*

1

FOR AN (3) **ORDER** MONTHLY LOAN **ACCOUNT STATEMENTS** FROM THE SERVICER SELECT PORTFOLIO SERVICING, INC, WHICH MATCHES THE **4 PAGES OF ACCOUNTING SPREAD SHEETS** FILED IN THE PROOF OF CLAIM, AND *FURTHER,* FOR AN (4) **ORDER** TO **NULLIFY** THE FILED PROOF OF CLAIM BY COUNSEL **BRIAN C NICHOLAS, ESQ** KML LAW GROUP, PC AND *FURTHER,* FOR AN (5) **ORDER** WARNINGS TO COUNSELS OF KML LAW GROUP. PC, ROBERTSON, ANSCHUTZ, SCHMIED, CRANE, AND PARTNERS, PLLC AND US CHAPTER 13 TRUSEE JACK N ZAHAROPOULOS ESQ NOT TO MAKE FALSE STATEMENTS NOR BE BIASED OR PREJUDICED AND FOLLOW ETHICAL PROCEDURES, LAWS, AND RULES, AND *FURTHER* (6) AN **ORDER** TO **PRODUCE THE ORIGINAL NOTE** FOR **INSPECTION** PUSUANT TO **UCC 3 -501,** AND *FURTHER,* ANY **ORDER** AS THE COURT SEEMS JUST AND PROPER

**Please take Notice**, that the undersigned Michael E Carey is moving before Honorable Judge Mark J Conway US Bankruptcy Judge, Middle District of Pennsylvania, Williamsport Division at 197 South Main Street, Room 274, Wilkes-Barre, Pennsylvania, 18701 on June 26, 2024, at 10:00 AM for Objecting the Proof of Claim No 3:

1) Order to classify and declare No 3 Proof of Claim Debt as unsecured.
2) Order Mortgage/Security Instruments as void and null.
3) Order Select Portfolio Servicing Inc to produce monthly loan account statements matching with the 4 pages of accounting spread sheets.
4) Order to nullify/strike/void the No 3 Proof of Claim.
5) Order and Give a Warnings to Counsels of KML Law Group PC, Robertson, Anschutz, Schmied, Crane, & Partners, PLLC, and Jack N Zaharopoulos Esq Chapter 13 Standing Trustee to comply with the Ethics Laws, Rules, and not being self-serving, biased, prejudiced pursuant to the American Bar Association

2

6) Order the Creditor Towd Point Mortgage Trust 2020-1, US Bank National Association as Indenture Trustee, Select Portfolio, Inc, and all successors, third Parties, Public, to provide for inspection the original Note within 14 days before this Court, the Movant/Debtor, certified Handwriting Expert, which includes that by failure to provide for inspection the original signed Note by Michael E Carey, the Court would enter an order that Creditor lost its interest in the secured loan and/or the debt is declared only as a unsecured debt, and/or the loan is void and null, and/or as this court seems just and proper.

**Further,** if any Party intends to object to this Motion, it must do so on or before June 12, 2024, by filing pleadings with the Court and the undersigned Michael E Carey.

Respectfully Submitted

Dated: May 16, 2024

_____

Michael E Carey

Michael E Carey
150 Big Pine Lane
Jersey Shore, PA, 17740
570-974-1227

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------x

IN RE:                          Case No. **4: 23-bk-02191-MJC**

MICHAEL E CAREY,              Chapter 13

             Debtor.           Judge: Mark J Conway

---------------------------------------------------------x

MICHAEL E CAREY,

             Debtor/Movant,

vs.

TOWD POINT MORTGAGE TRUST 2020-1;
US BANK NATIONAL ASSOCIATION AS
INDENTURE TRUSTEE; SELECT PORTFOLIO
SERVICING, INC; KML LAW GROUP, PC;
ROBERTSON, ANSCHUTZ, SCHMIED,
CRANE & PARTNERS, PLLC, JACK N
ZAHAROPOULOS, ESQ; US DEPARTMENT
OF JUSTICE,

Alleged Secured Creditor & Respondents,

---------------------------------------------------------x

**MOVANT'S MICHAEL E CAREY'S CERTIFICATION OF AN NOTICE OF
MOTION FOR AN (1) ORDER TO CLASSIFY AND DECLARE ALLEGED PROOF
OF CLAIM DEBT AS AN UNSECURED DEBT, *FURTHER*, TO (2) ORDER THE
ALLEGED MORTGAGE/SECURITY INSTRUMENTS AS VOID AND NULL, AND**

4

**FURTHER, FOR AN (3) ORDER MONTHLY LOAN ACCOUNT STATEMENTS FROM THE SERVICER SELECT PORTFOLIO SERVICING, INC, WHICH MATCHES THE 4 PAGES OF ACCOUNTING SPREAD SHEETS FILED IN THE PROOF OF CLAIM, AND FURTHER, FOR AN (4) ORDER TO NULLIFY THE FILED PROOF OF CLAIM BY COUNSEL BRIAN C NICHOLAS, ESQ KML LAW GROUP, PC AND FURTHER, FOR AN (5) ORDER WARNINGS TO COUNSELS OF KML LAW GROUP. PC, ROBERTSON, ANSCHUTZ, SCHMIED, CRANE, AND PARTNERS, PLLC AND US CHAPTER 13 TRUSEE JACK N ZAHAROPOULOS ESQ NOT TO MAKE FALSE STATEMENTS NOR BE BIASED OR PREJUDICED AND FOLLOW ETHICAL PROCEDURES, LAWS, AND RULES, AND FURTHER (6) AN ORDER TO PRODUCE THE ORIGINAL NOTE FOR INSPECTION PUSUANT TO UCC 3 -501, AND FURTHER, ANY ORDER AS THE COURT SEEMS JUST AND PROPER.**

Movant/Debtor Objecting the No 3 Proof of Claim, the Movant/Debtor states the following to be true:

*Facts:*

1. Debtor/Movant filed for bankruptcy protection under chapter 13 on 9/25/2023.

2. Debtor/Movant knew that the alleged secured creditor Towd Point Mortgage Trust 2020-1 have US Bank National Association as Indenture Trustee.

3. Further, Debtor/Movant knew that Select Portfolio Servicing Inc was the servicer for the loan.

4. Further, Debtor/Movant knew that there are deficiencies and effectiveness in the alleged loan and in its accounting.

5. On August 12, 2023, Debtor/Movant sent to Select Portfolio Servicing, Inc; Towd Point Mortgage Trust 2020-1; US Bank NA as Indenture Trustee a certified mail under 15 U.S.C. Section 1692 – 1692p Fair Debt

5

Collection Practices Act (FDCPA) and under UCC 3-501 Uniform Commercial Code.

6. Under the FDCPA Notice to Lender dated August 12, 2023, the Lender and its Servicer failed to properly verify the alleged debt. **Exhibit A**

7. The verification and responses from the Servicer were vague and the accounting based on unverifiable supporting documents.

8. In addition, under the Uniform Commercial Code 3-501 the Lender and Servicer failed the presentation of the original Note and original Mortgage to this date. The UCC Code also states that if Lender, Servicer are unable to furnish the original Note and original Mortgage for inspection, the Borrower is empowered to withheld mortgage payments until the Lender fulfills the Borrower's Requests/Demands.

9. Debtor/Movant initiated its own investigation regarding the alleged Mortgage Loan Document which emerged the following after the Proof of Claim was filed with this Court:

10. On August 24, 2009, a Home Equity Line of Credit Agreement was executed and signed for $39,000.00 in favor to Sovereign Bank.

**11.** Below under titled Home Equity Line of Credit Agreement is written "Premises Secured by Mortgage Loan Agreement" for the address 150 Big Pine Lane, Jersey Shore, PA, 17740. The whole document from page 1 to page 8 does not state the word or wordings "Note". **Exhibit B**

12. The "Note" for this Home Equity Line of Credit Agreement was transferred dated 10/30/2019 through an "Allonge" Instrument by Santander Bank National Association formerly known as Sovereign

Bank of Reading PA to the next successor in due course without any name. The Instrument shows clearly stating that the Instrument is the "Allonge to the Note" executed and signed by Michael E Carey on 8/24/2009 for $39,000.00. The Document is signed by Erica S Hofmann, Vice President for Santander Bank. **Exhibit C**

13. Sovereign Bank changed its name to Santander Bank on October 17, 2013. **Exhibit D**

14. On August 24, 2009, was executed and signed an Home Equity Line of Credit Open end Mortgage was signed in the amount of $39,000.00. **Exhibit E**

**15.** On June 26, 2020, a Corporate Assignment was executed from Santander Bank, NA formerly known as Sovereign Bank by Select Portfolio Servicing, Inc, its attorney in fact to transfer the Mortgage/Security Instrument to Mortgage Electronic Registration Systems, Inc (MERS) as Mortgagee, as Nominee for Towd Point Mortgage Trust 2020-1, US Bank National Association as Indenture Trustee, its Successor and Assigns. Said Assignment is defective because it is executed, signed by the Successor, Buyer, Servicer, instead of Seller or its authorized representative. It appears that the Signers and Notary are employed by Select Portfolio Servicing Inc and are using well known "Robo Signers and Robo Notaries". In addition, MERS has never been named in the original Home Equity Line of Credit Agreement or Mortgage filed in the County as the Mortgagee/Nominee for the Loan. **Exhibit F**

16.     On January 5, 2023, another Corporate Assignment of Mortgage had been executed from Mortgage Electronic Registration Systems, Inc (MERS) as Mortgagee, as Nominee for Towd Point Mortgage Trust 2020-1, US Bank National Association as Indenture Trustee, it Successor and Assigns to Firstkey Mortgage LLC c/o Select Portfolio Servicing, Inc. Again, this instrument was executed and signed and notarized by employees of Select Portfolio Servicing, Inc. As above under No. 15 Robo Signers and Robo Notaries were used. **Exhibit G**

17.     The same day on January 5, 2023, another Corporate Assignment of Mortgage was executed from Firstkey Mortgage LLC c/o Select Portfolio Servicing, Inc. to Towd Point Mortgage Trust 2020-1, US Bank National Association as Indenture Trustee. Again, Robo Signers and Notaries and employees from Select Portfolio Servicing, Inc executed signed and notarized the instrument. **Exhibit H**

18.     On April 11, 2014, Borrower Michael E Carey signed a notarized Santander Home Loan Modification Agreement, Santander Bank, NA signed and notarized the same Agreement on April 14, 2014. The Modification Agreement under No. 3 becomes modified on 3/31/2014 and the 1st payment is due on 4/30/2014. **Exhibit I**

19.     Said Modification Agreement is invalid because Santander Bank National Association referenced the Instrument to a Mortgage and a Note, and the Note has never been executed or existed.

20.     On December 4, 2023, Counsel Brian C Nicholas from KML Law Group PC filed a Proof of Claim. The proof of Claim is naming Towd Point

Mortgage Trust 2020-1, US Bank National Association as Indenture Trustee as a Secured Creditor. **Exhibit J**

21.      Debtor/Movant is objecting and questioning the Creditor's Status as a Secured Creditor. Further Debtor/Movant is questioning the accuracy of the accounting of the Home Equity Line of Credit Account.

**22.**      On October 19, 2019, Santander Bank NA Vice President Cindy L Yocum executed and signed an Affidavit of Lost Note. **Exhibit K**

23.      Said Document is not credible it states that on August 24, 2005, was executed and signed a certain Mortgage Note. The Date is wrong, and there is no Mortgage Note.

24.      Debtor/Movant never signed any Note Instrument. No Note Instrument ever existed. The Note Instrument is the Collateral for Real Estate or Property. The Mortgage is the Security Instrument for the Note. A Mortgage without a produced and/or but executed signed Note or Lost Note Affidavit or available or not may be enforced, while a never executed signed Note cannot be enforced through a Mortgage.

25.      It is evident that several individuals working for the successor, servicer committed spoliation of documents for a Note which was never been executed signed or existed.

26.      Lawyers represent their clients; they are not here to file Proof of Claim for their Clients. A lawyer filing a Proof of Claim is unethical. The lawyer does not work and/or is employed by their client and the lawyer is no officer of the entity filing a Proof of Claim. The lawyer cannot represent its client because the lawyer becomes a co-party to the party that is obligated to file the Proof of Claim.

9

27.     Since this bankruptcy started the Movant/Debtor noticed that the US Chapter 13 Standing Trustee Jack N Zaharopoulos Esq is targeting solely the Debtor. It is the Movant/debtor's understanding that the Chapter 13 Standing Trustee and the US Justice Department must review filings of Proof of Claims especially the ones which have concerns of Legal Standings in US Bankruptcy Court. During the last months it appeared that the US Trustee did work and filings for the alleged creditor, which filed dubious defective, may fraudulent or spoiled supporting documents in this Court. Especially. After the Movant/Debtor filed various pleadings and Adversary Proceedings mentioning those defects, etc. Movant/Debtor believes that certain filings should have been filed by the alleged secured creditor's attorney not the US Trustee.

28.     Movant/Debtor incorporates the Adversary Complaint in this Motion.


_Conclusion:_

Pursuant to all those facts mentioned above from No. 1 to No. 28, the Movant/Debtor rests his case knowing that all facts are based on documents and documents state the truth. The Core Question here is the inexistence never executed and signed Note, which nullifies all Mortgages or Security Instruments. Clearly it would be different if the Note was lost or a Note would exist, then an Affidavit of Lost Note could be executed. Only the fact that the Creditor comes into this Court asserting an Affidavit of a

Lost Note, when NO NOTE ever never existed or has never been executed and signed is a sign of incompetence by the original Lender and its successors, which showed more incompetence, negligence, etc. in executing, storing, accounting, servicing the Movant/Debtor's Loan Account. Naturally falsifying business records or spoliation of business records are surely being made with this Account and debtor as a Victim.

**Wherefore**, Movant/Debtor requests Orders from this Court for:

a) Order to classify and declare No 3 Proof of Claim Debt as unsecured.

b) Order Mortgage/Security Instruments as void and null.

c) Order Select Portfolio Servicing Inc to produce monthly loan account statements matching with the 4 pages of accounting spread sheets.

d) Order to nullify/strike/void the No 3 Proof of Claim.

e) Order and Give a Warnings to Counsels of KML Law Group PC, Robertson, Anschutz, Schmied, Crane, & Partners, PLLC, and Jack N Zaharopoulos Esq Chapter 13 Standing Trustee to comply with the Ethics Laws, Rules, and not being self-serving, biased, prejudiced pursuant to the American Bar Association

f) Order the Creditor Towd Point Mortgage Trust 2020-1, US Bank National Association as Indenture Trustee, Select Portfolio, Inc, and all successors, third Parties, Public, to provide for inspection the original Note within 14 days before this Court, the Movant/Debtor, certified Handwriting Expert, which includes that by failure to provide for inspection the original signed Note by Michael E Carey, the Court

would enter an order that Creditor lost its interest in the secured loan and/or debt is declared only as a unsecured debt, and/or the loan is void and null, and/or as this court seems just and proper.

Respectfully Submitted

Dated: May 16, 2024

Michael E Carey

FORM C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN THE MATTER OF:
MICHAEL E CAREY

|  |  |  |
|---|---|---|
| ) | Chapter: | 13 |
| ) |  |  |
| ) | Case Number: | 4:23-bk-2191-MJC |
| ) |  |  |

DEBTOR(S)

## CERTIFICATE OF SERVICE

I certify that I am more than 18 years of age and that on <u>05/16/2024</u>, I served a copy of MOTION TO OBJECT CREDITOR'S TOWD POINT MORTGAGE TRUST 2020-1 PROOF OF CLAIM on the following parties in this matter:

| *Name and Address* | *Mode of Service* |
|---|---|
| 1. JACK N ZAHAROPOULOS ESQ, CH 13 STANDING TRUSTEE, 8125 ADAMS DRIVE, SUITE A, HUMMELSTOWN, PA, 17036 | REGULAR MAIL 5/16/2024 |
| 2. KML LAW GROUP, PC, 701 MARKET STREET, SUITE 5000, PHILADELPHIA, PA, 19106 | REGULAR MAIL 5/16/2024 |
| 3. ROBERTSON, ANSCHUTZ, SCHMIED, CRANE & PARTNERS PLLC, 13010 MORRIS ROAD, SUITE 450, ALPHARETTA, GA, 30004 | REGULAR MAIL 5/16/2024 |
| 4. MERRICK BANK, PO BOX 9201, BETHPAGE, NY, 11804 | REGULAR MAIL 5/16/2024 |
| 5. US BANK NA AS INDENTURE TRUSTEE OF THE TOWD POINT MORTGAGE TRUST 2020-1 C/O SELECT PORTFOLIO SERVICING INC, PO BOX 65250, SALT LAKE CITY, UT 84856 | REGULAR MAIL 5/16/204 |
| 6. CAPITAL ONE BY AMERICAN INFOSOURCE AS AGENT, 4515 NORTH SANTA FEE AVENUE, OKLAHOMA CITY, OK, 73118 | REGULAR MAIL 5/16/2024 |
| 7. SELECT PORTFOLIO SERVICING, INC, PO BOX 65250, SALT LAKE CITY, UT, 84856 | REGULAR MAIL 5/16/202 |
| 8. TOWD POINT MORTGAGE TRUST 2020-1 C/O SELECT PORTFOLIO SERVICING, INC PO BOX 65250, SALT LAKE CITY, UT, 84856 | REGULAR MAIL 5/16/2024 |
| 9. TOWD POINT MORTGAGE TRUST 2020-1, 900 3RD AVENUE, SUITE 50, NEW YORK, NY, 10022 | R4EGULAR MAIL 5/16/2024 |

I certify under penalty of perjury that the foregoing is true and correct.

Date: <u>5/16/2024</u>

Name: s/ *Michael E Carey*
*Printed Name of Attorney*
Address: MICHAEL E CAREY

150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Revised: 03/22/05

# Exhibit A

Michael E Carey                                    August 12, 2023
150 Big Pine Lane
Jersey Shore, PA, 17740                            *Exhibit A*
570-974-1227


To: (certified mail)

SPS                                        U.S. Bank National Association as
Select Portfolio Servicing, Inc            Indenture Trustee  c/o SPS
P.O. Box  65250                            P.O. Box 65250
Salt Lake City, UT, 84165-0250             Salt Lake City, UT, 84165-0250

US Bank NA as Indenture Trustee            Towd Point Mortgage Trust 2020-1
of the Towd Point Mortgage Trust           900 3rd Avenue
2020-1 c/o SPS or Select Portfolio         Suite 50
Servicing, Inc.,                           New York, NY, 10022-4728
P.O. Box 65250
Salt Lake City, UT, 84165-0250


## Re: Account Number 00277522937; Your Notice referring Account to an attorney for legal action – Acceleration of the Alleged Debt


## *NOTICE*


Dear Servicer, Real Party of Interest,


Pursuant to the State of Utah official records, your Entity (SPS) is a Debt Collector. Pursuant to 15 U.S.C. Section 1692 – 1692p the undersigned contest the debt shown on the 7/13/2023 Mortgage Statement. Therefore, I request complete proof, evidence of the debt as the Note and the Mortgage or Deed of Trust and all Transfer Documentations from the Vendor Dovenmuehle Mortgage, Inc named

1

allegedly as original lender and Santander Bank, N.A. to US Bank N.A. as Indenture Trustee of the Towd Point Mortgage Trust 2020-1 c/o SPS (Select Portfolio Servicing, Inc.

There is some major defectiveness with the alleged mortgage loan, which SPS is currently holding servicing or owning, but it seems that according to records that Towd Point Mortgage Trust 2020-1 is the holder for the Trust Bondholders and US Bank, N.A. is the Indenture Trustee for the Bondholders.

There also emerged issues regarding SPS legal standing and SPS ethics and conflict of interest regarding the servicing or as the holder/owner/etc. of the loan.

Research in the Lycoming County Record Office indicates that no mortgage, nor any assignments were recorded. I request copies of those assignments and other documents recorded related to this loan account.

Research was made in the States of Pennsylvania, New York and Utah regarding entities involved in this loan account. The outcome was not satisfactory.

I believe that certain provisions of laws were violated as TILA. RESPA, etc.

I would like to schedule and pursuant to UCC 3-501 (Uniform Commercial Code) to inspect the original Note and original Mortgage or Deed of Trust as soon as possible in the presence of a certified Handwriting Expert.


Respectfully Submitted


_____

Michael E Carey

2

# Exhibit B



# Sovereign Bank

*Exhibit B*

| HOME EQUITY LINE OF CREDIT AGREEMENT ("Agreement") | Date: AUGUST 24, 2009 |
| --- | --- |
| [X] New Agreement [ ] Amendment | |
| Borrower: MICHAEL E CAREY | |
| Borrower: | Credit Limit: $ 39,000.00 |

| "Premises" Secured by Mortgage/Loan Security Agreement: |
| --- |
| 150 BIG PINE LANE , JERSEY SHORE, PA 17740 |

| Lot/Book/Volume: | Block/Page: | City Register File #: |
| --- | --- | --- |

We, Sovereign Bank, its successors and assigns, have approved your application for a new Home Equity Line Of Credit Account ("Account") or for an amendment to your existing Account. You, the person(s) who sign(s) as Borrower(s) below, may obtain advances charged to your Account up to your Credit Limit shown above. Under certain circumstances, we can: (1) terminate your Account, require you to pay us the entire outstanding balance in one payment, and charge you certain fees; (2) refuse to make additional extensions of credit; and (3) reduce your Credit Limit. These circumstances are described in the paragraph labeled "Our Absolute Obligation to Make Advances" which begins on Page 3.

**DEFINITIONS:** As used in this Agreement (unless the context requires otherwise): "Annual Percentage Rate" means the annualized cost of the advances charged to your Account as the result of applying a Periodic Rate to your daily Account balances each billing cycle, "Finance Charge" means the dollar amount the advances charged to your Account will cost you, "New Balance" means the sum of the advances charged to your Account and our charges at the end of the billing cycle, "Periodic Rate" means the cost of the advances charged to your Account as a daily rate, and "Statement" means the monthly statement of our charges for your use of the Account.

**ADDITIONAL DEFINITIONS:** "New Agreement" – if the "New Agreement" box above is checked, this Agreement is for a new Account. "Amendment" – if the "Amendment" box above is checked, this Agreement amends your existing Account.

**AMENDMENT:** If this Agreement is an amendment to your existing Account, the terms and conditions of your existing Account are amended as provided in this Agreement. This Agreement does not extinguish your existing agreement or Account. This Agreement amends your existing Account and agreement to the extent of the provisions contained in it, such as the applicable Annual Percentage Rate, the Margin and Index applied to determine the rate, the computation of the Finance Charge, all other Fees and Charges, as well as the other terms set forth in this Agreement. This Agreement may also amend your Account to add a Fixed Rate Lock Conversion Option, which is described below. In the event of any conflict in terms between this Agreement and your existing agreement, the terms and conditions of this Agreement will control.

**TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges for your Account.

**CREDIT LIMIT:** This Agreement covers a revolving line of credit for the principal amount specified above as your "Credit Limit" under this Agreement. If this Agreement amends your Credit Limit, then the Credit Limit shown above is the combined amount of the Credit Limit under your existing agreement and any increase or decrease, as applicable, in your Credit Limit resulting from this amendment. You may borrow against this line of credit, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit during the Draw Period described below. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain an advance that will make your Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Account exceeds your Credit Limit, even if we have not yet billed you. While we are processing any payment you make and before we have posted that payment to your Account, your Credit Limit may not reflect that payment. In addition, we do not have to post a payment to your Account if we have reason to believe that the check or other instrument you sent to us as payment will not be honored. We may also delay reinstating your Credit Limit for the amount of any principal payment you make until we reasonably believe that the instrument you used to make your payment has been paid.

**ADVANCES & TERM:** Unless extended by amendment, the length of the period of time during which you can obtain advances on your Account is Ten (10) years and is referred to in this Agreement as the "Draw Period". If this Agreement is an amendment, your current Draw Period will be extended to . You can obtain advances during the Draw Period by drawing one of the special checks that we will supply to you to directly obtain advances on your Account. Or, you can use any instrument or device that we may later provide to you to access your Account. You may not obtain an advance on your Account to pay the Minimum Payments due on your Account.

After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain advances on your Account. The length of the repayment period is 15 years from the end of the Draw Period, as it may have been extended, with a final payment due on the following date of maturity: 07/24/2034.

**STATEMENTS:** We will send you a Statement at the end of any billing cycle in which an advance, payment or credit is posted to your Account, we impose any charge, or if you have a balance on your Account.

- 1 -
BANK COPY



**OUR SECURITY INTEREST:** As security for all sums you owe on your Account, including future advances and our finance and other charges, all of the owners of the Premises have executed a Mortgage/Loan Security Agreement on the above date in our favor. We will take a security interest in your home. You could lose your home if you do not meet the obligations in your agreement with us. Our rights in the Premises and the obligations of the Owners are more fully described in the Mortgage/Loan Security Agreement. If this Agreement is an amendment, your existing Mortgage/Loan Security Agreement and the lien in our favor on your Premises created by it will continue uninterrupted. If we request, you agree to execute a modification and extension to that Mortgage/Loan Security Agreement on the same date as this Agreement, which increases or decreases the Credit Limit, or extends the Draw Period, or both, as applicable.

**OUR CHARGES FOR YOUR ADVANCES:**

**1. Periodic Finance Charges:** A daily Periodic Finance Charge will be imposed on all advances made to your Account imposed from the date of each advance based on the "average daily balance" method. To get the average daily balance we take the beginning balance of your Account each day, add any new advances and subtract any payments or credits and any unpaid Finance Charges. This gives us the "daily balance." Then we add up all of the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance. We compute the Periodic Finance Charge on your Account as follows. We multiply the average daily balance by the number of days in the billing cycle, and multiply the product by the daily Periodic Rate.

    **a. Rate Changes.** We will determine the Periodic Rate and the corresponding Annual Percentage Rate monthly as follows: We start with an independent index which is the highest rate reflected as the latest U.S. Prime Rate published in the Money Rates table of The Wall Street Journal (the "Index"). We will use the most recent Index value available to us as of the first business day of the calendar month to make any Annual Percentage Rate adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Agreement, we may designate a substitute Index after notice to you. To determine the daily Periodic Rate that will apply to your Account, we add 1.240 percentage points (which includes any applicable Preferred Rate Reduction described below) (the "Margin") to the value of the Index, and then divide the result by the number of days in a year. To obtain the Annual Percentage Rate that corresponds to the Periodic Rate, we multiply the daily Periodic Rate by the number of days in a year. This result is the Annual Percentage Rate that corresponds to the Periodic Rate. This Annual Percentage Rate includes only interest and no other costs.

The Periodic Rate and the corresponding Annual Percentage Rate may increase or decrease as often as once each month. The Periodic Rate and the corresponding Annual Percentage Rate will also increase upon the termination of any applicable Preferred Rate Reduction described below. The maximum **ANNUAL PERCENTAGE RATE** that can apply during the term of this Agreement is the lesser of 18% or the maximum rate allowed by applicable law. The **ANNUAL PERCENTAGE RATE** will never be less than 3.99%. Except for this 3.99% minimum and this 18% maximum (or, if less, the maximum rate allowed by applicable law), there is no limit on the amount by which the Annual Percentage Rate or the corresponding Periodic Rate can change during any one-year period. The maximum interest payment for a 30 day period at the highest **ANNUAL PERCENTAGE RATE** permitted hereunder (18%) based on your Credit Limit shown above would be $    576.99.

Adjustments to the Periodic Rate and the corresponding Annual Percentage Rate resulting from changes in the Index will take effect monthly, beginning with the first day of the first billing cycle in the calendar month.

**Preferred Rate Reduction:** If you have asked us to automatically deduct your Minimum Payment from your Sovereign checking, money market or statement savings account, your Margin, Periodic Rate and your Annual Percentage Rate described in the paragraph entitled OUR CHARGES FOR YOUR ADVANCES reflect a reduction in the Margin (the amount of this reduction is the Preferred Rate Reduction). If you authorize us to automatically deduct your minimum monthly payments from a Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking, or Premier Money Market Savings or other qualifying account, your margin (and Annual Percentage Rate) has been reduced by .50%. If you authorize us to automatically deduct your minimum monthly payments from any other Sovereign deposit account, your margin (and Annual Percentage Rate) has been reduced by .25%. If the automatic deduction service stops for any reason, your Margin, and thus your Annual Percentage Rate, will increase by 0.250 or 0.500 percentage points, as applicable, and your corresponding Periodic Rate will also increase. You may stop this automatic deduction service by telling us or by closing your Sovereign checking, money market or statement savings account. We may stop this automatic deduction service if you do not maintain enough funds in your checking, money market or statement savings account to pay your Minimum Payment.

    **b. The Initial Rate.** Based on the Index and Margin and any applicable Preferred Rate Reduction in effect on the day you signed this Agreement, and subject to any minimum or maximum ANNUAL PERCENTAGE RATE set forth in this Agreement, the initial **ANNUAL PERCENTAGE RATE** is 4.490%, which corresponds to an initial daily Periodic Rate of 0.01230%.

**Loan Protection Plan(s):** If you have purchased the optional Sovereign Loan Protection Program, additional fees will be charged. Please see your Loan Protection Plan Agreement and related disclosures for additional details.

**2. Late Charges:** If your Minimum Payment is not received within 15 days of the Payment Due Date shown on your Statement, we will impose and you agree to pay a Late Charge of 10% of the unpaid portion of the Minimum Payment or $20, whichever is greater.

- 2 -

BANK COPY



**3. Application Fee:** We will charge a non-refundable fee of $400 only when the Account is opened and used for Swing Line purposes. *(A Swing Line is interim financing secured by the existing property and is used for the purchase of a new residence prior to the sale of the existing property. A Sovereign Bank Swing Line is available only when the financing for the purchase of the new residence is obtained through Sovereign Bank.)*

**4. Termination Fee:** If you request that we close your Account within 30 months of the Date of this Agreement shown above and you were not required to pay any closing costs when the Account was opened, we will impose a Termination Fee of $220. We will waive this fee if your Account is refinanced with us or if the Account was used for Swing Line purposes.

**5. Fixed Rate Lock Fee:** We may charge a fee of $50 to your Revolving Account for each Fixed Rate Lock. This fee is a FINANCE CHARGE. Please see the paragraph below entitled "Fixed Rate Lock Conversion Option."

**6. Annual Fee:** You will be charged and you agree to pay an Annual Fee of $50.00 during the Draw Period. The Annual Fee will be charged in the 13th month after you open the Account and in about the same billing cycle of each following year during the Draw Period. If you have a Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking or other qualifying account, your Annual Fee will be $0. If you close your Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking or other qualifying account you will be charged an Annual Fee of $50.00 during the Draw Period.

**7. Other Charges:** We impose the following additional charges on your Account:

a.    We impose a Return Item Charge of $33.00 whenever your payment is returned for insufficient funds or any other reason.

b.    We will charge you $20.00 for each hour (or portion of an hour) of research that we perform at your request, unless done in connection with a proper written notice of a billing error.

c.    We will charge and you agree to pay an overlimit fee of $33.00 , when any special check or other request for an advance would cause you to exceed the Credit Limit, whether or not we honor your request.

d.    If a traditional appraisal was obtained and you request a copy in the first 90 days from the date this loan was closed, you will pay us a charge at the rate of $5 per page.

e.    If you request a copy of any document, including a special check or a Statement, we will impose a charge of $5 per page for each copy you request. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

f.    We will charge and you agree to pay a fee of $25 whenever you request that we stop payment of a special check or other request for an advance on your Account.

g.    We charge you for our actual costs of Credit Reports and Appraisals incurred in investigating whether any condition permitting us to temporarily suspend credit availability or reduce the Credit Limit on your Account continues to exist.

h.    The current applicable fee to discharge the Mortgage or terminate any UCC Financing Statement securing this extension of credit and any extension or modification of it will be added to the payoff amount. Except as otherwise required by law, this fee will be waived if you agree to record the discharge of the mortgage or terminate any UCC Financing Statement yourself.

i.    If you request us to send you a payoff statement by facsimile transmission, we will charge you our then-current fee (currently $20) that will be added to your payoff amount.

**MINIMUM PAYMENT:** You promise to pay the advances and our Finance Charges and other charges as provided in this Agreement. To the extent your payments reduce the outstanding balance to an amount less than the Credit Limit, they restore your credit availability during the Draw Period. Whenever a balance is outstanding, each month you must pay us a Minimum Payment, which we must receive by the Payment Due Date shown on your Statement. The amount of any Minimum Payment or any other payment that is applied to principal or interest (Finance Charge) on your Account may vary, based upon when payments are received. You may at any time pay more than the Minimum Payment without incurring a penalty, but if you request that we close your Account under the circumstances set forth in subparagraph 4 of the paragraph of this Agreement entitled "Our Charges For Your Advances", we will impose a Termination Fee as set forth in that subparagraph. If you make a payment that exceeds your Minimum Payment, or make an additional payment when no payment is then due, we will apply the excess or additional payment amount to any balance in the Revolving Account portion of your Account before we apply it to any Fixed Rate Lock(s) you may have established on your Account.

**RECEIPT OF PAYMENTS:** All payments must be made by check, automatic account debit, electronic funds transfer, money order, or other instruments in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 5:00 PM Eastern Standard Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt. If you have elected to make your payments by automatic account debit, payment transfers will be processed on the date the payment is due monthly. If the scheduled date falls on a Sunday or a bank holiday, the transfer will be processed on the next business day. If funds for the payment are uncollected or insufficient on the transfer date, an insufficient funds charge may be assessed. If the payment is returned to us, the payment will be your responsibility for that month. If you do not maintain sufficient funds to process your payment transfer, your preauthorized transfer may be cancelled and any Preferred Rate Reduction may be terminated. Payments received at any of our branch offices on a business day (Monday - Friday) before the cut off time posted at that office will be credited to your account as of the date of receipt. Payments received on a non-business day (Saturday, Sunday or a bank holiday) or after the posted cut off time will be credited to your account as of the following business day. Payments received by any other method on a non-business day will also be credited as of the following business day.



- 3 -
BANK COPY

**ELECTRONIC PAYMENT:** Each time you make a payment by check, we may convert your check into an electronic payment. By sending us a check, you authorize us to convert your check. When we do this, the funds may be withdrawn from your account more quickly than if we processed your original check so always make sure you have enough funds in your account to make your payment. After we convert it, your check will not be sent back to you because we are required to destroy it. We do, however, keep an electronic copy. If you do not wish us to convert your check or if you need more information, please call us at 877-768 2268.

**PAYMENT OPTIONS:**

**Payment Option 1:** ☐ If the box preceding this sentence is checked, for any billing cycle during the Draw Period, your Minimum Payment will be equal to the sum of (i) all accrued Finance Charge and other charges for the billing cycle (minimum $20), plus (ii) optional Loan Protection Plan(s) fees, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance of principal at the end of the Draw Period, or $20, whichever is more, plus (ii) all accrued Finance Charge for the billing cycle, plus (iii) optional Loan Protection Plan(s) fees, if any, plus (iv) any other fees and charges and any amounts past due. You must also pay any Late Charges then outstanding. The amount of your Minimum Payments may increase if the Annual Percentage Rate increases. **NOTE:** Although interest-only payments may be less on a monthly basis, they retire no principal, **may** prolong the obligation, and result in greater total expenses over the life of the loan.

**Payment Option 2:** ☒ If the box preceding this sentence is checked, for any billing cycle during the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/240th of the average daily balance plus all accrued Finance Charge at the end of the billing cycle, or $20, whichever is more (or the entire balance if less than $20), plus (ii) optional Loan Protection Plan(s) fees, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance of principal at the end of the Draw Period, or $20, whichever is more, plus (ii) all accrued Finance Charges for the billing cycle, plus (iii) optional Loan Protection Plan(s) fees, if any, plus (iv) any other fees and charges and any amounts past due. You must also pay any Late Charges then outstanding. The amount of your Minimum Payments may increase if the Annual Percentage Rate increases.

**Change to Payment Option:** After you choose a Payment Option, you may ask us to change your Payment Option during the Draw Period, as long as we consider your Account to have been in good standing at all times. Any changes in your Payment Option must be for a period of not less than 12 months.

**RIGHT OF SET OFF:** You authorize us to apply money from your deposit account(s) with us, now or in the future, to pay all or any part of any amount past due under this Agreement, without notice.

**AUTOMATIC PAYMENT AUTHORIZATION:** If an account number is inserted in the following space, you authorize us to deduct the amount of your Minimum Payment on the Payment Due Date shown on your Statement from your checking, money market or statement savings account; (Account Number: _____ with us, or with **N/A** _____ and to make the payment then due on your Account.

**PROPERTY INSURANCE:** You must obtain and maintain adequate insurance against fire, flood and such other reasonable risks to the Premises as we require. This insurance protects your interests and our interests in the Premises when this Agreement is in effect. YOU MAY OBTAIN SUCH INSURANCE FROM ANY AGENT, BROKER OR INSURANCE COMPANY OF YOUR CHOICE which is licensed to do business in the state where the Premises is located, and your choice of insurance agent, producer, broker or insurance company will not affect our credit decision. However, we reserve the right to refuse to accept any insurance company or policy for reasonable cause. The policy must name us as "mortgagee" and provide us with not less than 30 days' notice of any cancellation or reduction in coverage. You must provide us with evidence of such insurance coverage promptly after our request. In the event of an insured loss, you agree to promptly advise us of the loss and to file a proof of loss with the insurance company. You appoint us your attorney-in-fact, in your name or in ours, to file a proof of loss if you fail or refuse to do so, and to endorse your name to any check, draft or other instrument in payment of an insured loss. We will allow you and the Owners to apply the insurance proceeds to repair the Premises but only if we have not previously declared your Account to be in default, temporarily reduced your Credit Limit or frozen your Account, and the repairs are done properly.

**OUR ABSOLUTE OBLIGATION TO MAKE ADVANCES:** Except as provided below, our agreement to make advances to you during the Draw Period is an absolute obligation on our part. This means we MUST make each and every advance you properly request during the Draw Period, up to your Credit Limit, under this Agreement. However, our absolute obligation to make advances to you during the Draw Period ends when any of the following happens:

1. We declare your Account to be in default, which we can do when:
  a. You fail to meet the repayment terms of this Agreement for any outstanding balance.
  b. There is fraud or a material misrepresentation by you in connection with your Account.

  c. Any action or inaction by you adversely affects our security for your Account, or any right we have in such security. Among other things, such action or inaction would include:
   - the sale or transfer of title to the Premises without our consent,
   - your abandonment of the Premises, which adversely affects our security in the Premises,
   - your failure to maintain the required property insurance coverages on the Premises,
   - your failure to maintain the Premises in good condition and repair, which adversely affects our security in the Premises,
   - your permitting anything to be done to the Premises that would constitute waste or destruction of the Premises, or that would render the Premises unsafe or unfit for human habitation (such as by bringing or storing hazardous or toxic substances on the Premises), which adversely affects our security in the Premises,

- 4 -

BANK COPY



- your doing of any unlawful act that subjects the Premises to seizure by governmental authorities,
- your failure to pay taxes on the Premises,
- your permitting any liens to be filed on the Premises which are superior to ours,
- foreclosure by any prior mortgagee or lienholder which adversely affects our interest in the Premises,
- a taking of all or part of the Premises in a proceeding in eminent domain or condemnation,
- the death of the sole Borrower obligated on your Account, or if there are more than one of you, the death of any of you or any Owner of the Premises that results in a transfer of title to the Premises to a person who is not a party to our security interest in the Premises or that otherwise adversely affects our security in the Premises, or,
- if the Premises is a cooperative apartment, you break any of the promises you have made under the proprietary lease of the Premises, your proprietary lease is cancelled or terminated, the cooperative corporation fails to pay when due any mortgage payments, leasehold payments and/or real estate taxes it is obligated to pay, or to insure the building in which the Premises is located, or foreclosure, bankruptcy or insolvency proceedings are brought by or against the cooperative corporation, and any of such adversely affects our security or any right we have in the security.

If one or more of the above events occurs, we can temporarily or permanently reduce your Credit Limit or suspend your ability to obtain advances, or we can declare your Account to be in default. However, we can declare your Account in default only by personally delivering or mailing to you a written Notice of Default. Our Notice of Default will become effective when we personally deliver it to you or place it in the mails, even though you might not receive our mailed Notice of Default. If we declare your Account in default we will immediately terminate credit availability on your Account. If we choose, we may also send you a Notice of Intention to Take Action, advising you that if you do not cure the default within the time period then provided by law, we will demand repayment of the entire outstanding balance in one immediate payment and exercise our security interest and right of set-off against any of your property, including deposit accounts, then in our possession (unless prohibited by applicable law).

Except as otherwise provided below, if we don't receive payment in full, we may also foreclose upon the Premises and take any other collection action allowed to us by law. You agree to pay our court costs and collection fees we incur in the collection and enforcement of your Account, as well as our reasonable attorney's fees, to the extent permitted by law, if we refer your Account to an attorney or collection agency for collection. You agree to pay Finance Charges at the variable Annual Percentage Rate provided in this Agreement on the outstanding balance of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never been in default, but you will not restore your right to obtain additional advances on your Account.

If one or more of the above events occurs, we may elect to waive our right to declare your Account in default. If we waive that right, we will remain absolutely obligated to make all advances you properly request on the Account during the Draw Period. However, that waiver does not bind us if a similar or different event occurs later. At that time, we have the right to decide whether to declare your Account in default.

**For New Hampshire Borrowers:** If we don't receive payment in full, we may also foreclose upon the Premises and take any other collection action allowed to us by law. You agree to pay us all reasonable costs we incur to collect this debt or realize on any security, to the extent permitted by law. This includes court costs, attorney fees for services rendered by an attorney for collection when the attorney is not our salaried employee, and/or collection agency fees. However, if you prevail in any action, suit or proceeding we bring or in an action you bring, reasonable attorneys' fees shall be awarded to you. If you successfully assert a partial defense, setoff, recoupment or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the court deems appropriate. You agree to pay Finance Charges at the variable Annual Percentage Rate provided in this Agreement on the outstanding balance of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never been in default, but you will not restore your right to obtain additional advances on your Account.

2. All of you request final termination of your Account. Final termination at the request of all of you will become effective as soon as we terminate your ability to obtain advances and all sums owed to us and our charges are paid in full. At that time, we will terminate the security interest or provide appropriate documents to you to enable you to terminate the security interest in the Premises.

3. You or we temporarily reduce your Credit Limit or temporarily suspend your ability to obtain advances, which can be done only if any one or more of the following events occur:
a. Any of you notify us, in person or in writing, of an intention to terminate your Account, or that you do not want to obligate any of your advances obtained or to be obtained by any others on the Account (except in connection with a good faith billing dispute), or any Owner advises us of an intention not to obligate the Premises for existing or future advances. We will treat a request for termination by less than all of you, or by an Owner who is not also a Borrower, as a request for temporary suspension. Such suspension will become effective as soon as we can reasonably act to stop new advances from being made on your Account. However, we may honor any and all requests for advances which were made or are dated prior to that time.

b. Any of the following things happen and we choose to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances:
   (1) The value of the Premises declines significantly below its original appraised value.
   (2) We reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances.



- 5 -

BANK COPY

(3) We are precluded by government action from imposing the Annual Percentage Rate provided in this Agreement.

(4) The priority of our security interest in the Premises is adversely affected by government action to the extent that the value of our security interest is less than 120 percent of the Credit Limit.

(5) You are in default of any of the following "material obligations" under this Agreement:

(a) Any of you fails to honor your obligations on any prior security interest in the Premises.

(b) Any of you does not pay any other obligation you owe to us or to others as and when that obligation comes due, or a proceeding is begun by or against any of you under the Federal Bankruptcy Code.

(c) Any of you are incarcerated or declared legally incompetent.

(d) Any of you fails to promptly provide us with satisfactory financial information which we may request from time to time or to cooperate with us in appraising the Premises which we may elect to do from time to time.

(e) If there are more than one of you, the death of the person on whose income we primarily relied in agreeing to open the Account for you.

(f) You move out of the Premises or convert the Premises from your residence or vacation home to an investment or rental property.

(g) You permit an intervening lien to be filed against the Premises that would take priority over future advances made by us.

(6) We are notified by our regulatory agency that continued advances on your Account constitute an unsafe and unsound practice.

(7) The maximum Annual Percentage Rate is reached.

(8) An event occurs which gives us the right to declare your Account to be in default.

We will send you a Notice Of Credit Freeze not later than three business days after we take such action, advising you of the specific reasons for our action. Our Notice Of Credit Freeze will advise you that you may request reinstatement of your credit privileges when the condition which led to our action no longer exists (and provided that no other condition listed above exists that would allow us to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances).

**4. The Draw Period Ends.**

**YOUR OBLIGATIONS CONTINUE ON TEMPORARY SUSPENSION:** Upon temporary suspension, whether by you or by us, you remain obligated to repay all amounts owed to us as provided in this Agreement, including our Finance Charges and other charges. This means you must continue to make at least the Minimum Payments each month under the terms of this Agreement.

**REINSTATEMENT:** You may request reinstatement of the credit privileges on your Account for the remainder of the Draw Period at any time after the condition that permitted us to temporarily reduce your Credit Limit or suspend your ability to obtain advances ceases to exist (provided that no other condition exists that would allow us to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances). If you request reinstatement you may be required to pay any reasonable appraisal and credit report fees we actually incur in investigating whether any condition permitting the freeze continues to exist. We will reinstate credit privileges on your Account when we find that these conditions have ceased to exist. If any one of you or any Owner of the Premises requested temporary suspension of the Account, we will reinstate your Account for the remainder of the Draw Period if all of you advise us in writing of a desire to reinstate the Account. However, we may refuse to reinstate your Account until we are assured that our rights in any security for your Account have not been adversely affected by the temporary freeze.

**TAXES; REPAIRS:** You agree to pay all taxes on the Premises and to maintain the Premises in good condition and repair.

**OTHER ADVANCES:** If you fail to purchase property insurance, or do not pay taxes when they come due, or do not properly maintain the Premises, we may, if we choose (but without any obligation on our part), advance sums on your behalf for those purposes in order to protect our interest in the Premises. Any advances we make on your behalf will not excuse you from your failure to honor your promises and obligations in this Agreement. The amounts we advance on your behalf will be charged to your Account in the same manner as any other advance made by us to you hereunder.

**OWNERSHIP OF SPECIAL CHECKS:** You agree that the special checks and any other credit instruments or devices which we may supply to you to use in connection with your Account are our property. Unused special checks and any other credit instruments or devices must be returned to us immediately upon demand. We will retain all special checks and other credit instruments you draw in connection with your Account.

**PROOF OF ADVANCES:** Your Statements will indicate the current status of your Account and identify the transactions posted during the billing cycle. If you need evidence of an advance or other transaction, we will provide you with a photographic or other reasonable reproduction of any special check or other document that you request. You agree that such evidence will be satisfactory to you for all purposes.

**REFUSAL TO HONOR REQUESTS FOR ADVANCES:** We will not be responsible if, for any reason, anyone fails or refuses to honor special Account checks or any other credit instrument or device we provide to you to obtain advances on your Account.

**AMENDMENTS:** We may amend this Agreement by entering into a separate written agreement with you, or by making a change that is either beneficial to you or insignificant. However, you will be responsible for increases in taxes and property insurance premiums on the Premises. If we temporarily reduce the rate or fees charged on your Account below those contained in this Agreement, we can impose the agreed rate or fees by giving you notice of the change in terms.



- 6 -

BANK COPY

The paragraph in this Agreement that are entitled "Advances & Term," "Our Charges for Your Advances, #1, Periodic Finance Charges" "Payment Options," "Change to Payment Option" and "Our Absolute Obligation to Make Advances" assume that you have not elected the Fixed Rate Lock Conversion Option described below. However, if you elect the Fixed Rate Lock Conversion Option, the following terms modify the above-listed paragraphs, as described below:

## FIXED RATE LOCK CONVERSION OPTION:

After you open your Home Equity Line of Credit Account, you may ask us to change your variable interest rate to a fixed rate of interest on all or a portion of your principal balance ("Fixed Rate Lock"), as long as we consider your Account to have been in good standing at all times. This option will be available only during the Draw Period. If there is more than one Borrower on your Account, all of you agree that we may establish a Fixed Rate Lock upon the request of any one or more of you.

The minimum amount of your principal balance for which you may elect a Fixed Rate Lock is $5,000. The repayment term for any Fixed Rate Lock must be at least 12 months and may not exceed 180 months or the maturity date of your Home Equity Line of Credit Account, whichever is earlier. You may have up to four Fixed Rate Locks outstanding on your Account at any one time. However, you may not transfer a Fixed Rate Lock balance to a new Fixed Rate Lock balance for a period of 12 months following the establishment of the Fixed Rate Lock balance, and you may not transfer additional amounts to any Fixed Rate Lock once it has been established. The portion of your credit line that is not transferred to a Fixed Rate Lock is called your Revolving Account. The amount of each Fixed Rate Lock will reduce your available credit on your Revolving Account. As you repay the principal balance of each Fixed Rate Lock, your available credit on your Revolving Account will increase as a result.

The fixed rate of interest applicable to a Fixed Rate Lock will be determined at the time of each Fixed Rate Lock request and will be based on our current market rate at that time for Fixed Rate Home Equity Loans, except that the rate applicable to a Fixed Rate Lock will never be greater than 18% ANNUAL PERCENTAGE RATE or less than 3.99% ANNUAL PERCENTAGE RATE. The rate may depend on a number of factors, including loan amount, loan-to-value ratio, property type, credit history and the automatic payment deduction option, if any, you have selected. Once the rate of each Fixed Rate Lock has been established, that rate will not change. A recent ANNUAL PERCENTAGE RATE that we have charged on a $10,000 Fixed Rate Home Equity loan was 8.74%. This Annual Percentage Rate included only interest and not other costs. As an example, the monthly payment for a Fixed Rate Lock of $10,000 at 8.74% ANNUAL PERCENTAGE RATE for a period of 120 months would be $125.27. The amount of each Fixed Rate Lock payment will be included in your minimum Payment Due on your monthly statement.

Regardless of the Draw Period Payment Option you select on your Revolving Account, repayment of each Fixed Rate Lock will be based on substantially equal monthly payments for a term you choose (but not to exceed 180 months or the maturity date on the Account, whichever is earlier) in an amount sufficient to repay the principal balance of each Fixed Rate Lock, together with interest at the Annual Percentage Rate for each Fixed Rate Lock. A daily periodic Finance Charge will be imposed on your Fixed Rate Lock balance from the date each Fixed Rate Lock is established, based on the "average daily balance" method. The amount of your final payment for each Fixed Rate Lock may vary, depending on whether your monthly payments are received early, on time, or following their due dates. After each Fixed Rate Lock is established, the minimum monthly Payment Due on your Account will include the minimum monthly payment for your Revolving Account described above, plus the minimum monthly payments for all Fixed Rate Locks outstanding. The minimum monthly Payment Due for your Account will be reflected on your monthly billing statement. Payments received will be applied to the minimum monthly payment for each Fixed Rate Lock in the order each Fixed Rate Lock was established. We may charge a fee of $50 to your Revolving Account for each Fixed Rate Lock. This fee is a FINANCE CHARGE.

**BINDING EFFECT:** If more than one of you signs as Borrower, each of you will be liable, separately and together, for all advances obtained on the Account. All of you agree that any one or more of you may obtain advances on the Account. This Agreement obligates you and your estate, heirs and personal representatives and benefits us and our successors and assigns. We may add or release parties, or permit the addition or substitution of collateral subject to our security interest, or modify, extend or amend this Agreement without in any way affecting your obligations on this Agreement.

**CONTINUED EFFECTIVENESS:** If we honor special Account checks or other requests for advances after your death or declaration of legal incompetency, but before we receive actual written notice of either event, those advances will be valid, legal and binding obligations on you and your estate, heirs and personal representatives.

**IRREGULAR PAYMENTS; DELAY IN ENFORCEMENT:** We may accept partial or late payments of sums due on your Account without losing any of our rights under this Agreement. We may even accept checks or drafts marked "paid in full" or with similar language indicating that our accepting the payment would be in full satisfaction of your outstanding balance, without being bound by that language or losing any of our rights under this Agreement. Any such payments must be mailed to: Sovereign Bank, Mail Stop 10-421-CP2, Consumer Finance, P.O. Box 12646, Reading, PA 19612. We can delay enforcing our rights under this Agreement without losing them.

**CREDIT REPORTS AND APPRAISALS:** From time to time, we may review your Account to determine whether, in our reasonable opinion, a material change has occurred in your financial circumstances that would leave you unable to fulfill the repayment obligations under this Agreement. As part of such reviews, we may obtain additional credit reports on you, inspect or reappraise the Premises, and request additional financial information from you. You agree to cooperate with us in performing such reviews and to promptly provide satisfactory financial information to us.



BANK COPY

**ACCOUNT SERVICING:** You expressly consent to our using prerecorded /artificial voice messages and/or an automatic telephone dialing system while servicing or collecting your Account, as the law allows. In doing so, you agree that we and any assignee of the Agreement may use any telephone number you provide us including any number provided on the credit application even if that number is for a cellular telephone and/or our using the number results in charges to you.

**TRANSFER AND ASSIGNMENT:** Your rights under this Agreement belong only to you. You cannot transfer or assign them to anyone else. We may transfer and assign our rights and obligations under this Agreement and the Mortgage/Loan Security Agreement at any time without your consent. The person to whom we transfer and assign this Agreement and the Mortgage/Loan Security Agreement shall be entitled to all of our rights and subject to all of our obligations under this Agreement and the Mortgage/Loan Security Agreement. None of your obligations shall be affected by our transfer and assignment.

**APPLICABLE LAW; ENTIRE AGREEMENT:** You agree that this Agreement is to be governed by Pennsylvania law (without regard to principles of conflicts of law or choice of law), except and to the extent governed by federal law applicable to federal savings banks, including 12 USC 1463 and 1464. If this is a New Agreement, it is the entire agreement between you and us. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

**YOU ACKNOWLEGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT. PLEASE RETAIN A COPY FOR YOUR RECORDS.**

_Michael E. Carey_____(SEAL)    _____(SEAL)
Borrower                          Borrower
MICHAEL E CAREY

_____(SEAL)    _____(SEAL)
Borrower                          Borrower

_____(SEAL)    _____(SEAL)
Borrower                          Borrower

_____(SEAL)    _____(SEAL)
Borrower                          Borrower

BANK COPY

# Exhibit C

Exhibit C

**ALLONGE TO THE NOTE**

Loan No:

Borrower(s) Name(s):      Michael E Carey

Property Address:          150 BIG PINE LN

                           JERSEY SHORE, PA 17740

As Part of Note Dated:     8/24/2009

Original Loan Balance:     $39,000.00

Pay to the order of:

Without Recourse

Santander Bank, N.A., formerly known as Sovereign Bank of Reading, PA

By: Erica S Hofmann

Title: Vice President

Date: 10/30/2019

# Exhibit D

 

Exhibit D

---

**Press Release**

---

## SOVEREIGN BANK TO CHANGE ITS NAME TO SANTANDER

### *1.7 Million Customers to Receive Notification about Name Change, Branch Renovations, Enhanced ATM Rollout, New Products and Services to Come*

**BOSTON, July 24, 2013** — Sovereign Bank, N.A., a wholly-owned subsidiary of Santander Holdings USA and one of the 25 largest retail banks in the United States by deposits, announced today that it will begin to market itself under the Santander brand and legally change its name to Santander Bank, N.A. on October 17, 2013.

"October 17th will mark a unique occasion for our company. Under the Santander name, we will marry the local insights and relationships of a committed, community-focused bank with the breadth and expertise of a major global financial institution," said Carlos Garcia, chief corporate affairs and communications officer at Sovereign Bank and Santander Holdings USA.

Sovereign Bank operates in Connecticut, Delaware, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania and Rhode Island, serving 1.7 million retail and commercial clients. It has been a financially autonomous member of the Santander Group since 2009. While the Santander Group has had business operations in the United States for over 30 years, this change marks the first time it will operate as a federally chartered U.S. retail and commercial bank under the Santander brand.

With 102 million customers, over $72 billion in market capitalization and a 10.67% core capital ratio, the Santander Group is one of the world's strongest financial institutions as well as being one of the most respected and recognized global financial brands. Santander Group's subsidiaries do business under the unified Santander brand in the U.K., Germany, Brazil, Mexico, Chile, Argentina, Spain and Portugal.

In the four years since Sovereign Bank became part of the Santander Group, the Bank's corporate headquarters were relocated to Boston, it substantially strengthened its capital and improved its asset quality, migrated multiple legacy systems to a single robust technology platform and became a full-fledged commercial bank by changing to a national bank charter.

Corporate Communications
Mary Ellen Higgins
Director of Public Relations
mhiggins@sovereignbank.com
(o) 617.346.7431
(m) 617.378.1365



## Enhancements to Accompany Name Change

In addition to its name change, the Bank announced several enhancements to be rolled out between now and October 17th as part of a comprehensive $200+ million three year initiative. "Today's announcement reflects our commitment to becoming the best bank we can possibly be for both our customers and for our team members," said David Miree, managing director of the Bank's retail network. The following initiatives are designed to improve the overall experience offered to customers:

- Network-wide refurbishment of the Bank's more than 700 branches, including improved space facilitating personalized, one-on-one banking
- Completion of its newly renovated flagship branch located at One Beacon Street in Boston, MA
- Rollout of enhanced ATMs across its footprint bringing greater convenience and functionality to customers
- New streamlined website design including industry best practices in fee disclosure, improving transparency and ease-of-use for consumers
- A new comprehensive package of financial products and services designed to meet a wide range of business and consumer financial needs
- A substantial national and local print, broadcast and online advertising campaign across the Bank's markets designed to familiarize clients with the breadth and strength of the Santander brand

"We're looking forward to acquainting consumers and businesses with the Santander brand as well as our expanded capabilities and resources," said chief marketing officer and director of corporate communications, Kathy Klingler, "Our new advertising campaign will focus on how Santander will support our customers in achieving their dreams, goals and ideas."

## Commitment to Community Continues

Under the Santander brand, the Bank will continue its corporate social responsibility efforts working closely with local community groups, non-profit organizations and higher education institutions. In 2012, Sovereign Bank contributed over $2 million in donations across the Bank's footprint to many local non-profit organizations, over $2 billion in community loans and investments to low and moderate income individuals, families and businesses and over $8.5 million in grants to our 26 college and university partners throughout our footprint.

Corporate Communications
Mary Ellen Higgins
Director of Public Relations
mhiggins@sovereignbank.com
(o) 617.346.7431
(m) 617.378.1365



More information about the Bank's overall corporate social responsibility efforts was published today in its 2012 annual Corporate Social Responsibility report which can be found at www.sovereignbank.com/csr.

Customers can find additional information about Sovereign Bank's name change to Santander at any of its branches, by calling its local phone centers at (877)768-2265 or by visiting its website at www.sovereignbank.com/namechange.

**About Sovereign Bank**

Sovereign Bank, N.A., a wholly-owned subsidiary of Santander Holdings USA, is among the 25 largest retail banks in the United States based on deposits, with principal presence in Connecticut, Delaware, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania and Rhode Island. Sovereign Bank is focused on serving the needs of its customers by providing a range of comprehensive financial solutions through its more than 700 branches, over 2,000 ATMs and nearly 9,000 team members. For more information about Sovereign Bank, visit http://www.sovereignbank.com or call (877) 768-2265. Member FDIC.

**About Santander**

Santander Holdings USA, Inc. is a member of the Santander Group and the parent company of Sovereign Bank, N.A. Santander Group is a network of diversified global retail and commercial banks, with a presence in 10 main markets including the United States, Germany, United Kingdom, Poland, Brazil, Mexico, Chile, Argentina, Spain and Portugal. Founded in 1857, Santander Group has more than 102 million customers, approximately 14,600 branches – more than any other bank – and nearly 190,000 employees. Santander was recognized as 2012 Best Global Bank by *Euromoney* magazine, ranked second "Greenest Global Bank" in 2013 by Bloomberg BusinessWeek and was named 2013 "Sustainable Global Bank of the Year - Transactions" by the Financial Times. For more information about Santander, visit http://www.santander.com.

Corporate Communications
Mary Ellen Higgins
Director of Public Relations
mhiggins@sovereignbank.com
(o) 617.346.7431
(m) 617.378.1365

# Exhibit E

Exhibit E



Prepared By: Sovereign Bank, 450 Penn Street
Reading, PA 19602
877-391-6165

Record and Return To:
Fiserv Lending Solutions
P.O. BOX 2000
Chicago, IL 60690

CAREY, MICHAEL E
PARCEL #:

## PENNSYLVANIA
## HOME EQUITY LINE OF CREDIT
## OPEN-END MORTGAGE
### (Securing Future Advances)

THIS MORTGAGE is made AUGUST 24, 2009. The mortgagor is MICHAEL E CAREY.

This Mortgage is given to SOVEREIGN BANK, whose address is 450 Penn Street, Reading, PA 19602 ("Lender"). In this Mortgage, the terms "you," "your," and "yours" refer to the mortgagor(s). The terms "we", "us" and "our" refer to the Lender.

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of Thirty-Nine Thousand and no/100 Dollars (U.S. $ 39,000.00). The Agreement provides for a final scheduled installment due and payable not later than 07/24/2034. You agree that this Mortgage shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, future advances and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, including future advances, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the following described property located in CLINTON, County, Pennsylvania:

### PROPERTY DESCRIPTION

That certain piece or parcel of land, and the buildings and improvements thereon:
In the Town of: JERSEY SHORE
County of: CLINTON
and State of: PENNSYLVANIA
and being more particularly described in a deed recorded in
Book:
Page:
of CLINTON County, City of JERSEY SHORE
which property is more commonly known as 150 BIG PINE LANE , JERSEY SHORE, PA 17740 ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1.  Payment of Principal, Interest and Other Charges. You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.  Application of Payments. Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us in any order we choose.

3.  Prior Mortgages; Charges; Liens. You shall perform all of your obligations under any mortgage, deed of trust or other security instrument with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any report we obtained) which has priority over this Mortgage.

1

BANK COPY  2009-04721

4.  **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so. We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence. Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition. You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5.  **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 16, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

6.  **Protection of Our Rights in the Property; Inspection.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. We may enter and inspect the Property at any reasonable time and upon reasonable notice.

7.  **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

8.  **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

9.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

2

BANK COPY

**10. Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**11. Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

**12. Governing Law; Severability.** The interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**13. Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**14. Assignment.** We may sell, transfer or assign this Mortgage without your consent and without prior notice to you.

**15. Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**16. Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property; or (4) a court determines that you are bankrupt or insolvent. If a default occurs (other than under paragraph 13 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured as specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law and costs of title evidence.

**17. Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 16, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**18. Release.** Upon your request and payment of all sums secured by this Mortgage, we shall discharge and satisfy this mortgage. You shall pay any recordation costs.

**19. Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.



BANK COPY

Case 4:23-bk-02191-MJC   Doc 20-in-3   Filed 03/15/2 Filed E0/04/03/06/24 Exhibit 4-BarDesc
Case 4:23-bk-02191-MJC   Doc 20-in Filed 05/20/24 Entered 05/20/24 16:03:39   Desc
Main Document   Page 35 of 102

20.　**Waivers.** You, to the extent permitted by applicable law, waive and release any error or defects in proceeding to enforce this Mortgage, and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption. No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

21.　**Reinstatement Period.** Your time to reinstate provided in Section 16 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage.

22.　**Interest Rate After Judgment.** You agree that the interest rate payable after a judgment is entered on the Agreement or in an action of mortgage foreclosure shall be the rate payable from time to time under the Agreement.

23.　**Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider　☐ 1-4 Family Rider　☐ Planned Unit Development Rider　☐ Other(s) (specify)

BY SIGNING BELOW, you accept and agree to the terms and covenants contained in this Mortgage and in any rider(s) executed by you and recorded with it.

Witnesses:

_____　　_____ (SEAL)
　　　　　　　　　　　　　　　　　　　　MICHAEL E CAREY

_____　　_____ (SEAL)

_____　　_____ (SEAL)

_____　　_____ (SEAL)

STATE OF PA
COUNTY OF Lycoming

On AUGUST 24, 2009, before me, Deborah Simpson, the undersigned officer, personally appeared MICHAEL E CAREY known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____ (SEAL)
Name: DEBORAH SIMPSON
Title of Officer: NOTARY PUBLIC

My commission expires: 12-7-12

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Deborah Simpson, Notary Public
South Williamsport Boro, Lycoming County
My Commission Expires Dec. 7, 2011
Member, Pennsylvania Association of Notaries

**CERTIFICATE OF RESIDENCE OF MORTGAGEE**

I do hereby certify that the precise address and principal place of business of the within named mortgagee is 450 Penn Street, Reading, PA 19602

SOVEREIGN BANK
By: _____
Name: Deborah Simpson
Title: _____

Clerk: After recording, please return to: Sovereign Bank, Mail Stop 10-421-CP2, 450 Penn Street, Reading, PA 19602

4

BANK COPY

## SCHEDULE A

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF PINE CREEK, COUNTY OF CLINTON, AND STATE OF PENNSYLVANIA BEING MORE PARTICULARLY DESCRIBED IN A DEED RECORDED IN BOOK 591 AT PAGE 129 AMONG THE LAND RECORDS OF THE COUNTY SET FORTH ABOVE.

PARCEL ID: ███████

KNOWN AS: 160 BIG PINE LANE

# Exhibit F

Prepared By:
Bill Koch
Select Portfolio Servicing, Inc.
3217 S. DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

When Record Return To:
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

FILED
CLINTON COUNTY, PA

2020 JUL -8 AM 11: 12

JENNIFER L. HOY
REGISTER & RECORDER

Exhibit F

## CORPORATE ASSIGNMENT OF MORTGAGE

Assignment Prepared on: June 17, 2020

ASSIGNOR: SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK BY
SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT, at C/O SELECT
PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT,
84119

ASSIGNEE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK
NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSOR AND
ASSIGNS, at 1901 E Voorhees Street, Suite C, Danville, IL, 61834 / P.O. Box 2026, Flint, MI,
48501-2026

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the
above-named Assignee interest under that certain Mortgage Dated: 8/24/2009, in the amount of
$39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded:
9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 1901 E Voorhees
Street, Suite C, Danville, IL, 61834 / P.O. Box 2026, Flint, MI, 48501-2026

Attested By: _____

The property is located in the Township of PINE CREEK.
TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever,
subject only to the terms and conditions of the above-described Mortgage.

SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK BY SELECT
PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT

On: JUN 2 6 2020

By: *Kyle Runyan*

Name: Kyle Runyan
Document Control Officer

Title: _____

State of UTAH
County of SALT LAKE

On _____ JUN 2 6 2020 _____, before me,
_____ Rylie Naylor _____, a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared _____ Kyle Runyan _____,
Document Control Officer _____, SANTANDER BANK, N.A., FORMERLY KNOWN AS
SOVEREIGN BANK BY SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rylie Naylor
Notary Expires: _____ FEB 2 0 2024 _____

RYLIE NAYLOR
Notary Public State of Utah
Commission Expires on:
February 20, 2024
Comm. Number: 710640

PA/CLINTON

# Exhibit G

Prepared by:
Select Portfolio Servicing, Inc.
3217 S DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

*Exhibit G*

When Record Return To:
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602

UPI #: ▮▮▮▮▮▮▮▮▮▮                    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #: ▮▮▮▮▮▮▮▮▮▮
PA/CLINTON
MERS #: ▮▮▮▮▮▮▮▮▮  MERS Phone #: ▮▮▮▮▮▮▮▮▮    **RECORD 1st**

Assignment Prepared on: January 05, 2023

**ASSIGNOR: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS,** at 11819 Miami St., Suite 100, Omaha, NE 68164 / P.O. Box 2026, Flint, MI 48501-2026

**ASSIGNEE: FIRSTKEY MORTGAGE, LLC,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the *precise address* of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By: _____

The property is located in the Township of PINE CREEK.
Property Address: 150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Document References:
- Assignment Dated: 6/26/2020 from SANTANDER BANK, N.A., FORMERLY KNOWN A SOVEREIGN BANK to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS Recorded: 7/8/2020, Instrument #: 2020-02525

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.



MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE,
AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS

On. ____FEB 0 8 2023_____

By: _____

Name: _____
SHANDA SWILOR
ASSISTANT SECRETARY

Title: _____

State of UTAH
County of SALT LAKE ✗ Shanda Swilor

On ___FEB 0 8 2023_____, before me,
Shirley Tuilupou _____, a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared ___X___ Shanda Swilor _____,
ASSISTANT SECRETARY _____, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT
MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Shirley Tuilupou
Notary Expires: ___JAN 1 5 2025_____ / #: ____716100____



# Clinton County

## JENNIFER L. HOY
Register of Wills, Recorder of Deeds
and Clerk of Orphans' Court
2 Piper Way - Suite 239
Lock Haven, PA 17745
Phone: 570.893.4010   Fax: 570.893.4273

---

### RECEIPT FOR PAYMENT

Instrument Number: 2023-000504

Instrument Type:  ASSIGNMENT

Indexed Party:  CAREY MICHAEL E

Receipt Date:  2/22/2023

Receipt Time:  10:51:15

Receipt No.:  

- - -

Book#: 2023   Page#: 0504

### Receipt Distribution

| Fee/Tax Description | Payment Amount |
|---|---|
| ASSIGNMENT | 16.25 |
| ASSIGNMENT - WRIT | .50 |
| J.C.S. / A.T.J. | 40.25 |
| CO IMPROVEMENT FND | 2.00 |
| REC. IMPRVMT FUND | 3.00 |
| Check# | $62.00 |
| Total Received........ | $62.00 |

Paid By Remarks: SELECT PORTFOLIO

# Exhibit H

**Prepared by:**
Select Portfolio Servicing, Inc.
3217 S DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

**When Record Return To:**
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602

Exhibit A

UPI #: ▮▮▮▮▮▮

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #: ▮▮▮▮▮
PA/CLINTON ▮▮▮▮▮▮▮

**RECORD 2nd**

Assignment Prepared on: January 05, 2023

**ASSIGNOR: FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE: TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By: ▮▮▮▮▮▮▮▮

The property is located in the Township of PINE CREEK.
Property Address: 150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Document References:
- Assignment Dated: _FEB 0 8 2023_ from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS to FIRSTKEY MORTGAGE, LLC To Be Recorded Concurrently.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY
IN FACT

On: _____FEB 0 8 2023_____

By: _____

Name: _____Shanda Swilor_____
            Document Control Officer

Title: _____

State of UTAH
County of SALT LAKE

On _____FEB 0 8 2023_____, before me,
_____Shirley Tullupou_____, a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared _____Shanda Swilor_____,
_____Document Control Officer_____, FIRSTKEY MORTGAGE, LLC BY SELECT
PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____Shirley Tullupou_____
Notary Expires: _____JAN 1 5 2025_____ / #: _____710100_____

# Exhibit I

*Exhibit I*

After Recording Return To:
Santander Bank, N.A.
Mail Code 10-6438-CC7
601 Penn St., Reading, PA 19601

Tax ID#
This document was prepared by: Madeline Perez

_____[Space Above This Line For Recording Data]_____

## SANTANDER HOME LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1] Michael E Carey
Lender ("Lender"): SANTANDER BANK, N.A.
If applicable, Successor in interest to: Sovereign Bank with respect to the Note and Mortgage or
Security Instrument defined and modified in this Agreement.

Date of first lien or security instrument ("Mortgage") and Note ("Note"): August 24, 2009
Loan Number:
Property Address: 150 Big Pine Lane Josey Shore PA 17740 ("Property"):
          (Attach Legal Description as Exhibit "A" if being Recorded)

Original Recorded Date: September 11, 2009   County: Clinton County
Book/Instrument/Volume/Liber: Book 2009   Page: 04721

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Santander Home Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, if applicable, and (2) the Note secured by the Mortgage.
The Note and Mortgage or Security Instrument together, as they may previously have been amended, are
referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have
the meaning given to them in the Loan Documents.

_____
[1] If more than one Borrower or Mortgagor in executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Loan #
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship and, as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. If applicable, the Property has not been condemned;

   C. If applicable, there has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Santander Home Loan Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/31/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on 04/30/2014.

   A. The Maturity Date will be: 03/31/2030.

Loan #: ▓▓▓▓▓
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

Case 4:23-bk-02191-MJC    Claim 3-1 Part 5    Filed 12/04/23    Desc Exhibit Loan
Case 4:23-bk-02191-MJC    Doc 64    Filed 05/20/24    Entered 05/20/24 16:03:39    Desc
Main Document    Page 50 of 102

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender ($2,329.19) but not previously credited to my Loan. The new principal balance of my Note will be $41,078.00 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 4.250% will begin to accrue on the New Principal Balance of $41,078.00 and the first new monthly payment on the New Principal Balance will be due on 04/30/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| [1-16] | 4.250% | 03/31/2014 | $296.24 | 04/30/2014 | [192] |

The above terms in this Section 3.C. will supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. Additional Agreements. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; or (ii) the Lender has waived this requirement in writing (although any person who signed the Loan Documents but does not sign this Agreement.

B. That this Agreement shall supersede the terms of any modification, forbearance, or other

Loan #: ▓▓▓▓
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

Case 4:23-bk-02191-MJC    Claim 3-1 Part 5    Filed 12/04/23    Desc Exhibit Loan Documents    Page 12 of 32
Case 4:23-bk-02191-MJC    Doc 64    Filed 05/20/24    Entered 05/20/24 16:03:39    Desc Main Document    Page 51 of 102

workout plan that I previously entered into with Lender.

C. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property, if applicable, or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property. (IF APPLICABLE)

G. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

H. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

I. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Santander Home Loan Modification Program.

Loan #: ▓▓▓▓
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

J. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (b) companies that perform support services for the Santander Home Loan Modification Program; and (c) any HUD certified housing counselor.

K. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

Loan #: ▮▮▮▮▮▮
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

Case 4:23-bk-02191-MJC    Claim 3-1 Part 5    Filed 12/04/23    Desc Exhibit Loan
Case 4:23-bk-02191-MJC    Doc 64 Filed 05/20/24 Page 14 of 32    Entered 05/20/24 16:03:39    Desc
Main Document    Page 53 of 102

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement.

SANTANDER BANK, N.A.
If applicable, Successor in interest to: Sovereign Bank with respect to the Note and Mortgage or
Security Instrument defined and modified in this Agreement.

By: _____  STEVEN FISHER
Title: _____  VP

COMMONWEALTH OF PENNSYLVANIA, BERKS COUNTY SS:

On this, the 15 (day) of April (month), 201 4, before me, a Notary Public,
personally appeared STEVEN FISHER , who acknowledged
themself to be the VP , of Santander Bank, N.A., a corporation, and
that he/she as such Officer, being authorized to do so, executed the foregoing instrument for the
purposes therein contained by signing the name of the Corporation by himself as such Officer.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE TOROK
Notary Public
READING CITY, BERKS COUNTY
Commission Expires Oct 24, 2017

Loan #: _____ MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

[BORROWER SIGNATURE PAGE]

*Michael E Carey*
Michael E Carey, Borrower

*Lycoming* _____ COUNTY SS:

On this, the *11* (day) of *April* (month), 201 *4*, before me, a Notary Public, personally appeared, *Michael E Carey, Borrower(s)*, known to me (or satisfactorily proven), to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes here in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

*Helen L Wojner*
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Helen L. Wojner, Notary Public
Hughesville Boro, Lycoming County
My Commission Expires Aug. 9, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Loan #: [redacted]
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

# Exhibit J

*Exhibit J*

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

**Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee**

Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor  _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**Select Portfolio Servicing, Inc.**
Name

**P.O. Box 65250**
Number       Street

**Salt Lake City UT 84165-0250**
City          State        Zip Code

**1-800-258-8602**
Contact phone

Contact Email

Where should payments to the creditor be sent? (if different)

**Select Portfolio Servicing, Inc.**
Name

**Attn: Remittance Processing, P.O. Box 65450**
Number       Street

**Salt Lake City UT 84165-0450**
City          State        Zip Code

**1-800-258-8602**
Contact phone

Contact Email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes.  Claim number on court claims registry (if known)_____

Filed on _____
              MM  / DD   / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes.  Who made the earlier filing? _____

6. **Do you have any number you use to identify the debtor?**
   ☐ No
   ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor          2937

7. **How much is this claim?** $38,630.06

   **Does this amount include interest or other charges?**
   ☐ No
   ☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   **Money Loaned**

9. **Is all or part of the claim secured?**
   ☐ No
   ☒ Yes. The claim is secured by a lien on property.
   Nature of property: 150 Big Pine Lane Jersey Shore, PA 17740

   ☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   Basis for perfection:  **Deed of Trust, Mortgage, Note**
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property:                          $_____
   Amount of the claim that is secured:     $38,630.06

   Amount of the claim that is unsecured:  $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition: $15,150.09

   Annual Interest Rate (when case was filed) 4.25000%

   ☒ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**
    ☒ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.      $_____

11. **Is this claim subject to a right of setoff?**
    ☒ No
    ☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. Check all that apply:                                                                                    **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).        $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).        $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).        $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).        $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.        $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  **12/04/2023**
                            MM / DD / YYYY

/s/ **Brian C. Nicholas, Attorney ID# 317240**
                Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | **Brian C. Nicholas**  First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000**  Number        Street | | |
| | **Philadelphia**  City | **PA**  State | **19106**  ZIP Code |
| Contact phone | **201-549-5366** | Email | **bnicholas@kmllawgroup.com** |

243

Case 4:23-bk-02191-MJC    Claim 3-1    Filed 12/04/23    Desc Main Document    Page 3
Case 4:23-bk-02191-MJC    Doc 64    Filed 05/20/24    Entered 05/20/24 16:03:39    Desc
Main Document    Page 59 of 102

| | |
|---|---|
| Michael E Carey | CHAPTER 13 |
| Debtor(s) | NO. 23-02191 MJC |

## CERTIFICATE OF SERVICE

I, the undersigned, attorney for Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee do hereby certify that true and correct copies of the foregoing Proof of Claim have been served December 04, 2023, by electronic filing upon those listed below:

Attorney for Debtor(s)
ProSe

**Bankruptcy Trustee**
Jack N. Zaharopoulos
8125 Adams Drive, Suite A
Hummelstown, PA 17036

Date: December 04, 2023

/s/ Brian C. Nicholas
Brian C. Nicholas
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case Number | 23-02191 MJC |
| Debtor 1 | Michael E Carey |
| Debtor 2 | |
| Last 4 Digits to Identify | 2937 |
| Creditor | Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee |
| Servicer | Select Portfolio Servicing, LLC |
| Fixed Accrual, Daily Simple Interest or Other | Fixed |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal Balance | $27,002.24 |
| Interest Due | $1,139.75 |
| MIP Amount | $0.00 |
| Fees / Costs Due | $3,497.55 |
| Escrow Def for Funds Advanced | $7,029.98 |
| Less Total Funds on Hand | $39.76 |
| TOTAL DEBT | $38,630.06 |

## Part 3: Arrearage as of Date Of Petition

| | |
|---|---|
| Principal & Interest Due | $4,133.36 |
| Pre-petition Fees Due | $3,497.55 |
| Escrow Def For Funds Advanced | $7,029.98 |
| Projected Escrow Shortage | $235.66 |
| Less Total Funds on Hand | $39.76 |
| Total Prepetition Arrears | $15,150.09 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & Interest | $295.24 |
| Monthly Escrow | $197.31 |
| Mortgage Insurance | $0.00 |
| Total Monthly Payment | $492.55 |

## PART 5: Less Payment History From First Date of Default

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2019 | 483.82 | | | Monthly Payment Due | 11/30/2019 | 483.82 | | | | | | 31,022.83 | | 0.00 | 0.00 | 0.00 |
| 11/30/2019 | | | | Late Charges | 11/30/2019 | 483.82 | | | | 29.52 | | 31,022.83 | | 0.00 | 29.52 | 0.00 |
| 12/9/2019 | 483.82 | 483.82 | | Escrow Balance | 11/30/2019 | 483.82 | | | 19.94 | | | 31,022.83 | | 19.94 | 29.52 | 0.00 |
| 12/20/2019 | 483.82 | | | Monthly Payment Due | 11/30/2019 | 967.64 | | | | | | 31,022.83 | | 19.94 | 29.52 | 0.00 |
| 1/20/2020 | 483.82 | | | Monthly Payment Due | 11/30/2019 | 1,429.42 | | | | | | 31,022.83 | | 19.94 | 44.52 | 0.00 |
| 2/10/2020 | | | | Property Inspection | 11/30/2019 | 1,429.42 | | | | 15.00 | | 31,022.83 | | 19.94 | 59.28 | 0.00 |
| 2/18/2020 | | | | Late Charge | 11/30/2019 | 1,429.42 | | | | 14.76 | | 31,022.83 | | 19.94 | 59.28 | 0.00 |
| 2/28/2020 | 461.78 | | | Monthly Payment Due | 11/30/2019 | 1,891.20 | | | | | | 31,022.83 | | 19.94 | 509.28 | 0.00 |
| 3/5/2020 | | | | BPO/Approval | 11/30/2019 | 1,891.20 | | | | 450.00 | | 31,022.83 | | 19.94 | 509.28 | 0.00 |
| 3/5/2020 | | 483.82 | | Monthly Payment Posted | 11/30/2019 | 1,437.58 | 190.40 | 104.84 | 188.58 | | | 30,831.43 | | 286.52 | 509.28 | 0.00 |
| 3/10/2020 | 461.78 | 483.82 | | Monthly Payment Posted | 12/30/2019 | 921.56 | 191.07 | 104.17 | 188.58 | | | 30,641.36 | | 397.10 | 509.28 | 0.00 |
| 3/10/2020 | 461.78 | 461.78 | | Monthly Payment Posted | 1/30/2020 | 461.78 | 191.75 | 103.49 | 166.54 | | | 30,449.61 | | 566.64 | 509.28 | 0.00 |
| 3/30/2020 | | 461.78 | 367.50 | Monthly Payment Posted | 2/30/2020 | 0.00 | 192.43 | 102.81 | 166.54 | | | 30,257.18 | | 730.18 | 509.28 | 0.00 |
| 3/30/2020 | 461.78 | | | Monthly Payment Due | 2/30/2020 | 461.78 | | | | | | 30,257.18 | | 730.18 | 509.28 | 0.00 |
| 4/6/2020 | | | | Late Charge | 2/30/2020 | 461.78 | | | | 14.76 | | 30,257.18 | | 362.72 | 524.04 | 0.00 |
| 4/14/2020 | 461.78 | | | Monthly Payment Due | 3/30/2020 | 923.56 | | | | | | 30,257.18 | | 362.72 | 524.04 | 0.00 |
| 4/20/2020 | | 461.78 | | Monthly Payment Posted | 3/30/2020 | 461.78 | 193.11 | 102.13 | 166.54 | | | 30,030.64 | | 362.72 | 524.04 | 0.00 |
| 5/14/2020 | | 461.78 | | Monthly Payment Posted | 4/30/2020 | 461.78 | 193.79 | 101.45 | 166.54 | | | 29,870.28 | | 525.26 | 524.04 | 0.00 |
| 4/30/2020 | 461.78 | | | Monthly Payment Posted | 4/30/2020 | 923.56 | 194.48 | 100.76 | 166.54 | | | 29,870.28 | | 695.80 | 524.04 | 0.00 |
| 5/30/2020 | | | | Monthly Payment Due | 5/30/2020 | 1,385.34 | | | | | | 29,870.28 | | 695.80 | 524.04 | 0.00 |
| 5/30/2020 | 461.78 | | | Monthly Payment Due | 5/30/2020 | 923.56 | | | | | | 29,870.28 | | 695.80 | 524.04 | 0.00 |
| 5/30/2020 | 461.78 | 461.78 | | Monthly Payment Posted | 5/30/2020 | 461.78 | 195.86 | 99.38 | 166.54 | | | 29,630.65 | | 696.80 | 524.04 | 0.00 |
| 5/30/2020 | | 461.78 | | Monthly Payment Posted | 5/30/2020 | 0.00 | 196.55 | 98.69 | 166.65 | | | 29,294.77 | | 696.80 | 524.04 | 0.00 |
| 6/30/2020 | | | | Monthly Payment Due | 6/30/2020 | 923.56 | | | | | | 29,294.77 | | 1,028.88 | 524.04 | 0.00 |
| 7/20/2020 | 461.78 | 461.78 | | Monthly Payment Posted | 6/30/2020 | 461.78 | | | | | | 29,294.77 | | 1,195.42 | 524.04 | 0.00 |
| 7/30/2020 | 461.78 | 461.78 | | Monthly Payment Posted | 6/30/2020 | 461.78 | | | | | | 29,294.77 | | 783.59 | 524.04 | 0.00 |
| 7/20/2020 | | 461.78 | | Monthly Payment Posted | 7/30/2020 | 0.00 | | | | | | 29,284.77 | | 783.59 | 524.04 | 0.00 |
| 7/20/2020 | 461.78 | 461.78 | | Monthly Payment Posted | 8/30/2020 | 461.78 | | | | | | 29,284.77 | | 830.04 | 524.04 | 0.00 |
| 8/20/2020 | | | | Monthly Payment Due | 8/30/2020 | 99.89 | | | | | | 29,284.77 | | 830.04 | 524.04 | 0.00 |
| 8/20/2020 | 461.78 | | | Monthly Payment Due | 9/30/2020 | 99.89 | | | | | | 29,088.22 | | (15.49) | 524.04 | 0.00 |
| 9/15/2020 | 461.89 | 361.89 | | Monthly Payment Posted | 9/30/2020 | 99.89 | 196.55 | 98.69 | 166.54 | | | 29,088.22 | | (15.49) | 524.04 | 0.00 |
| 9/30/2020 | | | | Monthly Payment Posted | 9/30/2020 | 99.89 | | | | | | 29,088.22 | | (111.66) | 524.04 | 0.00 |
| 9/30/2020 | | | 412.03 | School Tax | 10/30/2020 | 99.89 | | | | | | 29,088.22 | | (111.66) | 524.04 | 0.00 |
| 10/30/2020 | Deferred Payment | | 886.53 | Payment Posted | 10/30/2020 | 99.89 | | (965.53) | | | | 29,088.22 | | (207.83) | 524.04 | 0.00 |
| 11/20/2020 | | | | Homeowner's Insurance | 10/30/2020 | 99.89 | | | | | | 29,088.22 | | (207.83) | 524.04 | 0.00 |
| 10/30/2020 | Deferred Payment | | 96.17 | Payment Posted | 10/30/2020 | 99.89 | | (96.17) | | | | 29,088.22 | | (207.83) | 524.04 | 0.00 |
| 11/20/2020 | | | | Payment Period | 10/30/2020 | 99.89 | | | | | | 29,088.22 | | (720.83) | 524.04 | 0.00 |
| 10/30/2020 | Deferred Payment | | 96.17 | Homeowner's Insurance | 10/30/2020 | 99.89 | | (96.17) | | | | 29,088.22 | | (303.96) | 524.04 | 0.00 |
| 12/30/2020 | | | | Payment Period | 10/30/2020 | 99.89 | | | | | | 29,088.22 | | (303.96) | 524.04 | 0.00 |
| 10/30/2020 | Deferred Payment | | | Payment Posted | 10/30/2020 | 99.89 | | | | | | 29,088.22 | | (393.96) | 524.04 | 0.00 |
| 1/27/2021 | | | | Payment Posted | 10/30/2021 | 99.89 | | | | | | 29,083.22 | | (393.96) | 524.04 | 0.00 |
| 2/11/2021 | | | 96.13 | Interest on Advances | 10/30/2021 | 99.89 | | (96.13) | | 0.65 | | 29,083.22 | | (393.96) | 524.47 | 0.00 |
| 2/25/2021 | | | | Homeowner's Insurance | 10/30/2021 | 99.89 | | | | | | 29,083.22 | | (393.96) | 524.47 | 0.00 |
| 2/28/2021 | Deferred Payment | | | Interest on Advances | 10/30/2021 | 99.89 | | | | 1.56 | | 29,083.22 | | (393.96) | 542.03 | 0.00 |
| 3/11/2021 | | | | Property Inspection | 10/30/2021 | 99.89 | | | | 13.00 | | 29,083.22 | | (393.96) | 542.03 | 0.00 |
| 3/11/2021 | | | | Interest on Advances | 10/30/2021 | 99.89 | | | | | | 29,083.22 | | (401.55) | 543.79 | 0.00 |
| 3/30/2021 | | | 96.13 | Payment Posted | 10/30/2021 | 99.89 | | (96.13) | | | | 29,083.22 | | (401.55) | 543.79 | 0.00 |
| 3/31/2021 | Deferred Payment | | | Homeowner's Insurance | 10/30/2021 | 99.89 | | | | | | 29,083.22 | | (401.55) | 544.03 | 0.00 |
| 4/12/2021 | | | 97.59 | Interest on Advances | 10/30/2021 | 99.89 | | (97.59) | | 1.76 | | 29,083.22 | | (545.79) | 545.79 | 0.00 |
| 4/15/2021 | | | 367.46 | City Tax | 10/30/2021 | 99.89 | | (367.46) | | | | 29,083.22 | | (769.01) | 545.79 | 0.00 |

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case Number: | 23-01291-MJC |
| Debtor 1 | Michael S. Carey |
| Debtor 2 | |
| Last 4 Digits to Match: | 2517 |
| Creditor: | Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee |
| Servicer: | Select Portfolio Servicing, LLC |
| Fixed Accrual, Daily Simple Interest or Other: | Fixed |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Prepaid Balance | $17,000.24 |
| Interest Due | $1,130.75 |
| MIP Amount | $0.00 |
| Fees / Costs Due | $5,497.85 |
| Escrow Def For Funds Advanced | $5,497.85 |
| Less Total Funds on Hand | $59.76 |
| TOTAL DEBT | $23,656.06 |

**Part 3: Arrearage As Of Date Of Petition**

| | |
|---|---|
| Principal & Interest Due | $4,153.36 |
| Projections Fees Due | $5,497.85 |
| Escrow Def For Funds Advanced | $5,025.96 |
| Projected Escrow Shortage | $525.86 |
| Less Total Funds on Hand | $59.76 |
| Total Transaction Amount | $15,150.09 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & Interest | $282.54 |
| Monthly Escrow | $197.31 |
| Mortgage Insurance | $0.00 |
| Total Monthly Payment | $482.55 |

PART B: Loan Payment History From First Date of Default

(tabular payment ledger — columns: Date; Contractual Payment Amount; Funds Received; Amount Incurred; From this list — Description; Contractual Due Date; Prin Pd at End of Pd / Fees Balance; Amount to Principal; Amount to Escrow; Amount to Fees or Charges; Unapplied Funds; Principal Balance; Accrued Interest Balance; Escrow Balance; Fees Charged; Unapplied Funds Balance)

Case 4:23-bk-02191-MJC   Claim 3-1 Part 2   Filed 12/04/23   Desc Exhibit 410a Payment History   Page 3 of 4

**Part 1: Mortgagee and Case Information**

| | |
|---|---|
| Case Number: | 23-02191-MJC |
| Debtor 1: | Michael E Corey |
| Debtor 2: | |
| Last 4 Digits to Identify: | 2957 |
| Creditor: | Towd Point Mortgage Trust 2004-1, U.S. Bank National Association, as Indenture Trustee |
| Servicer: | Select Portfolio Servicing, LLC |
| Fixed Accrual Daily Simple Interest or Other: | Fixed |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal Balance: | $27,002.24 |
| Interest Due: | $1,139.75 |
| MIP Amount: | $0.00 |
| Fees / Costs Due: | $3,497.85 |
| Escrow Def for Funds Advanced: | $7,029.98 |
| Less Total Funds on Hand: | $39.76 |
| TOTAL DEBT: | $38,630.06 |

**Part 3: Arrearage As Of Date Of Petition**

| | |
|---|---|
| Principal & Interest Due: | $4,133.36 |
| Pre-petition Fees Due: | $3,497.85 |
| Escrow Def for Funds Advanced: | $7,029.98 |
| Projected Escrow Shortage: | $528.66 |
| Less Total Funds on Hand: | $39.76 |
| Total Prepetition Arrears Amount: | $15,150.09 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & Interest: | $295.24 |
| Monthly Escrow: | $197.31 |
| Mortgage Insurance: | $0.00 |
| Total Monthly Payment: | $492.55 |

**PART 5: Loan Payment History From First Date of Default**

| A Date mm/dd/yyyy | B Contractual Payment Amount | C Funds Received | D Amount Incurred | E Description from the list | F Contractual Due Date | G Prin Int & Esc Past Due calculated | H Amount to Principal | I Amount to Interest | J Amount to Escrow +/- | K Amount to Fees or Charges +/- | L Unapplied funds +/- | M Principal Balance calculated | N Accrued Interest Balance | O Escrow Balance calculated | P Fees/Charges Balance calculated | Q Unapplied Funds Balance calculated |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/25/2022 | | | 97.51 | Homeowner's Insurance | 3/50/2022 | 679.77 | | | (97.51) | | | 28,057.01 | | (3,144.29) | 660.62 | 0.00 |
| 2/28/2022 | 615.88 | | | Monthly Payment Due | 3/50/2022 | 1,295.65 | | | | | | 28,057.01 | | (3,823.56) | 660.62 | 0.00 |
| 2/25/2022 | | 615.88 | | Monthly Payment Posted | 4/30/2022 | 679.77 | 209.47 | 85.77 | 320.64 | 1.81 | | 27,847.54 | | (3,823.56) | 662.43 | 0.00 |
| 2/25/2022 | | | | Interest in Advance | 4/30/2022 | 679.77 | | | | | | 27,847.54 | | (3,823.56) | 662.43 | 0.00 |
| 3/11/2022 | | | | Monthly Payment Posted | 5/50/2022 | 1,295.65 | 210.21 | 85.03 | 320.64 | | | 27,637.33 | | (2,502.92) | 662.43 | 0.00 |
| 3/30/2022 | 615.88 | | | Homeowner's Insurance | 5/50/2022 | 679.77 | | | (102.54) | | | 27,637.33 | | (2,506.92) | 662.43 | 0.00 |
| 3/30/2022 | | | 103.54 | Insurance Refund | 5/50/2022 | 679.77 | | | 98.64 | 2.01 | | 27,637.33 | | (2,506.92) | 664.44 | 0.00 |
| 3/30/2022 | | | | Interest on Advances | 5/50/2022 | 679.77 | | | | | | 27,637.33 | | (3,465.07) | 664.44 | 0.00 |
| 4/8/2022 | | | | Interest on Advances | 5/50/2022 | 679.77 | | | (956.15) | | | 27,637.33 | | (3,785.71) | 664.44 | 0.08 |
| 4/11/2022 | | | 956.15 | Payment Reversal | 4/50/2022 | 679.77 | (210.21) | (85.03) | (320.64) | | | 27,847.54 | | (4,424.35) | 664.44 | 0.00 |
| 4/19/2022 | | | | Payment Reversal | 3/30/2022 | 679.77 | (209.47) | (85.77) | (320.64) | | | 28,057.01 | | (4,424.35) | 664.44 | 0.00 |
| 4/19/2022 | | | | Miscellaneous | 3/50/2022 | 679.77 | | | | 14.76 | | 28,057.01 | | (4,424.99) | 679.20 | 0.00 |
| 4/21/2022 | | | | Late Charge | 3/50/2022 | 679.77 | | | | 20.00 | | 28,057.01 | | (4,424.99) | 699.20 | 0.00 |
| 4/21/2022 | | | | NSF Fee | 3/50/2022 | 679.77 | | | | | | 28,057.01 | | (4,745.63) | 699.20 | 0.00 |
| 4/25/2022 | | | | Miscellaneous | 3/50/2022 | 1,295.65 | | | (320.64) | 1.84 | | 28,057.01 | | (4,745.63) | 701.14 | 0.00 |
| 4/25/2022 | 615.88 | | | Monthly Payment Due | 3/00/2022 | 1,295.65 | | | | | | 28,057.01 | | (4,745.63) | 701.14 | 0.00 |
| 4/25/2022 | | | | Interest on Advances | 3/00/2022 | 1,295.65 | | | | 450.00 | | 28,057.01 | | (4,745.63) | 1,151.14 | 0.00 |
| 4/30/2022 | | | | BPO/Appraisal | 3/00/2022 | 1,295.65 | | | | 14.76 | | 28,057.01 | | (4,745.63) | 1,165.90 | 0.00 |
| 4/30/2022 | | | | Property Inspection | 3/00/2022 | 1,295.65 | | | | | | 28,057.01 | | (4,745.63) | 1,165.90 | 0.00 |
| 5/11/2022 | | 615.88 | | Monthly Payment Posted | 4/00/2022 | 679.77 | 209.46 | 85.78 | 320.64 | | | 27,847.55 | | (4,424.99) | 1,165.90 | 0.00 |
| 5/13/2022 | | | | Monthly Payment Due | 4/30/2022 | 1,295.65 | | | | 19.99 | | 27,847.55 | | (4,424.99) | 1,185.89 | 0.00 |
| 5/16/2022 | | | | Property Inspection | 4/00/2022 | 1,295.65 | | | | 3.77 | | 27,847.55 | | (4,424.99) | 1,189.66 | 0.00 |
| 5/30/2022 | 615.88 | | | Interest on Advances | 4/00/2022 | 1,295.65 | | | | 14.76 | | 27,847.55 | | (4,424.99) | 1,204.42 | 0.00 |
| 6/8/2022 | | | | Late Charge | 4/00/2022 | 1,295.65 | | | | | | 27,847.55 | | (4,104.35) | 1,204.42 | 0.00 |
| 6/13/2022 | | 615.88 | | Monthly Payment Posted | 5/00/2022 | 679.77 | 210.21 | 85.03 | 320.64 | (44.28) | | 27,637.34 | | (4,104.35) | 1,204.42 | 0.00 |
| 6/14/2022 | | | | Renv of Late Charge | 5/00/2022 | 679.77 | | | | | | 27,637.34 | | (4,104.35) | 1,160.14 | 0.00 |
| 6/23/2022 | | | | Monthly Payment Due | 5/00/2022 | 1,208.23 | | | | 3.34 | | 27,637.34 | | (4,104.35) | 1,163.48 | 0.00 |
| 6/30/2022 | 528.48 | | | Interest on Advances | 5/00/2022 | 1,208.23 | 211.70 | 83.54 | 320.64 | | | 27,637.34 | | (4,104.35) | 1,163.48 | 0.00 |
| 6/30/2022 | | | | Property Inspection | 5/00/2022 | 1,756.73 | 212.45 | 82.79 | 233.24 | | | 27,637.34 | | (4,104.35) | 1,163.48 | 0.00 |
| 7/11/2022 | 528.48 | | | Monthly Payment Due | 7/00/2022 | 2,265.21 | | | | 19.99 | | 27,000.24 | | (4,104.35) | 1,163.47 | 0.00 |
| 7/30/2022 | | | | Monthly Payment Posted | 7/00/2022 | 2,265.21 | | | | | | 27,000.24 | | (3,783.71) | 1,183.47 | 184.12 |
| 8/7/2022 | 528.48 | | | Property Inspection | 7/00/2022 | 993.69 | | | | 3.90 | | 27,000.24 | | (5,216.14) | 1,183.47 | 184.12 |
| 8/30/2022 | | 800.00 | | Monthly Payment Posted | 7/00/2022 | 991.69 | 84.29 | 320.64 | | 19.99 | 184.12 | 27,424.39 | | (4,662.26) | 1,191.09 | 184.12 |
| 8/10/2022 | | | | Interest on Advances | 7/00/2022 | 1,322.17 | | | (1,152.45) | | | 27,426.39 | | (4,662.26) | 1,211.08 | 39.76 |
| 8/11/2022 | | | | Monthly Payment Period | 7/20/2022 | 1,522.17 | | | 320.64 | 3.72 | | 27,124.69 | | (4,662.26) | 1,214.66 | 39.76 |
| 8/25/2022 | 528.48 | | | Monthly Payment Due | 7/20/2022 | 2,059.65 | | | | 3.58 | | 27,000.24 | | (4,662.26) | 1,214.66 | 39.76 |
| 8/25/2022 | | 1,000.00 | | Payment from Unapplied | 7/20/2022 | 465.21 | 211.70 | 83.54 | 320.64 | 384.12 | | 27,124.69 | | (4,662.26) | 1,187.19 | 556.04 |
| 9/1/2022 | | | | Payment Due | 7/20/2022 | 465.21 | 212.45 | 82.79 | 233.24 | (253.46) | | 27,000.24 | | (4,662.26) | 1,187.19 | 39.76 |
| 9/12/2022 | 528.48 | | | Property Inspection | 7/20/2022 | 991.69 | | | | 3.90 | | 27,000.24 | | (4,662.26) | 1,191.09 | 39.76 |
| 9/12/2022 | | | | Interest on Advances | 7/20/2022 | 991.69 | | | | 19.99 | | 27,000.24 | | (4,662.26) | 1,211.08 | 39.76 |
| 10/1/2022 | 528.48 | | | Monthly Payment Period | 7/20/2022 | 1,322.17 | | | 320.64 | 3.58 | | 27,000.24 | | (4,662.26) | 1,214.66 | 39.76 |
| 10/11/2022 | | | | Interest on Advances | 7/20/2022 | 1,322.17 | | | | 19.99 | | 27,000.24 | | (4,662.26) | 1,234.66 | 39.76 |
| 10/11/2022 | | | | Property Inspection | 7/20/2022 | 2,059.65 | | | | | | 27,000.24 | | (4,662.26) | 1,234.66 | 39.76 |
| 10/25/2022 | 528.48 | | | Monthly Payment Due | 7/20/2022 | 2,059.65 | | | | 3.88 | | 27,000.24 | | (4,662.26) | 1,238.53 | 39.76 |
| 11/7/2022 | | | | BPO/Appraisal | 7/20/2022 | 2,060.65 | | | | 450.00 | | 27,000.24 | | (4,662.26) | 1,683.53 | 39.76 |
| 11/14/2022 | 528.48 | | | Monthly Payment Due | 7/20/2022 | 2,542.40 | | | | | | 27,000.24 | | (4,662.26) | 1,683.53 | 39.76 |
| 11/14/2022 | | | | Property Inspection | 7/20/2022 | 2,542.40 | | | | 19.99 | | 27,000.24 | | (4,662.26) | 1,708.52 | 39.76 |
| 12/7/2022 | 591.75 | | | | 12/5/2022 | | | | | | | | | | | |

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case Number | 23-02191-MJC |
| Debtor 1 | Michael E Curry |
| Debtor 2 | |
| Last 4 Digits to Identify | |
| Creditor | Trust Point Mortgage Trust 2024-1, U.S. Bank National Association, as Indenture Trustee |
| Servicer | Select Portfolio Servicing, LLC |
| Fixed Accrual/Daily Simple Interest or Other | Fixed |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal Balance | $57,002.24 |
| Interest Due | $11,130.73 |
| MIP Amount | $0.00 |
| Fees / Costs Due | $3,457.55 |
| Escrow Def For Funds Advanced | $7,020.96 |
| Less Total Funds on Hand | $39.76 |
| **TOTAL DEBT** | **$78,471.06** |

**Part 3: Amounts As Of Date Of Petition**

| | |
|---|---|
| Principal & Interest Due | $4,153.28 |
| Projected Fees Due | $3,457.55 |
| Escrow Def For Funds Advanced | $7,020.96 |
| Projected Escrow Shortage | $526.96 |
| Less Total Funds on Hand | $39.76 |
| **Total Prepetition Amount** | **$15,150.00** |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & Interest | $295.24 |
| Monthly Escrow | $197.31 |
| Mortgage Insurance | $0.00 |
| **Total Monthly Payment** | **$492.55** |

**PART 5: Loan Payment History From First Date of Default**

**Balance After Amount Received or Incurred**

| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin & Int Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees Charges Balance | Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2020 | | | | Interest on Advances | 7/1/2020 | 4,042.30 | | | | 2.12 | | 57,002.24 | | 14,662.240 | 1,711.55 | 39.76 |
| 12/21/2020 | | | | FC Costs | 7/1/2020 | 4,042.30 | | | | 250.00 | | 57,002.24 | | 14,662.240 | 1,961.55 | 39.76 |
| 12/31/2020 | | | | FC Fees | 7/1/2020 | 4,042.30 | | | | 50.00 | | 57,002.24 | | 14,662.240 | 2,011.55 | 39.76 |
| 1/1/2021 | 491.75 | | | Monthly Payment Due | 8/1/2020 | 4,534.05 | | | | | | 57,002.24 | | 14,662.240 | 2,011.55 | 39.76 |
| 1/7/2021 | | | | Property Inspection | 8/1/2020 | 3,525.40 | | | | 19.99 | | 57,002.24 | | 14,662.240 | 2,031.54 | 39.76 |
| 2/1/2021 | 491.75 | | | Monthly Payment Due | 9/1/2020 | 3,525.80 | | | | | | 57,002.24 | | 14,662.240 | 2,031.54 | 39.76 |
| 2/8/2021 | | | | Property Inspection | 9/1/2020 | 4,017.55 | | | | 19.99 | | 57,002.24 | | 14,662.240 | 2,051.53 | 39.76 |
| 3/1/2021 | 491.75 | | | Monthly Payment Due | 10/1/2020 | 4,017.55 | | | | | | 57,002.24 | | 14,662.240 | 2,051.53 | 39.76 |
| 3/24/2021 | | | | Property Inspection | 10/1/2020 | 4,517.55 | | | | 19.99 | | 57,002.24 | | 14,662.240 | 2,071.52 | 39.76 |
| 4/1/2021 | 491.75 | | | Monthly Payment Due | 11/1/2020 | 5,009.30 | | | | | | 57,002.24 | | 14,662.240 | 2,071.52 | 39.76 |
| 4/13/2021 | | 494.15 | | Property Inspection | 12/1/2020 | 5,009.30 | | | (494.15) | | | 57,002.24 | | 15,616.41 | 2,091.61 | 39.76 |
| 5/1/2021 | 491.75 | | | Monthly Payment Due | 12/1/2020 | 5,501.15 | | | | 250.00 | | 57,002.24 | | 15,616.41 | 2,341.61 | 39.76 |
| 6/1/2021 | 491.75 | | | Monthly Payment Due | 1/1/2021 | 5,992.90 | | | | | | 57,002.24 | | 15,616.41 | 2,341.61 | 39.76 |
| 6/11/2021 | | | | FC Costs | 1/1/2021 | 6,192.90 | | | | 490.00 | | 57,002.24 | | 15,616.41 | 2,831.61 | 39.76 |
| 7/1/2021 | 491.75 | | | Monthly Payment Due | 2/1/2021 | 6,764.65 | | | | 240.25 | | 57,002.24 | | 15,616.41 | 3,071.86 | 39.76 |
| 8/1/2021 | 491.75 | | | Monthly Payment Due | 3/1/2021 | 7,276.40 | | (1,411.57) | | | | 57,002.24 | | 17,027.98 | 3,071.86 | 39.76 |
| 8/30/2021 | | | | School Tax | 9/1/2021 | 7,950.15 | | | | | | 57,002.24 | | 17,027.98 | 3,457.98 | 39.76 |
| 9/1/2021 | 491.75 | | | Monthly Payment Due | 4/1/2021 | 7,986.15 | | | | | | 57,002.24 | | 17,028.93 | 3,457.98 | 39.76 |
| 9/22/2021 | | 1,411.57 | | Current BK Note | 5/1/2021 | 7,985.15 | | | | | | 57,002.24 | | 17,028.93 | 3,457.98 | 39.76 |

The entity that has the right to foreclose is Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee by virtue of being owner and holder of note.

 SELECT
PORTFOLIO
SERVICING, Inc.

Sign up for paperless delivery
at www.spservicing.com

Paperless

November 27, 2023

 MICHAEL E CAREY
150 BIG PINE LN
PDF, PA 17740

Account Number: _____
Property Address: 150 BIG PINE LN
JERSEY SHORE, PA 17740

### RE: Important notice regarding your Annual Escrow Account Disclosure Statement and your new escrow payment amount

### This statement is for informational purposes only

Dear Customer(s):

SPS reviewed your escrow account to determine your new monthly escrow payment. Following are the answers to the most common questions we receive about the escrow account and the details related to the analysis.

1. **What is the amount of my new monthly payment?**
   The table below shows your new monthly payment, including any escrow changes from this new analysis statement.

| Table 1 | Current Payment | New Payment (as of 10/30/2023) | Change |
|---|---|---|---|
| Principal and Interest | $295.24 | $295.24 | |
| Regular Escrow Payment | $199.05 | $197.31 | $-1.74 |
| Monthly Shortage Payment | $97.46 | $0.00 | $-97.46 |
| Total Payment | $591.75 | $492.55 | $-99.20 |

2. **Why did the escrow portion of my payment change?**
   There are three main reasons why your escrow account payment may change from year to year.

   A. **Regular Escrow Payments** - Changes occur based on differences between the expected property tax or insurance payments for the prior year and the expected property tax or insurance payments for the current year. Table 2 shows those differences and any resulting monthly shortage change, which is explained in section C.

| Table 2 | Prior Year Estimated Disbursements | Current Year Estimated Disbursements (as of 10/30/2023) | Change |
|---|---|---|---|
| Tax Disbursements | $2,388.58 | $2,367.72 | $-20.86 |
| Total Annual Escrow Disbursements | $2,388.58 | $2,367.72 | $-20.86 |
| Monthly Escrow Payment | $199.05 | $197.31 | $-1.74 |
| Monthly Shortage Payment | $97.46 | $0.00 | $-97.46 |



**B. Escrow Reserve Requirements** – RESPA/Federal law allows lenders to maintain a maximum of two months reserve in your escrow account, commonly referred to as a cushion. However, based on state, investor, or modification requirements your cushion requirement may be less than the Federal requirement. Your account has a monthly reserve requirement of 2 months. This reserve is established to cover unanticipated increases in your property taxes, insurance and other escrow amounts. The monthly reserve requirement amount is $394.62 and is accounted for in your monthly escrow payment reflected above in Tables 1 and 2. If your account has mortgage insurance, the monthly mortgage insurance amount has been removed from the escrow reserve requirements.

**C. Escrow Balance** – The balance of the escrow account as of the date of this analysis has a deficiency of $6,756.98. The ending balance in table 3 and the beginning balance in table 4 of $864.93 is based on an assumption of receipt of the scheduled payments that are due on the account, as indicated by the letter E next to the payments. If the scheduled payments are made there will be a surplus in the account of $0.00.

There is no refund or shortage in your escrow account as of this analysis.

Table 3 below shows a detailed history of your escrow account transactions since your last analysis. An asterisk (*) indicates a difference from a previous estimate in either the date or the amount. The letter E beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown prior to the effective date of this new analysis. Please note, if the payment or disbursement month shown in table 3 is the same month of this completed analysis and there is an asterisk (*) or the letter E next to the amount, the disbursement or amount may have already occurred by the time you receive this analysis statement and the actual amount may differ from the amount reflected below. Due to the effective date of the analysis, some history records between the effective date of the analysis and the date of this letter cannot be properly displayed but are accounted for in the starting and ending escrow balances. Please visit www.spservicing.com to see these transactions or contact us using the information below.

Table 3

| Month | Description | Payments Estimate | Payments Actual | Disbursements Estimate | Disbursements Actual | Total Balance |
|---|---|---|---|---|---|---|
| History | Beginning Balance | | | | | $-938.41 |
| December 2022 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-938.41 |
| January 2023 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-938.41 |
| February 2023 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-938.41 |
| March 2023 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-938.41 |
| April 2023 | COUNTY TAX | $199.05 | $0.00 E | $956.15 | $956.15 | $-1,894.56 |
| May 2023 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-1,894.56 |
| June 2023 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-1,894.56 |
| July 2023 | | $199.05 | $0.00 E | $0.00 | $0.00 | $-1,894.56 |
| August 2023 | SCHOOL TAX | $199.05 | $0.00 E | $1,432.43 | $0.00 * | $-1,894.56 |
| August 2023 | SCHOOL TAX | $0.00 | $0.00 E | $0.00 | $1,411.57 * | $-3,306.13 |
| September 2023 | | $199.05 | $3,898.06 E | $0.00 | $0.00 | $591.93 |
| **Totals** | | $1,990.50 | $3,898.06 | $2,388.58 | $2,367.72 | |

Table 4 below shows a detailed projection of future estimated escrow activity of your escrow account transactions since your last analysis as well as a projection of future escrow activity. The double asterisk (**) next to the required balance indicates the lowest projected balance in the analysis. This low balance is used to determine the surplus or shortage in your escrow account at the time of this analysis.

Table 4

| Month | Description | Payments Estimate | Disbursements Estimate | Beginning Balance | Required Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | $864.93 | $591.93 |
| October 2023 | | $197.31 | $0.00 | $789.24 | $789.24 |
| November 2023 | | $197.31 | $0.00 | $986.55 | $986.55 |
| December 2023 | | $197.31 | $0.00 | $1,183.86 | $1,183.86 |
| January 2024 | | $197.31 | $0.00 | $1,381.17 | $1,381.17 |
| February 2024 | | $197.31 | $0.00 | $1,578.48 | $1,578.48 |
| March 2024 | | $197.31 | $0.00 | $1,775.79 | $1,775.79 |
| April 2024 | CITY TAX | $197.31 | $956.15 | $1,016.95 | $1,016.95 |
| May 2024 | | $197.31 | $0.00 | $1,214.26 | $1,214.26 |
| June 2024 | | $197.31 | $0.00 | $1,411.57 | $1,411.57 |
| July 2024 | | $197.31 | $0.00 | $1,608.88 | $1,608.88 |
| August 2024 | SCHOOL TAX | $197.31 | $1,411.57 | $394.62 | $394.62** |
| September 2024 | | $197.31 | $0.00 | $591.93 | $591.93 |
| **Totals** | | $2,367.72 | $2,367.72 | | |

See reverse side
Case 4:23-bk-02191-MJC    Claim 3-1 Part 4    Filed 12/04/23    Desc Exhibit Analysis 05/2022    Page 3 of 4
Case 4:23-bk-02191-MJC    Doc 64    Filed 05/20/24    Entered 05/20/24 16:03:39    Desc
Main Document    Page 67 of 102

If you wish to send a written inquiry about your account or dispute any of the information on this statement, please send it to the address listed below for Notice of Error/Information Request. If you send your Notice of Error/Information Request to any other address, it may not be processed in accordance with the guidelines established by the Real Estate Settlement Procedures Act (RESPA).

**Important Mailing Addresses:**

| General Correspondence | Payment Remittance | Notice of Error/Information Request |
|---|---|---|
| PO Box 65250 Salt Lake City, UT 84165-0250 | PO Box 65450 Salt Lake City, UT 84165-0450 | PO Box 65277 Salt Lake City, UT 84165-0277 |

If your account is set up on a monthly automatic withdrawal payment option, your monthly payment withdrawal amount will be updated according to the adjusted payment above once the escrow analysis becomes effective. If you have any questions or concerns, please contact our Customer Service Department. Our toll-free number is 800-258-8602 and representatives are available Monday through Friday between the hours of 8 a.m. and 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time. You may also visit our website at www.spservicing.com.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

See reverse side





## Sovereign Bank

| | |
|---|---|
| **HOME EQUITY LINE OF CREDIT AGREEMENT** ("Agreement") | Date: AUGUST 24, 2009 |
| ☒ New Agreement ☐ Amendment | |
| Borrower: MICHAEL E CARBY | |
| Borrower: | Credit Limit: $ 39,000.00 |

"Premises" Secured by Mortgage/Loan Security Agreement:
150 BIG PINE LANE , JERSEY SHORE, PA 17740

| Lot/Book/Volume: | Block/Page: | City Register File #: |
|---|---|---|

We, Sovereign Bank, its successors and assigns, have approved your application for a new Home Equity Line Of Credit Account ("Account") or for an amendment to your existing Account. You, the person(s) who sign(s) as Borrower(s) below, may obtain advances charged to your Account up to your Credit Limit shown above. Under certain circumstances, we can: (1) terminate your Account, require you to pay us the entire outstanding balance in one payment, and charge you certain fees; (2) refuse to make additional extensions of credit; and (3) reduce your Credit Limit. These circumstances are described in the paragraph labeled "Our Absolute Obligation to Make Advances" which begins on Page 3.

**DEFINITIONS:** As used in this Agreement (unless the context requires otherwise): "Annual Percentage Rate" means the annualized cost of the advances charged to your Account as the result of applying a Periodic Rate to your daily Account balances each billing cycle, "Finance Charge" means the dollar amount the advances charged to your Account will cost you. "New Balance" means the sum of the advances charged to your Account and our charges at the end of the billing cycle, "Periodic Rate" means the cost of the advances charged to your Account as a daily rate, and "Statement" means the monthly statement of our charges for your use of the Account.

**ADDITIONAL DEFINITIONS:** "New Agreement" – if the "New Agreement" box above is checked, this Agreement is for a new Account. "Amendment" – if the "Amendment" box above is checked, this Agreement amends your existing Account.

**AMENDMENT:** If this Agreement is an amendment to your existing Account, the terms and conditions of your existing Account are amended as provided in this Agreement. This Agreement does not extinguish your existing agreement or Account. This Agreement amends your existing Account and agreement to the extent of the provisions contained in it, such as the applicable Annual Percentage Rate, the Margin and Index applied to determine the rate, the computation of the Finance Charge, all other Fees and Charges, as well as the other terms set forth in this Agreement. This Agreement may also amend your Account to add a Fixed Rate Lock Conversion Option, which is described below. In the event of any conflict in terms between this Agreement and your existing agreement, the terms and conditions of this Agreement will control.

**TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges for your Account.

**CREDIT LIMIT:** This Agreement covers a revolving line of credit for the principal amount specified above as your "Credit Limit" under this Agreement. If this Agreement amends your Credit Limit, then the Credit Limit shown above is the combined amount of the Credit Limit under your existing agreement and any increase or decrease, as applicable, in your Credit Limit resulting from this amendment. You may borrow against this line of credit, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit during the Draw Period described below. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain an advance that will make your Account overdraw your Account. If you exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Account exceeds your Credit Limit, even if we have not yet billed you. While we are processing any payment you make and before we have posted that payment to your Account, your Credit Limit may not reflect that payment. In addition, we do not have to post a payment to your Account if we have reason to believe that the check or other instrument you sent to us as payment will not be honored. We may also delay reinstating your Credit Limit for the amount of any principal payment you make until we reasonably believe that the instrument you used to make your payment has been paid.

**ADVANCES & TERM:** Unless extended by amendment, the length of the period of time during which you can obtain advances on your Account is Ten (10) years and is referred to in this Agreement as the "Draw Period". If this Agreement is an amendment, your current Draw Period will be extended to . You can obtain advances during the Draw Period by drawing one of the special checks that we will supply to you to directly obtain advances on your Account. Or, you can use any instrument or device that we may later provide to you to access your Account. You may not obtain an advance on your Account to pay the Minimum Payments due on your Account.

After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain advances on your Account. The length of the repayment period is 15 years from the end of the Draw Period, as it may have been extended, with a final payment due on the following date of maturity: 07/24/2034.

**STATEMENTS:** We will send you a Statement at the end of any billing cycle in which an advance, payment or credit is posted to your Account, we impose any charge, or if you have a balance on your Account.

- 1 -

BANK COPY



**OUR SECURITY INTEREST** As security for all sums you owe on your Account, including future advances and our finance and other charges, all of the owners of the Premises have executed a Mortgage/Loan Security Agreement on the above date in our favor. We will take a security interest in your home. You could lose your home if you do not meet the obligations in your agreement with us. Our rights in the Premises and the obligations of the Owners are more fully described in the Mortgage/Loan Security Agreement. If this Agreement is an amendment, your existing Mortgage/Loan Security Agreement and the lien in our favor on your Premises created by it will continue uninterrupted. If we request, you agree to execute a modification and extension to that Mortgage/Loan Security Agreement on the same date as this Agreement, which increases or decreases the Credit Limit, or extends the Draw Period, or both, as applicable.

**OUR CHARGES FOR YOUR ADVANCES:**

**1. Periodic Finance Charges:** A daily Periodic Finance Charge will be imposed on all advances made to your Account imposed from the date of each advance based on the "average daily balance" method. To get the average daily balance we take the beginning balance of your Account each day, add any new advances and subtract any payments or credits and any unpaid Finance Charges. This gives us the "daily balance". Then we add up all of the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance. We compute the Periodic Finance Charge on your Account as follows. We multiply the average daily balance by the number of days in the billing cycle, and multiply the product by the daily Periodic Rate.

a. **Rate Changes.** We will determine the Periodic Rate and the corresponding Annual Percentage Rate monthly as follows: We start with an independent index which is the highest rate reflected as the latest U.S. Prime Rate published in the Money Rate table of The Wall Street Journal (the "Index"). We will use the most recent index value available to us as of the first business day of the calendar month to make any Annual Percentage Rate adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you. To determine the daily Periodic Rate that will apply to your Account, we add 1.240 percentage points (which includes any applicable Preferred Rate Reduction described below) (the "Margin") to the value of the Index, and then divide the result by the number of days in a year. To obtain the Annual Percentage Rate that corresponds to the Periodic Rate, we multiply the daily Periodic Rate by the number of days in a year. This result is the Annual Percentage Rate that corresponds to the Periodic Rate. This Annual Percentage Rate includes only interest and no other costs.

The Periodic Rate and the corresponding Annual Percentage Rate may increase or decrease as often as once each month. The Periodic Rate and the corresponding Annual Percentage Rate will also increase upon the termination of any applicable Preferred Rate Reduction described below. The maximum ANNUAL PERCENTAGE RATE that can apply during the term of this Agreement is the lesser of 18% or the maximum rate allowed by applicable law. The ANNUAL PERCENTAGE RATE will never be less than 3.99%. Except for this 3.99% minimum and this 18% maximum (or, if less, the maximum rate allowed by applicable law), there is no limit on the amount by which the Annual Percentage Rate or the corresponding Periodic Rate can change during any one-year period. The maximum interest payment for a 30 day period at the highest ANNUAL PERCENTAGE RATE permitted hereunder (18%) based on your Credit Limit shown above would be $ 576.99.

Adjustments to the Periodic Rate and the corresponding Annual Percentage Rate resulting from changes in the Index will take effect monthly, beginning with the first day of the first billing cycle in the calendar month.

**Preferred Rate Reduction:** If you have asked us to automatically deduct your Minimum Payment from your Sovereign checking, money market or statement savings account, your Margin, Periodic Rate and your Annual Percentage Rate described in the paragraph entitled **OUR CHARGES FOR YOUR ADVANCES** reflect a reduction in the Margin (the amount of this reduction is the Preferred Rate Reduction). If you authorize us to automatically deduct your minimum monthly payments from a Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking, or Premier Money Market Savings or other qualifying account, your margin (and Annual Percentage Rate) has been reduced by .50%. If you authorize us to automatically deduct your minimum monthly payments from any other Sovereign deposit account, your margin (and Annual Percentage Rate) has been reduced by .25%. If the automatic deduction service stops for any reason, your Margin, and thus your Annual Percentage Rate will increase by 0.250 or 0.500 percentage points, as applicable, and your corresponding Periodic Rate will also increase. You may stop this automatic deduction service by telling us or by closing your Sovereign checking, money market or statement savings account. We may stop this automatic deduction service if you do not maintain enough funds in your checking, money market or statement savings account to pay your Minimum Payment.

b. **The Initial Rate.** Based on the Index and Margin and any applicable Preferred Rate Reduction in effect on the day you signed this Agreement, and subject to any minimum or maximum ANNUAL PERCENTAGE RATE set forth in this Agreement, the initial **ANNUAL PERCENTAGE RATE** is 4.490%, which corresponds to an initial daily Periodic Rate of 0.01230%.

**Loan Protection Plan(s):** If you have purchased the optional Sovereign Loan Protection Program, additional fees will be charged. Please see your Loan Protection Plan Agreement and related disclosures for additional details.

**2. Late Charges:** If your Minimum Payment is not received within 15 days of the Payment Due Date shown on your Statement, we will impose and you agree to pay a Late Charge of 16% of the unpaid portion of the Minimum Payment or $20, whichever is greater.

- 2 -



BANK COPY

**3. Application Fee:** We will charge a non-refundable fee of $400 only when the Account is opened and used for Swing Line purposes. (A Swing Line is interim financing secured by the existing property and is used for the purchase of a new residence prior to the sale of the existing property. A Sovereign Premier loan is available only when the financing for the purchase of the new residence is obtained through Sovereign Bank.)

**4. Termination Fee:** If you request that we close your Account within 30 months of the Date of this Agreement shown above and you were not required to pay any closing costs when the Account was opened, we will impose a Termination Fee of $220. We will waive this fee if your Account is refinanced with us or if the Account was used for Swing Line purposes.

**5. Fixed Rate Lock Fee:** We may charge a fee of $50 to your Revolving Account for each Fixed Rate Lock. This fee is a FINANCE CHARGE. Please see the paragraph below entitled "Fixed Rate Lock Conversion Option."

**6. Annual Fee:** You will be charged and you agree to pay an Annual Fee of $50.00 during the Draw Period. The Annual Fee will be charged in the 13th month after you open the Account and in about the same billing cycle of each following year during the Draw Period. If you have a Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking or other qualifying account, your Annual Fee will be $0. If you close your Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking or other qualifying account you will be charged an Annual Fee of $50.00 during the Draw Period.

**7. Other Charges:** We impose the following additional charges on your Account:
a.      We impose a Return Item Charge of $33.00 whenever your payment is returned for insufficient funds or any other reason.
b.      We will charge you $20.00 for each hour (or portion of an hour) of research that we perform at your request, unless done in connection with a proper written notice of a billing error.
c.      We will charge and you agree to pay an overlimit fee of $33.00 , when any special check or other request for an advance would cause you to exceed the Credit Limit, whether or not we honor your request.
d.      If a traditional appraisal was obtained and you request a copy in the first 90 days from the date this loan was closed, you will pay us a charge at the rate of $5 per page.
e.      If you request a copy of any document, including a special check or a Statement, we will impose a charge of $5 per page for each copy you request. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.
f.      We will charge and you agree to pay a fee of $25 whenever you request that we stop payment of a special check or other request for an advance on your Account.
g.      We charge you for our actual costs of Credit Reports and Appraisals incurred in investigating whether any condition permitting us to temporarily suspend credit availability or reduce the Credit Limit on your Account continues to exist.
h.      The current applicable fee to discharge the Mortgage or terminate any UCC Financing Statement securing this extension of credit and any extension or modification of it will be added to the payoff amount. Except as otherwise required by law, this fee will be waived if you agree to record the discharge of the mortgage or terminate any UCC Financing Statement yourself.
i.      If you request us to send you a payoff statement by facsimile transmission, we will charge you our then-current fee (currently $20) that will be added to your payoff amount.

**MINIMUM PAYMENT:** You promise to pay the advances and our Finance Charges and other charges as provided in this Agreement. To the extent your payments reduce the outstanding balance to an amount less than the Credit Limit, they restore your credit availability during the Draw Period. Whenever a balance is outstanding, each month you must pay us a Minimum Payment, which we must receive by the Payment Due Date shown on your Statement. The amount of any Minimum Payment or any other payment that is applied to principal or interest (Finance Charge) on your Account may vary, based upon when payments are received. You may at any time pay more than the Minimum Payment without incurring a penalty, but if you request that we close your Account under the circumstances set forth in subparagraph 4 of the paragraph of this Agreement entitled "Other Charges For Your Advances", we will impose a Termination Fee as set forth in that subparagraph. If you make a payment that exceeds your Minimum Payment, or make an additional payment when no payment is then due, we will apply the excess or additional payment amount to any balance in the Revolving Account portion of your Account before we apply it to any Fixed Rate Lock(s) you may have established on your Account.

**RECEIPT OF PAYMENTS:** All payments must be made by check, automatic account debit, electronic funds transfer, money order, or other instruments in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 6:00 PM Eastern Standard Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt. If you have elected to make your payments by automatic account debit, payment transfers will be processed on the date the payment is due monthly. If the scheduled date falls on a Sunday or a bank holiday, the transfer will be processed on the next business day. If funds for the payment are uncollected or the transfer on the transfer date, an insufficient funds charge may be assessed. If the payment is returned to us, the payment will be your responsibility for that month. If you do not maintain sufficient funds to process your payment transfer, your preauthorized transfer may be cancelled and any Preferred Rate Reduction may be terminated. Payments received at any of our branch offices on a business day (Monday - Friday) before the cut off time posted at that office will be credited to your account as of the date of receipt. Payments received on a non-business day (Saturday, Sunday or a bank holiday) or after the posted cut off time will be credited to your account as of the following business day. Payments received by any other method on a non-business day will also be credited as of the following business day.



BANK COPY

**ELECTRONIC PAYMENT:** Each time you make a payment by check, we may convert your check into an electronic payment. By sending us a check, you authorize us to convert your check. When we do this, the funds may be withdrawn from your account more quickly than if we processed your original check so always make sure you have enough funds in your account to make your payment. After we convert it, your check will not be sent back to you because we are required to destroy it. We do, however, keep an electronic copy. If you do not wish us to convert your check or if you need more information, please call us at 877-768-2265.

**PAYMENT OPTIONS:**

**Payment Option 1:** [ ] If the box preceding this sentence is checked, for any billing cycle during the Draw Period, your Minimum Payment will be equal to the sum of (i) all accrued Finance Charge and other charges for the billing cycle (minimum $20), plus (ii) optional Loan Protection Plan(s) fees, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance of principal at the end of the Draw Period, or $20, whichever is more, plus (ii) all accrued Finance Charge for the billing cycle, plus (iii) optional Loan Protection Plan(s) fees, if any, plus (iv) any other fees and charges and any amounts past due. You must also pay any Late Charges then outstanding. The amount of your Minimum Payments may increase if the Annual Percentage Rate increases. **NOTE:** Although interest-only payments may be less on a monthly basis, they retire no principal, **may** prolong the obligation, and result in greater total expenses over the life of the loan.

**Payment Option 2:** [X] If the box preceding this sentence is checked, for any billing cycle during the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/240th of the average daily balance plus all accrued Finance Charge at the end of the billing cycle, or $20, whichever is more (or the entire balance if less than $20), plus (ii) optional Loan Protection Plan(s) fees, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance of principal at the end of the Draw Period, or $20, whichever is more, plus (ii) all accrued Finance Charges for the billing cycle, plus (iii) optional Loan Protection Plan(s) fees, if any, plus (iv) any other fees and charges and any amounts past due. You must also pay any Late Charges then outstanding. The amount of your Minimum Payments may increase if the Annual Percentage Rate increases.

**Change to Payment Option:** After you choose a Payment Option, you may ask us to change your Payment Option during the Draw Period, as long as we consider your Account to have been in good standing at all times. Any changes in your Payment Option must be for a period of not less than 12 months.

**RIGHT OF SET OFF:** You authorize us to apply money from your deposit account(s) with us, now or in the future, to pay all or any part of any amount past due under this Agreement, without notice.

**AUTOMATIC PAYMENT AUTHORIZATION:** If an account number is inserted in the following space, you authorize us to deduct the amount of your Minimum Payment on the Payment Due Date shown on your Statement from your checking, money market or statement savings account. (Account Number: ███████████████ with us or with N/A _____ and to make the payment then due on your Account.

**PROPERTY INSURANCE:** You must obtain and maintain adequate insurance against fire, flood and such other reasonable risks to the Premises as we require. This insurance protects your interests and our interests in the Premises where this Agreement is in effect. YOU MAY OBTAIN SUCH INSURANCE FROM ANY AGENT, BROKER OR INSURANCE COMPANY OF YOUR CHOICE which is licensed to do business in the state where the Premises is located, and your choice of insurance agent, producer, broker or insurance company will not affect our credit decision. However, we reserve the right to refuse to accept any insurance company or policy for reasonable cause. The policy must name us as "mortgagee" and provide us with not less than 30 days' notice of any cancellation or reduction in coverage. You must provide us with evidence of such insurance coverage promptly after our request. In the event of an insured loss, you agree to promptly advise us of the loss and to file a proof of loss with the insurance company. You appoint us your attorney-in-fact, in your name or in ours, to file a proof of loss if you fail or refuse to do so, and to endorse your name to any check, draft or other instrument in payment of an insured loss. We will allow you and the Owners to apply the insurance proceeds to repair the Premises but only if we have not previously declared your Account to be in default, temporarily reduced your Credit Limit or frozen your Account, and the repairs are done properly.

**OUR ABSOLUTE OBLIGATION TO MAKE ADVANCES:** Except as provided below, our agreement to make advances to you during the Draw Period is an absolute obligation on our part. This means we MUST make each and every advance you properly request during the Draw Period, up to your Credit Limit, under this Agreement. However, our absolute obligation to make advances to you during the Draw Period ends when any of the following happens:

1. We declare your Account to be in default, which we can do when:
    a. You fail to meet the repayment terms of this Agreement for any outstanding balance.
    b. There is fraud or a material misrepresentation by you in connection with your Account.

    c. Any action or inaction by you adversely affects our security for your Account, or any right we have in such security. Among other things, such action or inaction would include:

    - the sale or transfer of title to the Premises without our consent,
    - your abandonment of the Premises, which adversely affects our security in the Premises.
    - your failure to maintain the required property insurance coverages on the Premises,
    - your failure to maintain the Premises in good condition and repair, which adversely affects our security in the Premises.
    - your permitting anything to be done to the Premises that would constitute waste or destruction of the Premises, or that would render the Premises unsafe or unfit for human habitation (such as by bringing or storing hazardous or toxic substances on the Premises), which adversely affects our security in the Premises.

4

BANK COPY



- your doing of any unlawful act that subjects the Premises to seizure by governmental authorities,
- your failure to pay taxes on the Premises,
- your permitting any liens to be filed on the Premises which are superior to ours,
- foreclosure by any prior mortgagee or lienholder which adversely affects our interest in the Premises,
- a taking of all or part of the Premises in a proceeding in eminent domain or condemnation,
- the death of the sole Borrower obligated on your Account, or if there are more than one of you, the death of any of you or any Owner of the Premises that results in a transfer of title to the Premises to a person who is not a party to our security interest in the Premises or that otherwise adversely affects our security in the Premises, or,
- if the Premises is a cooperative apartment, you break any of the promises you have made under the proprietary lease of the Premises, your proprietary lease is cancelled or terminated, the cooperative corporation fails to pay when due any mortgage payments, leasehold payments and/or real estate taxes it is obligated to pay, or to insure the building in which the Premises is located, or foreclosure, bankruptcy or insolvency proceedings are brought by or against the cooperative corporation, and any of such adversely affects our security or any right we have in the security.

If one or more of the above events occurs, we can temporarily or permanently reduce your Credit Limit or suspend your ability to obtain advances, or we can declare your Account to be in default. However, we can declare your Account in default only by personally delivering or mailing to you a written Notice of Default. Our Notice of Default will become effective when we personally deliver it to you or place it in the mails, even though you might not receive our mailed Notice of Default. If we declare your Account in default we will immediately terminate credit availability on your Account. If we choose, we may also send you a Notice of Intention to Take Action, advising you that if you do not cure the default within the time period then provided by law, we will demand repayment of the entire outstanding balance in one immediate payment and exercise our security interest and right of set-off against any of your property, including deposit accounts, then in our possession (unless prohibited by applicable law).

Except as otherwise provided below, if we don't receive payment in full, we may also foreclose upon the Premises and take any other collection action allowed to us by law. You agree to pay our court costs and collection fees we incur in the collection and enforcement of your Account, as well as our reasonable attorney's fees, to the extent permitted by law, if we refer your Account to an attorney or collection agency for collection. You agree to pay Finance Charges at the variable Annual Percentage Rate provided in this Agreement on the outstanding balance of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never been in default, but you will not restore your right to obtain additional advances on your Account.

If one or more of the above events occurs, we may elect to waive our right to declare your Account in default. If we waive that right, we will remain absolutely obligated to make all advances you properly request on the Account during the Draw Period. However, that waiver does not bind us if a similar or different event occurs later. At that time, we have the right to decide whether to declare your Account in default.

**For New Hampshire Borrowers:** If we don't receive payment in full, we may also foreclose upon the Premises and take any other collection action allowed to us by law. You agree to pay us all reasonable costs we incur to collect this debt or realize on any security, to the extent permitted by law. This includes court costs, attorney fees for services rendered by an attorney for collection when the attorney is not our salaried employee, and/or collection agency fees. However, if you prevail in any action, suit or proceeding we bring or in an action you bring, reasonable attorneys' fees shall be awarded to you. If you successfully assert a partial defense, setoff, recoupment or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the court deems appropriate. You agree to pay Finance Charges at the variable Annual Percentage Rate provided in this Agreement on the outstanding balance of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never been in default, but you will not restore your right to obtain additional advances on your Account.

**2.** All of you request final termination of your Account. Final termination at the request of all of you will become effective as soon as we terminate your ability to obtain advances and all sums owed to us and our charges are paid in full. At that time, we will terminate the security interest or provide appropriate documents to you to enable you to terminate the security interest in the Premises.

**3.** You or we temporarily reduce your Credit Limit or temporarily suspend your ability to obtain advances, which can be done only if any one or more of the following events occur:
a. Any of you notify us, in person or in writing, of an intention to terminate your Account, or that you do not want to be obligated for any advances obtained or to be obtained by any others on the Account (except in connection with a good faith billing dispute), or any Owner advises us of an intention not to obligate the Premises for existing or future advances. We will treat a request for termination by less than all of you, or by an Owner who is not also a Borrower, as a request for temporary suspension. Such suspension will become effective as soon as we can reasonably act to stop new advances from being made on your Account. However, we may honor any and all requests for advances which were made or are dated prior to that time.

b. Any of the following things happen and we choose to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances:
    (1) The value of the Premises declines significantly below its original appraised value.
    (2) We reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances.



BANK COPY

- 5 -

(3) We are precluded by government action from imposing the Annual Percentage Rate provided in this Agreement.

(4) The priority of our security interest in the Premises is adversely affected by government action to the extent that the value of our security interest is less than 120 percent of the Credit Limit.

(5) You are in default of any of the following "material obligations" under this Agreement:

(a) Any of you fails to honor your obligations on any prior security interest in the Premises.

(b) Any of you fails and not pay any other obligation you owe to us or to others as and when that obligation comes due, or a proceeding is begun by or against any of you under the Federal Bankruptcy Code.

(c) Any of you are incarcerated or declared legally incompetent.

(d) Any of you fails to promptly provide us with satisfactory financial information which we may request from time to time or to cooperate with us in appraising the Premises which we may elect to do from time to time.

(e) If there are more than one of you, the death of the person on whose income we primarily relied in agreeing to open the Account for you.

(f) You move out of the Premises or convert the Premises from your residence or vacation home to an investment or rental property.

(g) You permit an intervening lien to be filed against the Premises that would take priority over future advances made by us.

(6) We are notified by our regulatory agency that continued advances on your Account constitute an unsafe and unsound practice.

(7) The maximum Annual Percentage Rate is reached.

(8) An event occurs which gives us the right to declare your Account to be in default.
We will send you a Notice Of Credit Freeze not later than three business days after we take such action, advising you of the specific reasons for our action. Our Notice Of Credit Freeze will advise you that you may request reinstatement of your credit privileges when the condition which led to our action no longer exists (and provided that no other condition listed above exists that would allow us to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances)

**4. The Draw Period Ends.**

**YOUR OBLIGATIONS CONTINUE ON TEMPORARY SUSPENSION:** Upon temporary suspension, whether by you or by us, you remain obligated to repay all amounts owed to us as provided in this Agreement, including our Finance Charges and other charges. This means you must continue to make at least the Minimum Payments each month under the terms of this Agreement.

**REINSTATEMENT:** You may request reinstatement of the credit privileges on your Account for the remainder of the Draw Period at any time after the condition that permitted us to temporarily reduce your Credit Limit or suspend your ability to obtain advances ceases to exist (provided that no other condition exists that would allow us to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances). If you request reinstatement you may be required to pay any reasonable appraisal and credit report fees we actually incur in investigating whether any condition permitting the freeze continues to exist. We will reinstate credit privileges on your Account when we find that these conditions have ceased to exist. If any one of you or any Owner of the Premises requested temporary suspension of the Account, we will reinstate your Account for the remainder of the Draw Period if all of you advise us in writing of a desire to reinstate the Account. However, we may refuse to reinstate your Account until we are assured that our rights in any security for your Account have not been adversely affected by the temporary freeze.

**TAXES; REPAIRS:** You agree to pay all taxes on the Premises and to maintain the Premises in good condition and repair.

**OTHER ADVANCES:** If you fail to purchase property insurance or do not pay taxes when they come due, or do not properly maintain the Premises, we may, if we choose (but without any obligation on our part), advance sums on your behalf for these purposes in order to protect our interest in the Premises. Any advances we make on your behalf will not excuse you from your failure to honor your promises and obligations in this Agreement. The amounts we advance on your behalf will be charged to your Account in the same manner as any other advance made by us to you hereunder.

**OWNERSHIP OF SPECIAL CHECKS:** You agree that the special checks and any other credit instruments or devices which we may supply to you to use in connection with your Account are our property. Unused special checks and any other credit instruments or devices must be returned to us immediately upon demand. We will retain all special checks and other credit instruments you draw in connection with your Account.

**PROOF OF ADVANCES:** Your Statements will indicate the current status of your Account and identify the transactions posted during the billing cycle. If you need evidence of an advance or other transaction, we will provide you with a photographic or other reasonable reproduction of any special check or other document that you request. You agree that such evidence will be satisfactory to you for all purposes.

**REFUSAL TO HONOR REQUESTS FOR ADVANCES:** We will not be responsible if, for any reason, anyone fails or refuses to honor special Account checks or any other credit instrument or device we provide to you to obtain advances on your Account.

**AMENDMENTS:** We may amend this Agreement by entering into a separate written agreement with you, or by making a change that is either beneficial to you or insignificant. However, you will be responsible for increases in taxes and property insurance premiums on the Premises. If we temporarily reduce the rate or fees charged on your Account below those contained in this Agreement, we can impose the agreed rate or fees by giving you notice of the change in terms.

-6-



BANK COPY

The paragraphs in this Agreement that are entitled "Advances & Term," "Our Charges for Your Advances, #1. Periodic Finance Charges," "Payment Options," "Change to Payment Option" and "Our Absolute Obligation to Make Advances" assume that you have not elected the Fixed Rate Lock Conversion Option described below. However, if you elect the Fixed Rate Lock Conversion Option, the following terms modify the above-listed paragraphs, as described below:

**FIXED RATE LOCK CONVERSION OPTION:**

After you open your Home Equity Line of Credit Account, you may ask us to change your variable interest rate to a fixed rate of interest on all or a portion of your principal balance ("Fixed Rate Lock"), as long as we consider your Account to have been in good standing at all times. This option will be available only during the Draw Period. If there is more than one Borrower on your Account, all of you agree that we may establish a Fixed Rate Lock upon the request of any one or more of you.

The minimum amount of your principal balance for which you may elect a Fixed Rate Lock is $5,000. The repayment period for any Fixed Rate Lock must be at least 12 months and may not exceed 180 months or the maturity date of your Home Equity Line of Credit Account, whichever is earlier. You may have up to four Fixed Rate Locks outstanding on your Account at any one time. However, you may not transfer a Fixed Rate Lock balance to a new Fixed Rate Lock balance for a period of 12 months following the establishment of the Fixed Rate Lock balance, and you may not transfer additional amounts to any Fixed Rate Lock once it has been established. The portion of your credit line that is not transferred to a Fixed Rate Lock is called your Revolving Account. The amount of each Fixed Rate Lock will reduce your available credit on your Revolving Account. As you repay the principal balance of each Fixed Rate Lock, your available credit on your Revolving Account will increase as a result.

The fixed rate of interest applicable to a Fixed Rate Lock will be determined at the time of each Fixed Rate Lock request and will be based on our current market rate at that time for Fixed Rate Home Equity Loans, except that the rate applicable to a Fixed Rate Lock will never be greater than 18% ANNUAL PERCENTAGE RATE or less than 3.99% ANNUAL PERCENTAGE RATE. The rate may depend on a number of factors, including loan amount, loan-to-value ratio, property type, credit history and the automatic payment deduction option, if any, you have selected. Once the rate of each Fixed Rate Lock has been established, that rate will not change. A recent ANNUAL PERCENTAGE RATE that we have charged on a $10,000 Fixed Rate Home Equity loan was 8.74%. This Annual Percentage Rate included only interest and not other costs. As an example, the monthly payment for a Fixed Rate Lock of $10,000 at 8.74% ANNUAL PERCENTAGE RATE for a period of 120 months would be $125.27. The amount of each  Fixed Rate Lock payment will be included in your minimum Payment Due on your monthly statement.

Regardless of the Draw Period Payment Option you select on your Revolving Account, repayment of each Fixed Rate Lock will be based on substantially equal monthly payments for a term you choose (but not to exceed 180 months or the maturity date on the Account, whichever is earlier) in an amount sufficient to repay the principal balance of each Fixed Rate Lock, together with interest at the Annual Percentage Rate for each Fixed Rate Lock. A daily periodic Finance Charge will be imposed on your Fixed Rate Lock balance from the date each Fixed Rate Lock is established, based on the "average daily balance" method. The amount of your final payment for each Fixed Rate Lock may vary, depending on whether your monthly payments are received early, on time, or following their due dates. After each Fixed Rate Lock is established, the minimum monthly Payment Due on your Account will include the minimum monthly payment for your Revolving Account described above, plus the minimum monthly payments for all Fixed Rate Locks outstanding. The minimum monthly Payment Due for your Account will be reflected on your monthly billing statement. Payments received will be applied to the minimum monthly payment for each Fixed Rate Lock in the order each Fixed Rate Lock was established. We may charge a fee of $50 to your Revolving Account for each Fixed Rate Lock. This fee is a FINANCE CHARGE.

**BINDING EFFECT:** If more than one of you signs as Borrower, each of you will be liable, separately and together, for all advances obtained on the Account. All of you agree that any one or more of you may obtain advances on the Account. This Agreement obligates you and your estate, heirs and personal representatives and benefits us and our successors and assigns. We may add or release parties, or permit the addition or substitution of collateral subject to our security interest, or modify, extend or amend this Agreement without in any way affecting your obligations on this Agreement.

**CONTINUED EFFECTIVENESS:** If we honor special Account checks or other requests for advances after your death or declaration of legal incompetency, but before we receive actual written notice of either event, those advances will be valid, legal and binding obligations on you and your estate, heirs and personal representatives.

**IRREGULAR PAYMENTS; DELAY IN ENFORCEMENT:** We may accept partial or late payments of sums due on your Account without losing any of our rights under this Agreement. We may even accept checks or drafts marked "paid in full" or with similar language indicating that our accepting the payment would be in full satisfaction of your outstanding balance, without being bound by that language or losing any of our rights under this Agreement. Any such payments must be mailed to: Sovereign Bank, Mail Stop 10-421-CP2, Consumer Finance, P.O. Box 12646, Reading, PA 19612. We can delay enforcing our rights under this Agreement without losing them.

**CREDIT REPORTS AND APPRAISALS:** From time to time, we may review your Account to determine whether, in our reasonable opinion, a material change has occurred in your financial circumstances that would leave you unable to fulfill the repayment obligations under this Agreement. As part of such reviews, we may obtain additional credit reports on you, inspect or reappraise the Premises, and request additional financial information from you. You agree to cooperate with us in performing such reviews and to promptly provide satisfactory financial information to us.



BANK COPY

**ACCOUNT SERVICING:** You expressly consent to our using prerecorded /artificial voice messages and/or an automatic telephone dialing system while servicing or collecting your Account, as the law allows. In doing so, you agree that we and any assignee of the Agreement may use any telephone number you provide us including any number provided on the credit application even if that number is for a cellular telephone and/or our using the number results in charges to you.

**TRANSFER AND ASSIGNMENT:** Your rights under this Agreement belong only to you. You cannot transfer or assign them to anyone else. We may transfer and assign our rights and obligations under this Agreement and the Mortgage/Loan Security Agreement at any time without your consent. The person to whom we transfer and assign this Agreement and the Mortgage/Loan Security Agreement shall be entitled to all of our rights and subject to all of our obligations under this Agreement and the Mortgage/Loan Security Agreement. None of your obligations shall be affected by our transfer and assignment.

**APPLICABLE LAW; ENTIRE AGREEMENT:** You agree that this Agreement is to be governed by Pennsylvania law (without regard to principles of conflicts of law or choice of law), except and to the extent governed by federal law applicable to federal savings banks, including 12 USC 1463 and 1464. If this is a New Agreement, it is the entire agreement between you and us. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

**YOU ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT. PLEASE RETAIN A COPY FOR YOUR RECORDS.**

 _____ (SEAL)      _____ (SEAL)
Borrower                                      Borrower
MICHAEL E CAREY

_____ (SEAL)      _____ (SEAL)
Borrower                                      Borrower

_____ (SEAL)      _____ (SEAL)
Borrower                                      Borrower

_____ (SEAL)      _____ (SEAL)
Borrower                                      Borrower

-0-
BANK COPY

## ALLONGE TO THE NOTE

Loan No:                ██████████

Borrower(s) Name(s):     Michael E Carey

Property Address:        150 BIG PINE LN

                                  JERSEY SHORE, PA 17740


As Part of Note Dated:    8/24/2009

Original Loan Balance:    $39,000.00


Pay to the order of:

Without Recourse

Santander Bank, N.A., formerly known as Sovereign Bank of Reading, PA

_(signature)_

By: Erica S Hofmann

Title: Vice President

Date: 10/30/2019

Case 4:23-bk-02191-MJC    Claim 3-1 Part 5    Filed 12/04/23    Desc Exhibit Loan
Case 4:23-bk-02191-MJC    Document    Filed 05/20/24  Entered 05/20/24 16:03:39    Desc
Main Document     Page 77 of 102

After Recording Return To:
Santander Bank, N.A.
Mail Code 10-6438-CC7
601 Penn St., Reading, PA 19601

Tax ID# ▓▓▓▓▓▓▓▓▓▓▓
This document was prepared by: <u>Madeline Perez</u>

_____[Space Above This Line For Recording Data]_____

# SANTANDER HOME LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1] Michael E Carey
Lender ("Lender"): SANTANDER BANK, N.A.
If applicable, Successor in interest to: Sovereign Bank with respect to the Note and Mortgage or
Security Instrument defined and modified in this Agreement.

Date of first lien or security instrument ("Mortgage") and Note ("Note"): <u>August 24, 2009</u>
Loan Number: ▓▓▓▓▓▓▓▓▓
Property Address: <u>150 Big Pine Lane, Jesey Shore PA 17740</u>("Property"):
          (Attach Legal Description as Exhibit "A" if being Recorded)

Original Recorded Date: <u>September 11, 2009</u>  County: <u>Clinton County</u>
Book/Instrument/Volume/Liber: <u>Book 2009</u>  Page: <u>04721</u>

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Santander Home Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, if applicable, and (2) the Note secured by the Mortgage.
The Note and Mortgage or Security Instrument together, as they may previously have been amended, are
referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have
the meaning given to them in the Loan Documents.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Loan #: ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓ MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship and, as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  If applicable, the Property has not been condemned;

    C.  If applicable, there has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Santander Home Loan Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/31/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on 04/30/2014.

    A.  The Maturity Date will be: 03/31/2030.

Loan #: ▓▓▓▓▓
MASTER CONSUMER STEP MODIFICATION I BORROWER Rev. 10-17-13

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender ($2,329.19) but not previously credited to my Loan. The new principal balance of my Note will be $41,078.00 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 4.250% will begin to accrue on the New Principal Balance of $41,078.00 and the first new monthly payment on the New Principal Balance will be due on 04/30/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| 1-16  | 4.250%        | 03/31/2014                | $295.24                                       | 04/30/2014        | 192                        |

The above terms in this Section 3.C. will supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. Additional Agreements. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; or (ii) the Lender has waived this requirement in writing (although any person who signed the Loan Documents but does not sign this Agreement.

B. That this Agreement shall supersede the terms of any modification, forbearance, or other

Loan #:
MASTER CONSUMER STEP MODIFICATION I BORROWER Rev. 10-17-13

Case 4:23-bk-02191-MJC   Claim 3-1 Part 5   Filed 12/04/23   Desc Exhibit Loan
Case 4:23-bk-02191-MJC   Doc 61   Filed 05/20/24   Entered 05/20/24 16:03:39   Desc
Main Document    Page 80 of 102

workout plan that I previously entered into with Lender.

C. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property, if applicable, or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property. (IF APPLICABLE)

G. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

H. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

I. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Santander Home Loan Modification Program.

Loan #:
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

J. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (b) companies that perform support services for the Santander Home Loan Modification Program; and (c) any HUD certified housing counselor.

K. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement.

SANTANDER BANK, N.A.
If applicable, Successor in interest to: Sovereign Bank with respect to the Note and Mortgage or
Security Instrument defined and modified in this Agreement.

By: _____ STEVEN FISHER
Title: _____ VP

COMMONWEALTH OF PENNSYLVANIA, BERKS COUNTY SS:

On this, the 15 (day) of April (month), 201 4 , before me, a Notary Public,
personally appeared _____ STEVEN Fisher _____, who acknowledged
themself to be the _____ VP _____, of Santander Bank, N.A., a corporation, and
that he/she as such Officer, being authorized to do so, executed the foregoing instrument for the
purposes therein contained by signing the name of the Corporation by himself as such Officer.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE TOROK
Notary Public
READING CITY, BERKS COUNTY
Commission Expires Oct 24, 2017

Loan #: ▓▓▓▓▓▓
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

[BORROWER SIGNATURE PAGE]

_Michael E Carey_
Michael E Carey, Borrower

_Lycoming_____ COUNTY SS:

On this, the _11_ (day) of _April_ (month), 201_4__, before me, a Notary Public, personally appeared, Michael E Carey, Borrower(s), known to me (or satisfactorily proven), to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes here in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Helen L. Wagner_
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Helen L. Wagner, Notary Public
Hughesville Boro, Lycoming County
My Commission Expires Aug. 9, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Loan #: ▓▓▓▓
▓▓▓▓ MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13



Prepared By: Sovereign Bank, 450 Penn Street
Reading, PA 19602
877-391-6165

Record and Return To:
Fiserv Lending Solutions
P.O. BOX 2890
Chicago, IL 60690

CAREY, MICHAEL E
PARCEL #:

FILED CLINTON COUNTY, PA
2009 SEP 11 P 3 06
JULI M. GEPHART
RECORDER OF DEEDS

## PENNSYLVANIA
## HOME EQUITY LINE OF CREDIT
## OPEN-END MORTGAGE
### (Securing Future Advances)

THIS MORTGAGE is made AUGUST 24, 2009. The mortgagor is MICHAEL E CAREY.

This Mortgage is given to SOVEREIGN BANK, whose address is 450 Penn Street, Reading, PA 19602 ("Lender"). In this Mortgage, the terms "you," "your," and "yours" refer to the mortgagor(s). The terms "we," "us" and "our" refer to the Lender.

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of Thirty-Nine Thousand and no/100 Dollars (U.S. $ 39,000.00). The Agreement provides for a final scheduled installment due and payable not later than 07/24/2034. You agree that this Mortgage shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, future advances and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, including future advances, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the following described property located in CLINTON, County, Pennsylvania:

### PROPERTY DESCRIPTION

That certain piece or parcel of land, and the buildings and improvements thereon:
In the Town of: JERSEY SHORE
County of: CLINTON
and State of: PENNSYLVANIA
and being more particularly described in a deed recorded in
Book:
Page:
of CLINTON County, City of JERSEY SHORE
which property is more commonly known as 130 BIG PINE LANE, JERSEY SHORE, PA 17740 ("Property Address"),

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1.      Payment of Principal, Interest and Other Charges. You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.      Application of Payments. Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us in any order we choose.

3.      Prior Mortgages; Charges; Liens. You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

BANK COPY   2009-04721

4. **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgage clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so. We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence. Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition. You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5. **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 16, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

6. **Protection of Our Rights in the Property; Inspection.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. We may enter and inspect the Property at any reasonable time and upon reasonable notice.

7. **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

8. **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

9. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

2

BANK COPY

10. **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

11. **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

12. **Governing Law; Severability.** The interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

13. **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

14. **Assignment.** We may sell, transfer or assign this Mortgage without your consent and without prior notice to you.

15. **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

16. **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property; or (4) a court determine that you are bankrupt or insolvent. If a default occurs (other than under paragraph 13 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured as specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law and costs of title evidence.

17. **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 16, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

18. **Release.** Upon your request and payment of all sums secured by this Mortgage, we shall discharge and satisfy this mortgage. You shall pay any recordation costs.

19. **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

3



**BANK COPY**

20. **Waivers.** You, to the extent permitted by applicable law, waive and release any error or defects in proceeding to enforce this Mortgage, and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption. No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

21. **Reinstatement Period.** Your time to reinstate provided in Section 16 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage.

22. **Interest Rate After Judgment.** You agree that the interest rate payable after a judgment is entered on the Agreement or in an action of mortgage foreclosure shall be the rate payable from time to time under the Agreement.

23. **Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider  ☐ 1-4 Family Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]

BY SIGNING BELOW, you accept and agree to the terms and covenants contained in this Mortgage and in any rider(s) executed by you and recorded with it.

Witness: _____

_____ (SEAL)
MICHAEL E CAREY

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

STATE OF _____
COUNTY OF Lycoming

On AUGUST 24, 2009, before me, _____, the undersigned officer, personally appeared MICHAEL E CAREY known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Name: Deborah Sampiere
Title of Officer: Notary Public

My commission expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Deborah Sampiere, Notary Public
South Williamsport Boro, Lycoming County
My Commission Expires Dec. 7, 2011
Member, Pennsylvania Association of Notaries

CERTIFICATE OF RESIDENCE OF MORTGAGEE

I do hereby certify that the precise address and principal place of business of the within named mortgagee is 450 Penn Street, Reading, PA 19602

SOVEREIGN BANK
By: _____
Name: _____
Title: _____

Clerk: After recording, please return to: Sovereign Bank, Mail Stop 10-421-CP7, 459 Penn Street, Reading, PA 19602

BANK COPY

## SCHEDULE A

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF PINE CREEK, COUNTY OF CLINTON, AND STATE OF PENNSYLVANIA BEING MORE PARTICULARLY DESCRIBED IN A DEED RECORDED IN BOOK 591 AT PAGE 129 AMONG THE LAND RECORDS OF THE COUNTY SET FORTH ABOVE.

PARCEL ID: ▮▮▮▮▮▮▮

KNOWN AS: 150 BIG PINE LANE

Prepared by:
Bill Koch
Select Portfolio Servicing, Inc.
3217 S. DECKER LAKE DRIV
SALT LAKE CITY, UT, 84119
(800) 258-8602

When Record Return To:
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

FILED
CLINTON COUNTY, PA

2020 JUL -8 AM 11: 12

JENNIFER L. HOY
REGISTER & RECORDER

## CORPORATE ASSIGNMENT OF MORTGAGE

Assignment Prepared on: June 17, 2020

ASSIGNOR: SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK BY SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

ASSIGNEE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSOR AND ASSIGNS, at 1901 E Voorhees Street, Suite C, Danville, IL, 61834 / P.O. Box 2026, Flint, MI, 48501-2026

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 1901 E Voorhees Street, Suite C, Danville, IL, 61834 / P.O. Box 2026, Flint, MI, 48501-2026

Attested By: _Kyle Morgan_

The property is located in the Township of PINE CREEK.
TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK BY SELECT
PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT

On: _____ JUN 2 6 2020 _____

By: _____ *Kyle Runyan* _____

Name: _____ Kyle Runyan _____
_____ Document Control Officer _____

Title: _____

State of UTAH
County of SALT LAKE

On _____ JUN 2 6 2020 _____, before me,
_____ Rylie Naylor _____, a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared _____ Kyle Runyan _____,
Document Control Officer _____, SANTANDER BANK, N.A., FORMERLY KNOWN AS
SOVEREIGN BANK BY SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_____ Rylie Naylor _____
Notary Expires: _____ FEB 2 0 2024 _____

RYLIE NAYLOR
Notary Public State of Utah
Commission Expires on:
February 20, 2024
Comm. Number: 710640

PA/CLINTON

Prepared by:
Select Portfolio Servicing, Inc.
3217 S DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

When Record Return To:
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8002

UPI #:

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #:
PA/CLINTON
MERS #:                    MERS Phone #:                    **RECORD 1st**

Assignment Prepared on: January 05, 2023

**ASSIGNOR: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS.** at 11819 Miami St., Suite 100, Omaha, NE 68164 / P.O. Box 2026, Flint, MI 48501-2026

**ASSIGNEE: FIRSTKEY MORTGAGE, LLC, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119**

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By:

The property is located in the Township of PINE CREEK.
Property Address: 150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Document References:
- Assignment Dated: 6/26/2020 from SANTANDER BANK, N.A., FORMERLY KNOWN A SOVEREIGN BANK to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS Recorded: 7/8/2020, Instrument #: 2020-02525

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.



MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE,
AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS

On ____FEB 0 8 2023____

By: _____

Name: _____
SHANDA SWILOR
ASSISTANT SECRETARY

Title: _____

State of UTAH                                Shanda Swilor
County of SALT LAKE

On ___FEB 0 8 2023_____, before me,
Shirley Tuʻitupou_____a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared X Shanda Swilor
ASSISTANT SECRETARY_____, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT
MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Shirley Tuʻitupou
Notary Expires: ___JAN 1 5 2025____ / #: ___716180____



# Clinton County
## JENNIFER L. HOY
Register of Wills, Recorder of Deeds
and Clerk of Orphans' Court
2 Piper Way - Suite 239
Lock Haven, PA 17745
Phone: 570.893.4010  Fax: 570.893.4273

RECEIPT FOR PAYMENT

Instrument Number: 2023-000504    Receipt Date: 2/22/2023
Instrument Type: ASSIGNMENT      Receipt Time: 10:51:15
Indexed Party: CAREY MICHAEL E   Receipt No.: ▮▮▮▮▮

### Receipt Distribution

| Fee/Tax Distribution | Payment Amount |
|---|---|
| ASSIGNMENT | 16.25 |
| ASSIGNMENT - WRIT | .50 |
| J.C.S. / A.T.J. | 40.25 |
| CO IMPROVEMENT FND | 2.00 |
| REC. IMPRVMT FUND | 3.00 |

Book#: 2023    Page#: 0504

Paid By Remarks: SELECT PORTFOLIO

Check# ▮▮▮▮▮    $62.00

Total Received........ $62.00

Prepared by:
Select Portfolio Servicing, Inc.
3217 S DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

When Record Return To:
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602

UPI #: ███████

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #: ███████
PA/CLINTON

**RECORD 2ⁿᵈ**

Assignment Prepared on: January 05, 2023

**ASSIGNOR: FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE: TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By: _____

The property is located in the Township of PINE CREEK.
Property Address: 150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Document References:
- Assignment Dated: __FEB 0 8 2023__ from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS to FIRSTKEY MORTGAGE, LLC To Be Recorded Concurrently.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT

On: FEB 0 0 2023

By:

Name: Shanda Swilor
Document Control Officer

Title:

State of UTAH
County of SALT LAKE

On FEB 0 0 2023 before me, Setiay Tuitupou , a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared Shanda Swilor, Document Control Officer, FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Setiay Tuitupou
Notary Expires: JAN 1 5 2025      I #: 710100



Sign up for paperless delivery
at www.spservicing.com

Paperless

November 9, 2021


MICHAEL E CAREY
150 BIG PINE LN
JERSEY SHR, PA 17740

**Account Number:**
**Property Address:**
150 BIG PINE LN
JERSEY SHORE, PA 17740

Dear Customer(s):

We are pleased to inform you that we have completed a deferral of payment(s) ("Deferral") on this account. During a recent phone conversation, you notified SPS that you experienced a short term hardship and agreed to a deferral of the outstanding payments. The deferred payments have been added to a non-interest bearing balance, which will be due upon maturity or payoff of the account.

This offer is based on information we currently have regarding your account and is not based on a complete Assistance Review Application. You are still eligible to submit a complete Assistance Review Application and be reviewed for all options available to you and receive all the protections afforded by federal law. Please contact us regarding the information required to fulfill your Assistance Review Application so that we can evaluate you for all available loss mitigation options for which you are eligible. You have the option to submit a complete Assistance Review Application regardless of whether or not you accept this Plan.

<u>**Deferral Acceptance**</u>

You do not need to take any action to accept the Deferral. Please retain a copy of this letter for your records.

<u>**Summary of Deferral Terms**</u>

| Account Number: | | Current Principal Balance: | $28,886.78 |
|---|---|---|---|
| **Origination Date:** | 08/24/2009 | **Pre Agreement Due Date:** | 09/30/2020 |
| **Maturity Date:** | 03/30/2030 | **Post Agreement Due Date:** | 10/30/2021 |
| **Property Address:** | 150 BIG PINE LN JERSEY SHORE, PA 17740 | | |

**Deferred Amount:** Mortgage payments for the month(s) of September 2020 – September 2021, which total $3,838.12 will be due upon maturity of the account and added to the last payment due. **This amount does not include scheduled monthly escrow payment(s). Unpaid monthly escrow payment(s) may result in an escrow shortage.**

**Other past-due amounts to be deferred:** <u>**$0.00**</u>



The Deferred Amount will be due and payable on the Maturity Date of the account or upon payoff of the account, whichever is sooner. Additional interest will not be charged on the Deferred Amount and no fee will be charged for completing a Deferral. The remaining terms of the mortgage documents will stay in full force and effect.

Any additional amounts that have accrued for fees and advances on the account are not included in the Deferred Amount.

Additionally, SPS is pleased to inform you that your account is now eligible for our no-fee automatic withdrawal (ACH) program to make your monthly mortgage payment. SPS's ACH payment program automatically deducts your monthly payment directly from your checking or savings account. This free program allows you to select a recurring monthly payment date prior to a late fee being applied. **With ACH, your payments are always on time and processing is free.** To authorize an automatic withdrawal from your checking or savings account, you may enroll online at www.spservicing.com or complete and sign the enclosed form and fax or mail the signed form to:

Fax:
801-269-4499
ATTN: Cashiering Dept.

Select Portfolio Servicing, Inc.
ATTN: Cashiering Dept.
PO Box 65450 Salt Lake City, UT 84165-0450

**Contact Us**

If you have any questions, your assigned Relationship Manager, Juan Marin, can be reached toll free at (888) 818-6032 x 50103 or by email at Relationship.Manager@spservicing.com.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 888-818-6032 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like counseling or assistance you can contact the following: U.S. Department of Housing and Urban Development. For a list of homeownership counselors or counseling organizations in your area, go to https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or you can call HUD at 1-800-569-4287.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámenos al numero 800-831-0118 y seleccione/marque la opción 2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City - Collection Agency License #





## Authorization for Withdrawal and Direct Payment Agreement

**Account Information**

Customer Name: _____     Phone Number: _____

SPS Account Number: ▮▮▮▮▮▮▮▮▮▮▮▮_____

**Bank Information**

Bank Name: _____

This a **CHECKING** account / **SAVINGS** account  (circle one)

Bank Routing Number: _____     Bank Account Number: _____

**Withdrawal Options**

Date of Withdrawal: Your account will be drafted each
month on your payment due date, unless you provide an
alternative date here: _____
    *The date that you choose must be within your grace period or your
    request to set up recurring Auto Draft may be denied.
    *If the date you have elected crosses over to the next month, your payment
    may not always draft on the same day depending on the number of days in
    the month.
    *When your selected date falls on a weekend or holiday, the debit entry will
    occur on the following business day.

Additional Amount: _____
This amount will be withdrawn in addition to your regular payment amount
and applied to your unpaid principal balance.

## Return This Form:

By Mail:
Select Portfolio Servicing, Inc.
ATTN: Cashiering Dept
PO Box 65450 Salt Lake City, UT 84165-0450

By Fax to:
801-269-4499
ATTN: Cashiering Dept

**Signature Authorization - You must sign below**
I authorize Select Portfolio Servicing, Inc. (SPS) to automatically debit my bank account monthly for the amount of my full mortgage payment plus any additional amount as indicated above. I understand that the payment amount may vary due to changes in escrow requirements or principal and interest payments for adjustable type mortgages, if applicable. If the requested withdrawal date falls on a weekend or holiday, the withdrawal will occur the following business day.

I agree that SPS will not be liable to me if my bank refuses or returns a debit, regardless of the reason for refusal or return; if my bank mishandles or delays a payment; or if I have not provided SPS with correct information regarding my account or payment(s). I understand that I may be charged a fee and/or late charge for any item returned due to insufficient funds, as allowed by applicable law. Fees may be imposed by my bank and SPS. SPS's fees are disclosed in its annual fee notice, which is available online by logging into an SPS account or upon request.

I understand that I am in full control of my account and may terminate or change the terms of this automatic withdrawal at any time by giving SPS at least three (3) business days advance verbal or written notification of the termination or any change.

SPS is authorized to debit my bank account until SPS has received notification from me to terminate or make changes to this service at least three (3) business days before the scheduled date of the transfer.

Signature: _____     Date: _____

**PLEASE CONTINUE MAKING REGULAR MONTHLY PAYMENTS UNTIL YOU RECEIVE NOTIFICATION FROM US THAT AUTOMATIC WITHDRAWALS WILL BEGIN.** In the event you have not received notification and a monthly payment is due, please contact us at 800-258-8602 or visit us online at www.spservicing.com to check the status of your automatic withdrawal and/or discuss payment options. You may also set up automatic withdrawals on website or by calling the phone number listed above. Please note, the account must be current to commence automatic withdrawal.

Case 4:23-bk-02191-MJC    2/04/23   Desc Exhibit Loan
Case 4:23-bk-02191-MJC   Doc 64   Filed 05/20/24   Entered 05/20/24 16:03:39   Desc
Main Document    Page 99 of 102

# Exhibit K



Exhibit K



STATE OF PENNSYLVANIA)

COUNTY OF BERKS)

Cindy L. Yocum, being duly sworn, deposes and says:

1.     That Cindy L. Yocum is a Vice President of Santander Bank, N.A.

2.     That Santander Bank, N.A. is the owner of a certain mortgage Note dated August 24, 2005 made by Michael E Carey to Sovereign Bank in the principal sum of $39,000.00, property address 150 Big Pine Lane, Jersey Shore, Pennsylvania, interest rate: 4.49% ("Note"). Mortgage recorded in Clinton County, Book 2009 Page 4721.

3.     That Santander Bank, N.A. after having conducted a diligent investigation in its records and files, has been unable to locate the Note and believes that said Note has been lost, misfiled, misplaced or destroyed due to a clerical error.

4.     That said Note has not been paid off, satisfied, transferred, encumbered, endorsed, pledged, hypothecated, or otherwise disposed of and that said Note has been either lost, misfiled, misplaced or destroyed.

5.     That no other person, firm, corporation or other entity has any right, title, interest or claim in said Note except Santander Bank, N.A.

6.     That Santander Bank, N.A. covenants and agrees to promptly deliver the original note if it is subsequently found.

7.     Santander Bank, N. A. hereby agrees to indemnify and hold harmless the purchaser, its successors, and assigns against any loss, liability or damage, including reasonable attorney's fees, resulting from the unavailability of any original, including but not limited to any loss, liability or damage arising from (i) any claim of any party that it has already purchased a mortgage loan evidenced by the original or any interest in such mortgage loan, (ii) the issuance of new instrument in lieu thereof and (iii) any claim whether or not based upon or arising from honoring or refusing to honor the original when presented by anyone.

[SIGNATURE PAGE FOLLOWS]

Santander Bank, N.A.

By _Cindy L. Yocum_

Cindy L. Yocum, Vice President

Subscribed and Sworn to before me on October 18, 2019 by Cindy L. Yocum, Vice President, as of Santander Bank, N.A., on behalf of such entity.

_Deanna M. Taddei_

Deanna M. Taddei, Notary Public

Commonwealth of Pennsylvania - Notary Seal
DEANNA M. TADDEI - Notary Public
Berks County
My Commission Expires Mar 23, 2023
Commission Number 1229992