## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## WILLIAMSPORT DIVISION

| | |
|---|---|
| In re:<br><br>**Michael E Carey**<br>　　　　　　Debtor,<br><br>**Michael E Carey**<br>　　　　　　Objecting Party<br>　v.<br>**Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee,**<br>　　　　　　Respondents. | **Bankruptcy** 23-10051-pmm<br><br>**Chapter** 13<br><br>**Related Doc.** No. 70 |

### RESPONSE TO OBJECTION TO PROOF OF CLAIM

The undersigned, attorneys for Secured Creditor Mortgage Assets Management, LLC ("Secured Creditor"), hereby files its Response to Objection to Proof of Claim. ("Objection") (DE #70 ), and in support thereof states as follows:

1. Debtor, Michael E Carey ("Debtor"), filed the instant Chapter 13 Petition on September 25, 2023.

2. Secured Creditor timely filed its Proof of Claim on December 4, 2023 as Claim Number 3-1.

3. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a proof of claim (and, by extension, supplemental proof of claim) executed and filed in accordance with the Bankruptcy Rules "shall constitute prima facie evidence of the validity and amount of the claim."

4. On May 28, 2024, Debtors filed an Objection, asserting allegations opposing Secured Creditor's claim.

5. Secured Creditor's Proof of Claim, is neither incorrect nor improper as filed.

6. Debtor bears the burden of proof to establish that Claim No. 3-1 is not valid.

7. Specifically, Debtor must produce evidence that "rebuts the presumption of the validity given to the claim." In re. Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d. Cir. 1992). "In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." Id.

8. Furthermore, a motion or objection to claim cannot be used to determine the validity of a lien on property.

9. Pursuant to Federal Rule of Bankruptcy Procedure 7001(2), an adversary proceeding is required in order to determine the validity, priority, or extent of a lien or other interest in property.

10. Debtor previously filed an adversary proceeding related to Secured Creditor's claim, AP number 23-00073.

11. The Debtor's Adversary Proceeding was dismissed after the Court granted the Secured Creditor Motion for Judgment on the Pleadings, which was granted on the grounds that the Debtor failed to state a claim upon which relief could be granted, **See Exhibit A**

12. The instant motion is just a rehash of the same claims that the Debtor brought in the dismissed adversary proceeding.

13. The central issue of the Objection to Claim is that the Debtor is questioning the Secured Creditor's legal standing to file any pleadings in this court or collect on an alleged debt.

14. However, the motion relies on conclusory statements and unrelated assertions, such as claiming violations of FDCPA regulations, and UCC provisions.

15. Furthermore, the Debtor's motion fails to specify any particular statute which the Secured Creditor has allegedly violated or which illustrate the Debtor's right to relief.

16. The Debtor, in his Certification, vaguely mentions Section 1962 of the Fair Debt Collections Practices Act and UCC 3-501, however the documents fail to state with any particularity how this statute affords them the relief requested.

17. The Debtor does point out that UCC 3-501 may allow a party to withhold payment for failure of the presentment to comply with the terms of the instrument, an agreement of the parties or other applicable law or rule.

18. However, the Debtor fails to respect UCC-3-309, which allows a party to enforce a lost instrument when they have acquired ownership of the instrument from a person who was entitled to enforce the instrument when the loss occurred.

19. Thus, the Debtor is not allowed to withhold payment, as the Secured Creditor has produced the lost note affidavit which specifically shows that the Secured Creditor acquired ownership of the instrument from the prior holder.

20. Therefore, the Debtor's UCC argument is invalid.

21. The fact that the Debtor fails to present any specific provision in any law that provides him the relief that he requests means that his complaint has failed to state a claim upon which relief may be granted.

22. Furthermore, the Debtor continues to push his claim that the Secured Creditor is not in possession of the note.

23. Secured Creditor does not dispute that it is not in possession of the original note, however this position is not the obstacle to enforceability that the Debtor believes it to be.

24. Secured Creditor is in possession of a Lost Note Affidavit prepared by the prior holder Santander Bank. **See Exhibit B.**

25. Furthermore, after the original note was lost, Santander Bank assigned its rights to enforce the Lost Note and the Mortgage, which now sits with Secured Creditor. **See Exhibit C.**

26. Regardless of what one might read on the internet, the fact that an Original Note was lost does not automatically render a debt not collectible nor does the Lost Note provide the Debtor with a free house.

27. Lost Note Affidavits are a common tool in the mortgage industry, and many states have acted to protect the ability of creditors to collect on lost instruments.

28. Pennsylvania codified UCC 3-309, the enforcement of a lost instrument in Title 13, Chapter 33 - Enforcement of Instruments.

29. Furthermore, the mortgage which acts as the security instrument for the loan, remains valid and recorded.

30. Thus, the mortgage continues to act as a lien on the property rendering the debt a secured debt, secured by the subject property.

31. In support of its position that it is entitled to enforce the Mortgage and the Note, Secured Creditor has provided to this Court the Lost Note Affidavit as well as the subsequent assignments of Note and Mortgage.

32. The debt was a Home Equity Line of Credit (**Exhibit D**) that was entered into with Sovereign Bank which later became Santander Bank. The Debtor then entered into a loan modification with Santander (**Exhibit E**). Santander assigned its rights to MERS as nominee for Towd Point Mortgage Trust 2020-1. MERS then assigned its rights to First Key Mortgage LLC. First Key then assigned its rights Towd Point Mortgage Trust 2020-1.

33. In the instant case, the Secured Creditor, though not in possession of the original note, is in possession of a Lost Note Affidavit executed by Santander Bank, who assigned its rights to enforce the Lost Note and the Mortgage.

34. As such, the Debtor's central argument in this motion lacks merit, and must be the Motion must be denied.

35. Secured Creditor reserves the right to supplement its Response to Debtor's Objection at any time before or at the hearing.

   **WHEREFORE**, Creditor respectfully requests that this Honorable Court overrules

Debtor's objection and allows Secured Creditor's Proof of Claim as filed so as to preserve

Creditor's Claim, and for such other and further relief as the Court may deem just and proper.

   **Robertson, Anschutz, Schneid,**
   **Crane & Partners, PLLC**
   Attorney for Secured Creditor
   130 Clinton Rd, Lobby B, Suite 202,
   Fairfield, NJ 07004
   Telephone: 470-321-7112
   By: /s/Robert Shearer
   Robert Shearer, Esquire
   Pennsylvania Bar No. 83745
   Email: rshearer@raslg.com

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## WILLIAMSPORT DIVISION

| | |
|---|---|
| In re:<br><br>**Michael E Carey**<br>　　　　　　　Debtor,<br><br>**Michael E Carey**<br>　　　　　　　Objecting Party<br>　　v.<br>**Towd Point Mortgage Trust 2020-1, U.S. Bank National Association, as Indenture Trustee,**<br>　　　　　　　Respondents. | **Bankruptcy** 4:23-bk-02191-MJC<br><br>**Chapter** 13<br><br>**Related Doc.** No. 70 |

### CERTIFICATE OF SERVICE

I certify under penalty of perjury that I served the above captioned pleadings at the addresses specified below on June 21, 2024.

The types of service made on the parties were:

By First-Class Mail:

Michael E Carey, *Pro Se*
150 Big Pine Lane
Jersey Shore, PA 17740

Jack N Zaharopoulos
Standing Chapter 13
(Trustee)
8125 Adams Drive, Suite A
Hummelstown, PA 17036

United States Trustee
US Courthouse
1501 N. 6th St
Harrisburg, PA 17102

**Robertson, Anschutz, Schneid,**
**Crane & Partners, PLLC**
Attorney for Secured Creditor
130 Clinton Rd, Lobby B, Suite 202,
Fairfield, NJ 07004
Telephone: 470-321-7112
By: /s/Robert Shearer
Robert Shearer, Esquire
Pennsylvania Bar No.  83745
Email: rshearer@raslg.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Michael E. Carey, | : | Case No. 4:23-02191-MJC |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| Michael E. Carey, | : | |
| | : | |
| Plaintiff, | : | Adversary Proceeding |
| | : | No. 4:23-00073-MJC |
| v. | : | |
| | : | |
| Towd Point Mortgage Trust 2020-1, | : | |
| U.S. Bank, National Association, | : | |
|    as Indenture Trustee, | : | |
| Select Portfolio Servicing, Inc., | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR JUDGMENT ON THE PLEADINGS

Upon consideration of the Motion for Judgment on the Pleadings ("Motion") filed by Defendant on March 15, 2024, Dkt. # 20, its Amended Brief in support, Dkt. # 40, Plaintiff's responses in opposition, Dkt. # 23, 28, 33, 39,

**AND**, after oral argument on the Motion held on May 2, 2024,

**AND,** for the reasons stated on the record,[1]

It is hereby **ORDERED** that:

1. The Motion for Judgment on the Pleadings is **GRANTED IN PART and DENIED IN PART** as follows.

2. The Motion is **DENIED** on the ground of lack of subject matter jurisdiction.

---

[1] The Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 were stated in open Court.

3.      The Motion is **GRANTED** on the ground of failure to state a claim upon which relief can be granted.

4.      **On or before June 3, 2024,** Debtor may file to docket in the main bankruptcy case, an objection to Defendant's Proof of Claim Number 3.

5.      The Clerk is directed to close this adversary proceeding.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: May 2, 2024

2

## AFFIDAVIT OF LOST NOTE

STATE OF PENNSYLVANIA)

COUNTY OF BERKS)

Cindy L. Yocum, being duly sworn, deposes and says:

1.     That Cindy L. Yocum is a Vice President of Santander Bank, N.A.

2.     That Santander Bank, N.A. is the owner of a certain mortgage Note dated August 24, 2005 made by Michael E Carey to Sovereign Bank in the principal sum of $39,000.00, property address 150 Big Pine Lane, Jersey Shore, Pennsylvania, Interest rate: 4.49% ("Note"). Mortgage recorded in Clinton County, Book 2009 Page 4721.

3.     That Santander Bank, N.A. after having conducted a diligent investigation in its records and files, has been unable to locate the Note and believes that said Note has been lost, misfiled, misplaced or destroyed due to a clerical error.

4.     That said Note has not been paid off, satisfied, transferred, encumbered, endorsed, pledged, hypothecated, or otherwise disposed of and that said Note has been either lost, misfiled, misplaced or destroyed.

5.     That no other person, firm, corporation or other entity has any right, title, interest or claim in said Note except Santander Bank, N.A.

6.     That Santander Bank, N.A. covenants and agrees to promptly deliver the original note if it is subsequently found.

7.     Santander Bank, N. A. hereby agrees to indemnify and hold harmless the purchaser, its successors, and assigns against any loss, liability or damage, including reasonable attorney's fees, resulting from the unavailability of any original, including but not limited to any loss, liability or damage arising from (i) any claim of any party that it has already purchased a mortgage loan evidenced by the original or any interest in such mortgage loan, (ii) the issuance of new instrument in lieu thereof and (iii) any claim whether or not based upon or arising from honoring or refusing to honor the original when presented by anyone.

[SIGNATURE PAGE FOLLOWS]

**Santander Bank, N.A.**

By _____

    Cindy L. Yocum, Vice President

Subscribed and Sworn to before me on October 18, 2019 by Cindy L. Yocum, Vice President, as of Santander Bank, N.A., on behalf of such entity.

_____

**Deanna M. Taddei, Notary Public**

Commonwealth of Pennsylvania - Notary Seal
DEANNA M TADDEI - Notary Public
Berks County
My Commission Expires Mar 23, 2023
Commission Number 1229992

Prepared By: Sovereign Bank, 450 Penn Street
Reading, PA 19602
877-391-6365



Record and Return To:
Fiserv Lending Solutions
P.O. BOX 2590
Chicago, IL 60690

CAREY, MICHAEL E

PARCEL #:

## PENNSYLVANIA
## HOME EQUITY LINE OF CREDIT
## OPEN-END MORTGAGE
### (Securing Future Advances)

**THIS MORTGAGE** is made AUGUST 24, 2009. The mortgagor is MICHAEL E CAREY.

This Mortgage is given to SOVEREIGN BANK, whose address is 450 Penn Street, Reading, PA 19602 ("Lender"). In this Mortgage, the terms "you," "your," and "yours" refer to the mortgagor(s). The terms "we," "us" and "our" refer to the Lender.

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of Thirty-Nine Thousand and no/100 Dollars (U.S. $ 39,000.00). The Agreement provides for a final scheduled installment due and payable not later than 07/24/2034. You agree that this Mortgage shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, future advances and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, including future advances, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the following described property located in CLINTON, County, Pennsylvania:

### PROPERTY DESCRIPTION

That certain piece or parcel of land, and the buildings and improvements thereon:
In the Town of: JERSEY SHORE
County of: CLINTON
and State of: PENNSYLVANIA
and being more particularly described in a deed recorded in
Book:
Page:
of CLINTON County, City of JERSEY SHORE
which property is more commonly known as 150 BIG PINE LANE , JERSEY SHORE, PA 17740 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us in any order we choose.

3. **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

1

BANK COPY  2009-04721

**4. Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so. We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence. Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition. You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

**5. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 16, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6. Protection of Our Rights in the Property; Inspection.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**7. Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**8. You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**9. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

2

BANK COPY

10.     **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

11.     **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

12.     **Governing Law; Severability.** The interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

13.     **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

14.     **Assignment.** We may sell, transfer or assign this Mortgage without your consent and without prior notice to you.

15.     **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

16.     **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property; or (4) a court determines that you are bankrupt or insolvent. If a default occurs (other than under paragraph 13 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured as specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law and costs of title evidence.

17.     **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 16, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

18.     **Release.** Upon your request and payment of all sums secured by this Mortgage, we shall discharge and satisfy this mortgage. You shall pay any recordation costs.

19.     **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

3

**20.** **Waivers.** You, to the extent permitted by applicable law, waive and release any error or defects in proceeding to enforce this Mortgage, and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption. No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

**21.** **Reinstatement Period.** Your time to reinstate provided in Section 16 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage.

**22.** **Interest Rate After Judgment.** You agree that the interest rate payable after a judgment is entered on the Agreement or in an action of mortgage foreclosure shall be the rate payable from time to time under the Agreement.

**23.** **Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider  ☐ 1-4 Family Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]

BY SIGNING BELOW, you accept and agree to the terms and covenants contained in this Mortgage and in any rider(s) executed by you and recorded with it.

Witnesses: _____     _____ (SEAL)
                                                         MICHAEL E CAREY

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

STATE OF Pa

COUNTY OF Lycoming

On AUGUST 24, 2009, before me DEBORAH SAMPSEL , the undersigned officer, personally appeared MICHAEL E CAREY known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

                                     _____ (SEAL)
                                     Name: DEBORAH SAMPSEL
                                     Title of Officer: NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Deborah Sampsel, Notary Public
South Williamsport Boro, Lycoming County
My Commission Expires Oct. 7, 2012
Member, Pennsylvania Association of Notaries

My commission expires: 12-7-12

### CERTIFICATE OF RESIDENCE OF MORTGAGEE

I do hereby certify that the precise address and principal place of business of the within named mortgagee is 450 Penn Street, Reading, PA 19602

                                     SOVEREIGN BANK
                                     By: _____
                                     Name: DEBORAH SAMPSEL
                                     Title: mgr

Clerk: After recording, please return to: Sovereign Bank, Mail Stop 10-421-CP2, 450 Penn Street, Reading, PA 19602

4

BANK COPY

## SCHEDULE A

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF PINE CREEK, COUNTY OF CLINTON, AND STATE OF PENNSYLVANIA BEING MORE PARTICULARLY DESCRIBED IN A DEED RECORDED IN BOOK 591 AT PAGE 129 AMONG THE LAND RECORDS OF THE COUNTY SET FORTH ABOVE.

PARCEL ID: █████████

KNOWN AS: 150 BIG PINE LANE

Prepared by:
Bill Koch
Select Portfolio Servicing, Inc.
3217 S. DECKER LAKE DRIV
SALT LAKE CITY, UT, 84119
(800) 258-8602

**When Record Return To:**
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

FILED
CLINTON COUNTY, PA

2020 JUL -8 AM 11: 12

JENNIFER L. HOY
REGISTER & RECORDER

## CORPORATE ASSIGNMENT OF MORTGAGE

Assignment Prepared on: June 17, 2020

**ASSIGNOR: SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK BY SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSOR AND ASSIGNS**, at 1901 E Voorhees Street, Suite C, Danville, IL, 61834 / P.O. Box 2026, Flint, MI, 48501-2026

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 1901 E Voorhees Street, Suite C, Danville, IL, 61834 / P.O. Box 2026, Flint, MI, 48501-2026

Attested By: _____

The property is located in the Township of PINE CREEK.
TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK BY SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT

On: _____ JUN 2 6 2020 _____

By: _____

Name: **Kyle Runyan**
        Document Control Officer

Title: _____

State of UTAH
County of SALT LAKE

On _____ JUN 2 6 2020 _____, before me,
_____ **Rylie Naylor** _____, a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared _____ **Kyle Runyan** _____,
Document Control Officer _____, SANTANDER BANK, N.A., FORMERLY KNOWN AS
SOVEREIGN BANK BY SELECT PORTFOLIO SERVICING, INC., IT'S ATTORNEY IN FACT,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rylie Naylor
Notary Expires: _____ FEB 2 0 2024 _____

RYLIE NAYLOR
ry Public State of Utah
ommission Expires on:
February 20, 2024
mm. Number: 710640

**PA/CLINTON**

**Prepared by:**
Select Portfolio Servicing, Inc.
3217 S DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602



**When Record Return To:**
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602

UPI #: ███████

### CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #: ███████
PA/CLINTON
MERS #: ███████  MERS Phone #: ███████   **RECORD 1st**

Assignment Prepared on: January 05, 2023

**ASSIGNOR: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS,** at 11819 Miami St., Suite 100, Omaha, NE 68164 / P.O. Box 2026, Flint, MI 48501-2026

**ASSIGNEE: FIRSTKEY MORTGAGE, LLC,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By:

The property is located in the Township of PINE CREEK.
Property Address: 150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Document References:
- Assignment Dated: 6/26/2020 from SANTANDER BANK, N.A., FORMERLY KNOWN A SOVEREIGN BANK to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS Recorded: 7/8/2020, Instrument #: 2020-02525

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.



MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS

On: _____ FEB 0 8 2023 _____

By: _____

Name: _____
            SHANDA SWILOR
            ASSISTANT SECRETARY

Title: _____

State of UTAH
County of SALT LAKE                    ✗ **Shanda Swilor**

On _____ FEB 0 8 2023 _____, before me,
_____ Shirley Tuitupou _____
_____, a Notary Public in and for SALT LAKE in the
State of UTAH, personally appeared ✗ Shanda Swilor _____,
_____ ASSISTANT SECRETARY _____, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT
MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Shirley Tuitupou
Notary Expires: _____ JAN 1 5 2025 _____ / #: _____ 718180 _____

SHIRLEY TUITUPOU
Notary Public State of Utah
My Commission Expires on:
January 15, 2025
Comm. Number: 718180



# Clinton County

## JENNIFER L. HOY

Register of Wills, Recorder of Deeds
and Clerk of Orphans' Court
2 Piper Way - Suite 239
Lock Haven, PA 17745
Phone: 570.893.4010 Fax: 570.893.4273

---

**RECEIPT FOR PAYMENT**

Instrument Number: 2023-000504

Instrument Type: ASSIGNMENT

Indexed Party: CAREY MICHAEL E

Receipt Date: 2/22/2023

Receipt Time: 10:51:15

Receipt No.: █████████

Book#: 2023      Page#: 0504

### Receipt Distribution

| Fee/Tax Description | Payment Amount |
| --- | --- |
| ASSIGNMENT | 16.25 |
| ASSIGNMENT - WRIT | .50 |
| J.C.S. / A.T.J. | 40.25 |
| CO IMPROVEMENT FND | 2.00 |
| REC. IMPRVMT FUND | 3.00 |
| Check# ██████ | $62.00 |
| Total Received........ | $62.00 |

Paid By Remarks: SELECT PORTFOLIO

**Prepared by:**
Select Portfolio Servicing, Inc.
3217 S DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

**When Record Return To:**
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602



UPI #: ▮▮▮▮▮▮

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #: ▮▮▮▮▮▮
PA/CLINTON

**RECORD 2ⁿᵈ**

Assignment Prepared on: January 05, 2023

**ASSIGNOR: FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE:  TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 8/24/2009, in the amount of $39,000.00, executed by MICHAEL E CAREY to SOVEREIGN BANK and Recorded: 9/11/2009, Instrument #: 2009-04721 in CLINTON County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By: _~~~~~~~~~~~_

The property is located in the Township of PINE CREEK.
Property Address: 150 BIG PINE LANE, JERSEY SHORE, PA, 17740

Document References:
- Assignment Dated: __FEB 0 8 2023__ from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS NOMINEE FOR TOWD POINT MORTGAGE TRUST 2020-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, ITS SUCCESSORS AND ASSIGNS to FIRSTKEY MORTGAGE, LLC To Be Recorded Concurrently.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

2023-00504

FIRSTKEY MORTGAGE, LLC BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT

On: _____ FEB 0 8 2023 _____

By: _____

Name: _____
       Shanda Swilor
       Document Control Officer

Title: _____

State of UTAH
County of SALT LAKE

On _____ FEB 0 8 2023 _____, before me,
_____, a Notary Public in and for SALT LAKE in the
Shirley Tuitupou
State of UTAH, personally appeared ___ Shanda Swilor _____,
_____, FIRSTKEY MORTGAGE, LLC BY SELECT
Document Control Officer
PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Shirley Tuitupou
Notary Expires: _____ JAN 1 5 2025 _____ / #: _____ 716180 _____

SHIRLEY TUITUPOU
Notary Public State of Utah
My Commission Expires on:
January 15, 2025
Comm. Number: 716180


# Sovereign Bank

| | |
|---|---|
| **HOME EQUITY LINE OF CREDIT AGREEMENT** ("Agreement")<br>☒ **New Agreement**　　☐ **Amendment** | Date: AUGUST 24, 2009 |
| Borrower: MICHAEL E CAREY | Account No.: ███████ |
| Borrower: | Credit Limit: $　　　39,000.00 |
| "Premises" Secured by Mortgage/Loan Security Agreement:<br>　　150 BIG PINE LANE , JERSEY SHORE, PA  17740 | |
| Lot/Book/Volume:　　　　　Block/Page: | City Register File #: |

We, Sovereign Bank, its successors and assigns, have approved your application for a new Home Equity Line Of Credit Account ("Account") or for an amendment to your existing Account.  You, the person(s) who sign(s) as Borrower(s) below, may obtain advances charged to your Account up to your Credit Limit shown above.  **Under certain circumstances, we can: (1) terminate your Account, require you to pay us the entire outstanding balance in one payment, and charge you certain fees; (2) refuse to make additional extensions of credit; and (3) reduce your Credit Limit.**  These circumstances are described in the paragraph labeled **"Our Absolute Obligation to Make Advances"** which begins on Page 3.

**DEFINITIONS:**  As used in this Agreement (unless the context requires otherwise): "Annual Percentage Rate" means the annualized cost of the advances charged to your Account as the result of applying a Periodic Rate to your daily Account balances each billing cycle, "Finance Charge" means the dollar amount the advances charged to your Account will cost you, "New Balance" means the sum of the advances charged to your Account and our charges at the end of the billing cycle, "Periodic Rate" means the cost of the advances charged to your Account as a daily rate, and "Statement" means the monthly statement of our charges for your use of the Account.

**ADDITIONAL DEFINITIONS:**  "New Agreement" – if the "New Agreement" box above is checked, this Agreement is for a new Account.  "Amendment" – if the "Amendment" box above is checked, this Agreement amends your existing Account.

**AMENDMENT:**  If this Agreement is an amendment to your existing Account, the terms and conditions of your existing Account are amended as provided in this Agreement.  This Agreement does not extinguish your existing agreement or Account.  This Agreement amends your existing Account and agreement to the extent of the provisions contained in it, such as the applicable Annual Percentage Rate, the Margin and Index applied to determine the rate, the computation of the Finance Charge, all other Fees and Charges, as well as the other terms set forth in this Agreement.  This Agreement may also amend your Account to add a Fixed Rate Lock Conversion Option, which is described below.  In the event of any conflict in terms between this Agreement and your existing agreement, the terms and conditions of this Agreement will control.

**TAX DEDUCTIBILITY:**  You should consult a tax advisor regarding the deductibility of interest and charges for your Account.

**CREDIT LIMIT:**  This Agreement covers a revolving line of credit for the principal amount specified above as your "Credit Limit" under this Agreement.   If this Agreement amends your Credit Limit, then the Credit Limit shown above is the combined amount of the Credit Limit under your existing agreement and any increase or decrease, as applicable, in your Credit Limit resulting from this amendment.  You may borrow against this line of credit, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit during the Draw Period described below.  Your Credit Limit is the maximum amount you may have outstanding at any one time.  You agree not to attempt, request, or obtain an advance that will make your Account balance exceed your Credit Limit.  Your Credit Limit will not be increased should you overdraw your Account.  If you exceed your Credit Limit, you agree to repay immediately the amount by which your Account exceeds your Credit Limit, even if we have not yet billed you. While we are processing any payment you make and before we have posted that payment to your Account, your Credit Limit may not reflect that payment. In addition, we do not have to post a payment to your Account if we have reason to believe that the check or other instrument you sent to us as payment will not be honored.  We may also delay reinstating your Credit Limit for the amount of any principal payment you make until we reasonably believe that the instrument you used to make your payment has been paid.

**ADVANCES & TERM:**  Unless extended by amendment, the length of the period of time during which you can obtain advances on your Account is Ten (10) years and is referred to in this Agreement as the "Draw Period".  If this Agreement is an amendment, your current Draw Period will be extended to .  You can obtain advances during the Draw Period by drawing one of the special checks that we will supply to you to directly obtain advances on your Account. Or, you can use any instrument or device that we may later provide to you to access your Account. You may not obtain an advance on your Account to pay the Minimum Payments due on your Account.

After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain advances on your Account.  The length of the repayment period is 15 years from the end of the Draw Period, as it may have been extended, with a final payment due on the following date of maturity: 07/24/2034.

**STATEMENTS:**  We will send you a Statement at the end of any billing cycle in which an advance, payment or credit is posted to your Account, we impose any charge, or if you have a balance on your Account.

**OUR SECURITY INTEREST**:  As security for all sums you owe on your Account, including future advances and our finance and other charges, all of the owners of the Premises have executed a Mortgage/Loan Security Agreement on the above date in our favor.  We will take a security interest in your home.  You could lose your home if you do not meet the obligations in your agreement with us.  Our rights in the Premises and the obligations of the Owners are more fully described in the Mortgage/Loan Security Agreement.  If this Agreement is an amendment, your existing Mortgage/Loan Security Agreement and the lien in our favor on your Premises created by it will continue uninterrupted.  If we request, you agree to execute a modification and extension to that Mortgage/Loan Security Agreement on the same date as this Agreement, which increases or decreases the Credit Limit, or extends the Draw Period, or both, as applicable.

### OUR CHARGES FOR YOUR ADVANCES:

**1. Periodic Finance Charges:** A daily Periodic Finance Charge will be imposed on all advances made to your Account imposed from the date of each advance based on the "average daily balance" method. To get the average daily balance we take the beginning balance of your Account each day, add any new advances and subtract any payments or credits and any unpaid Finance Charges. This gives us the "daily balance". Then we add up all of the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance. We compute the Periodic Finance Charge on your Account as follows. We multiply the average daily balance by the number of days in the billing cycle, and multiply the product by the daily Periodic Rate.

   a.  Rate Changes.  We will determine the Periodic Rate and the corresponding Annual Percentage Rate monthly as follows: We start with an independent index which is the highest rate reflected as the latest U.S. Prime Rate published in the Money Rates table of The Wall Street Journal (the "Index").  We will use the most recent Index value available to us as of the first business day of the calendar month to make any Annual Percentage Rate adjustment.  The Index is not necessarily the lowest rate charged by us on our loans.  If the Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you.  To determine the daily Periodic Rate that will apply to your Account, we add   1.240   percentage points (which includes any applicable Preferred Rate Reduction described below) (the "Margin") to the value of the Index, and then divide the result by the number of days in a year.  To obtain the Annual Percentage Rate that corresponds to the Periodic Rate, we multiply the daily Periodic Rate by the number of days in a year.  This result is the Annual Percentage Rate that corresponds to the Periodic Rate.  This Annual Percentage Rate includes only interest and no other costs.

The Periodic Rate and the corresponding Annual Percentage Rate may increase or decrease as often as once each month.  The Periodic Rate and the corresponding Annual Percentage Rate will also increase upon the termination of any applicable Preferred Rate Reduction described below. The maximum **ANNUAL PERCENTAGE RATE** that can apply during the term of this Agreement is the lesser of 18% or the maximum rate allowed by applicable law. The **ANNUAL PERCENTAGE RATE** will never be less than 3.99%. Except for this 3.99% minimum and this 18% maximum (or, if less, the maximum rate allowed by applicable law), there is no limit on the amount by which the Annual Percentage Rate or the corresponding Periodic Rate can change during any one-year period. The maximum interest payment for a 30 day period at the highest **ANNUAL PERCENTAGE RATE** permitted hereunder (18%) based on your Credit Limit shown above would be $      576.99.

Adjustments to the Periodic Rate and the corresponding Annual Percentage Rate resulting from changes in the Index will take effect monthly, beginning with the first day of the first billing cycle in the calendar month.

**Preferred Rate Reduction:** If you have asked us to automatically deduct your Minimum Payment from your Sovereign checking, money market or statement savings account, your Margin, Periodic Rate and your Annual Percentage Rate described in the paragraph entitled **OUR CHARGES FOR YOUR ADVANCES** reflect a reduction in the Margin (the amount of this reduction is the Preferred Rate Reduction). If you authorize us to automatically deduct your minimum monthly payments from a Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking, or Premier Money Market Savings or other qualifying account, your margin (and Annual Percentage Rate) has been reduced by .50%. If you authorize us to automatically deduct your minimum monthly payments from any other Sovereign deposit account, your margin (and Annual Percentage Rate) has been reduced by .25%. If the automatic deduction service stops for any reason, your Margin, and thus your Annual Percentage Rate, will increase by 0.250 or 0.500 percentage points, as applicable, and your corresponding Periodic Rate will also increase. You may stop this automatic deduction service by telling us or by closing your Sovereign checking, money market or statement savings account. We may stop this automatic deduction service if you do not maintain enough funds in your checking, money market or statement savings account to pay your Minimum Payment.

   b.  The Initial Rate.  Based on the Index and Margin and any applicable Preferred Rate Reduction in effect on the day you signed this Agreement, and subject to any minimum or maximum **ANNUAL PERCENTAGE RATE** set forth in this Agreement, the initial **ANNUAL PERCENTAGE RATE** is  4.490%, which corresponds to an initial daily Periodic Rate of  0.01230%.

**Loan Protection Plan(s):**  If you have purchased the optional Sovereign Loan Protection Program, additional fees will be charged.  Please see your Loan Protection Plan Agreement and related disclosures for additional details.

**2. Late Charges:**  If your Minimum Payment is not received within 15 days of the Payment Due Date shown on your Statement, we will impose and you agree to pay a Late Charge of 10% of the unpaid portion of the Minimum Payment or $20, whichever is greater.

Case 4:23-bk-02191-MJC    Doc 83    Filed 06/25/24    Entered 06/25/24 08:00:55    Desc
Main Document      Page 24 of 37

**3. Application Fee:** We will charge a non-refundable fee of $400 only when the Account is opened and used for Swing Line purposes. *(A Swing Line is interim financing secured by the existing property and is used for the purchase of a new residence prior to the sale of the existing property. A Sovereign Bank Swing Line is available only when the financing for the purchase of the new residence is obtained through Sovereign Bank.)*

**4. Termination Fee:** If you request that we close your Account within 30 months of the Date of this Agreement shown above and you were not required to pay any closing costs when the Account was opened, we will impose a Termination Fee of $220. We will waive this fee if your Account is refinanced with us or if the Account was used for Swing Line purposes.

**5. Fixed Rate Lock Fee:** We may charge a fee of $50 to your Revolving Account for each Fixed Rate Lock. This fee is a **FINANCE CHARGE**. Please see the paragraph below entitled "Fixed Rate Lock Conversion Option."

**6. Annual Fee:** You will be charged and you agree to pay an Annual Fee of $50.00 during the Draw Period. The Annual Fee will be charged in the 13th month after you open the Account and in about the same billing cycle of each following year during the Draw Period. If you have a Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking or other qualifying account, your Annual Fee will be $0. If you close your Sovereign Premier, Business Owner Premier, Partnership, Team Member Private or Team Member Checking or other qualifying account you will be charged an Annual Fee of $50.00 during the Draw Period.

**7. Other Charges:** We impose the following additional charges on your Account:

a.      We impose a Return Item Charge of $33.00 whenever your payment is returned for insufficient funds or any other reason.

b.      We will charge you $20.00 for each hour (or portion of an hour) of research that we perform at your request, unless done in connection with a proper written notice of a billing error.

c.      We will charge and you agree to pay an overlimit fee of $33.00 , when any special check or other request for an advance would cause you to exceed the Credit Limit, whether or not we honor your request.

d.      If a traditional appraisal was obtained and you request a copy in the first 90 days from the date this loan was closed, you will pay us a charge at the rate of $5 per page.

e.      If you request a copy of any document, including a special check or a Statement, we will impose a charge of $5 per page for each copy you request. If your request is related to a billing error (see "Yo ur Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

f.      We will charge and you agree to pay a fee of $25 whenever you request that we stop payment of a special check or other request for an advance on your Account.

g.      We charge you for our actual costs of Credit Reports and Appraisals incurred in investigating whether any condition permitting us to temporarily suspend credit availability or reduce the Credit Limit on your Account continues to exist.

h.      The current applicable fee to discharge the Mortgage or terminate any UCC Financing Statement securing this extension of credit and any extension or modification of it will be added to the payoff amount. Except as otherwise required by law, this fee will be waived if you agree to record the discharge of the mortgage or terminate any UCC Financing Statement yourself.

i.      If you request us to send you a payoff statement by facsimile transmission, we will charge you our then- current fee (currently $20)  that will be added to your payoff amount.

**MINIMUM PAYMENT:** You promise to pay the advances and our Finance Charges and other charges as provided in this Agreement. To the extent your payments reduce the outstanding balance to an amount less than the Credit Limit, they restore your credit availability during the Draw Period. Whenever a balance is outstanding, each month you must pay us a Minimum Payment, which we must receive by the Payment Due Date shown on your Statement. The amount of any Minimum Payment or any other payment that is applied to principal or interest (Finance Charge) on your Account may vary, based upon when payments are received. You may at any time pay more than the Minimum Payment without incurring a penalty, but if you request that we close your Account under the circumstances set forth in subparagraph 4 of the paragraph of this Agreement entitled "Our Charges For Your Advances", we will impose a Termination Fee as set forth in that subparagraph. If you make a payment that exceeds your Minimum Payment, or make an additional payment when no payment is then due, we will apply the excess or additional payment amount to any balance in the Revolving Account portion of your Account before we apply it to any Fixed Rate Lock(s) you may have established on your Account.

**RECEIPT OF PAYMENTS:** All payments must be made by check, automatic account debit, electronic funds transfer, money order, or other instruments in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 5:00 PM Eastern Standard Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt. If you have elected to make your payments by automatic account debit, payment transfers will be processed on the date the payment is due monthly. If the scheduled date falls on a Sunday or a bank holiday, the transfer will be processed on the next business day. If funds for the payment are uncollected or insufficient on the transfer date, an insufficient funds charge may be assessed. If the payment is returned to us, the payment will be your responsibility for that month. If you do not maintain sufficient funds to process your payment transfer, your preauthorized transfer may be cancelled and any Preferred Rate Reduction may be terminated. Payments received at any of our branch offices on a business day (Monday - Friday) before the cut off time posted at that office will be credited to your account as of the date of receipt. Payments received on a non-business day (Saturday, Sunday or a bank holiday) or after the posted cut off time will be credited to your account as of the following business day. Payments received by any other method on a non-business day will also be credited as of the following business day.

BANK COPY

**ELECTRONIC PAYMENT:** Each time you make a payment by check, we may convert your check into an electronic payment. By sending us a check, you authorize us to convert your check. When we do this, the funds may be withdrawn from your account more quickly than if we processed your original check so always make sure you have enough funds in your account to make your payment. After we convert it, your check will not be sent back to you because we are required to destroy it. We do, however, keep an electronic copy. If you do not wish us to convert your check or if you need more information, please call us at 877-768 2265.

**PAYMENT OPTIONS:**

**Payment Option 1:** ☐ If the box preceding this sentence is checked, for any billing cycle during the Draw Period, your Minimum Payment will be equal to the sum of (i) all accrued Finance Charge and other charges for the billing cycle (minimum $20), plus (ii) optional Loan Protection Plan(s) fees, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance of principal at the end of the Draw Period, or $20, whichever is more, plus (ii) all accrued Finance Charge for the billing cycle, plus (iii) optional Loan Protection Plan(s) fees, if any, plus (iv) any other fees and charges and any amounts past due. You must also pay any Late Charges then outstanding. The amount of your Minimum Payments may increase if the Annual Percentage Rate increases. **NOTE: Although interest-only payments may be less on a monthly basis, they retire no principal, may prolong the obligation, and result in greater total expenses over the life of the loan.**

**Payment Option 2:** ☒ If the box preceding this sentence is checked, for any billing cycle during the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/240th of the average daily balance plus all accrued Finance Charge at the end of the billing cycle, or $20, whichever is more (or the entire balance if less than $20), plus (ii) optional Loan Protection Plan(s) fees, if any, plus (iii) any other fees and charges and any amounts past due or in excess of your Credit Limit. For any billing cycle after the end of the Draw Period, your Minimum Payment will be equal to the sum of (i) 1/180th of the outstanding balance of principal at the end of the Draw Period, or $20, whichever is more, plus (ii) all accrued Finance Charges for the billing cycle, plus (iii) optional Loan Protection Plan(s) fees, if any, plus (iv) any other fees and charges and any amounts past due. You must also pay any Late Charges then outstanding. The amount of your Minimum Payments may increase if the Annual Percentage Rate increases.

**Change to Payment Option:** After you choose a Payment Option, you may ask us to change your Payment Option during the Draw Period, as long as we consider your Account to have been in good standing at all times. Any changes in your Payment Option must be for a period of not less than 12 months.

**RIGHT OF SET OFF:** You authorize us to apply money from your deposit account(s) with us, now or in the future, to pay all or any part of any amount past due under this Agreement, without notice.

**AUTOMATIC PAYMENT AUTHORIZATION:** If an account number is inserted in the following space, you authorize us to deduct the amount of your Minimum Payment on the Payment Due Date shown on your Statement from your checking, money market or statement savings account; (Account Number: ██████████ ) with us, or with N/A _____ and to make the payment then due on your Account.

**PROPERTY INSURANCE:** You must obtain and maintain adequate insurance against fire, flood and such other reasonable risks to the Premises as we require. This insurance protects your interests and our interests in the Premises when this Agreement is in effect. YOU MAY OBTAIN SUCH INSURANCE FROM ANY AGENT, BROKER OR INSURANCE COMPANY OF YOUR CHOICE which is licensed to do business in the state where the Premises are located, and your choice of insurance agent, producer, broker or insurance company will not affect our credit decision. However, we reserve the right to refuse to accept any insurance company or policy for reasonable cause. The policy must name us as "mortgagee" and provide us with not less than 30 days' notice of any cancellation or reduction in coverage. You must provide us with evidence of such insurance coverage promptly after our request. In the event of an insured loss, you agree to promptly advise us of the loss and to file a proof of loss with the insurance company. You appoint us your attorney-in-fact, in your name or in ours, to file a proof of loss if you fail or refuse to do so, and to endorse your name to any check, draft or other instrument in payment of an insured loss. We will allow you and the Owners to apply the insurance proceeds to repair the Premises but only if we have not previously declared your Account to be in default, temporarily reduced your Credit Limit or frozen your Account, and the repairs are done properly.

**OUR ABSOLUTE OBLIGATION TO MAKE ADVANCES:** Except as provided below, our agreement to make advances to you during the Draw Period is an absolute obligation on our part. This means we MUST make each and every advance you properly request during the Draw Period, up to your Credit Limit, under this Agreement. However, our absolute obligation to make advances to you during the Draw Period ends when any of the following happens:

**1. We declare your Account to be in default,** which we can do when:
a. You fail to meet the repayment terms of this Agreement for any outstanding balance.
b. There is fraud or a material misrepresentation by you in connection with your Account.

c. Any action or inaction by you adversely affects our security for your Account, or any right we have in such security. Among other things, such action or inaction would include:

    - the sale or transfer of title to the Premises without our consent,
    - your abandonment of the Premises, which adversely affects our security in the Premises,
    - your failure to maintain the required property insurance coverages on the Premises,
    - your failure to maintain the Premises in good condition and repair, which adversely affects our security in the Premises,
    - your permitting anything to be done to the Premises that would constitute waste or destruction of the Premises, or that would render the Premises unsafe or unfit for human habitation (such as by bringing or storing hazardous or toxic substances on the Premises), which adversely affects our security in the Premises,

Case 4:23-bk-02191-MJC   Doc 83   Filed 06/25/24   Entered 06/25/24 08:00:55   Desc
Main Document    Page 26 of 37

- your doing of any unlawful act that subjects the Premises to seizure by governmental authorities,
- your failure to pay taxes on the Premises,
- your permitting any liens to be filed on the Premises which are superior to ours,
- foreclosure by any prior mortgagee or lienholder which adversely affects our interest in the Premises,
- a taking of all or part of the Premises in a proceeding in eminent domain or condemnation,
- the death of the sole Borrower obligated on your Account, or if there are more than one of you, the death of any of you or any Owner of the Premises that results in a transfer of title to the Premises to a person who is not a party to our security interest in the Premises or that otherwise adversely affects our security in the Premises, or,
- if the Premises is a cooperative apartment, you break any of the promises you have made under the proprietary lease of the Premises, your proprietary lease is cancelled or terminated, the cooperative corporation fails to pay when due any mortgage payments, leasehold payments and/or real estate taxes it is obligated to pay, or to insure the building in which the Premises is located, or foreclosure, bankruptcy or insolvency proceedings are brought by or against the cooperative corporation, and any of such adversely affects our security or any right we have in the security.

If one or more of the above events occurs, we can temporarily or permanently reduce your Credit Limit or suspend your ability to obtain advances, or we can declare your Account in default. However, we can declare your Account in default only by personally delivering or mailing to you a written Notice of Default. Our Notice of Default will become effective when we personally deliver it to you or place it in the mails, even though you might not receive our mailed Notice of Default. If we declare your Account in default we will immediately terminate credit availability on your Account. If we choose, we may also send you a Notice of Intention to Take Action, advising you that if you do not cure the default within the time period then provided by law, we will demand repayment of the entire outstanding balance in one immediate payment and exercise our security interest and right of set-off against any of your property, including deposit accounts, then in our possession (unless prohibited by applicable law).

Except as otherwise provided below, if we don't receive payment in full, we may also foreclose upon the Premises and take any other collection action allowed to us by law. You agree to pay our court costs and collection fees we incur in the collection and enforcement of your Account, as well as our reasonable attorney's fees, to the extent permitted by law, if we refer your Account to an attorney or collection agency for collection. You agree to pay Finance Charges at the variable Annual Percentage Rate provided in this Agreement on the outstanding balance of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never been in default, but you will not restore your right to obtain additional advances on your Account.

If one or more of the above events occurs, we may elect to waive our right to declare your Account in default. If we waive that right, we will remain absolutely obligated to make all advances you properly request on the Account during the Draw Period. However, that waiver does not bind us if a similar or different event occurs later. At that time, we have the right to decide whether to declare your Account in default.

**For New Hampshire Borrowers**: If we don't receive payment in full, we may also foreclose upon the Premises and take any other collection action allowed to us by law. You agree to pay us all reasonable costs we incur to collect this debt or realize on any security, to the extent permitted by law. This includes court costs, attorney fees for services rendered by an attorney for collection when the attorney is not our salaried employee, and/or collection agency fees. However, if you prevail in any action, suit or proceeding we bring or in an action you bring, reasonable attorneys' fees shall be awarded to you. If you successfully assert a partial defense, setoff, recoupment or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the court deems appropriate. You agree to pay Finance Charges at the variable Annual Percentage Rate provided in this Agreement on the outstanding balance of your Account until we receive payment in full, even if we have demanded payment in full or obtained a judgment against you. If you cure the default in the manner provided by law you will restore your right to make Minimum Payments each month as if you had never been in default, but you will not restore your right to obtain additional advances on your Account.

**2. All of you request final termination of your Account.** Final termination at the request of all of you will become effective as soon as we terminate your ability to obtain advances and all sums owed to us and our charges are paid in full. At that time, we will terminate the security interest or provide appropriate documents to you to enable you to terminate the security interest in the Premises.

**3. You or we temporarily reduce your Credit Limit or temporarily suspend your ability to obtain advances,** which can be done only if any one or more of the following events occur:
a. Any of you notify us, in person or in writing, of an intention to terminate your Account, or that you do not want to be obligated for any advances obtained or to be obtained by any others on the Account (except in connection with a good faith billing dispute), or any Owner advises us of an intention not to obligate the Premises for existing or future advances. We will treat a request for termination by less than all of you, or by an Owner who is not also a Borrower, as a request for temporary suspension. Such suspension will become effective as soon as we can reasonably act to stop new advances from being made on your Account. However, we may honor any and all requests for advances which were made or are dated prior to that time.

b. Any of the following things happen and we choose to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances:
  (1) The value of the Premises declines significantly below its original appraised value.
  (2) We reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances.

BANK COPY

(3) We are precluded by government action from imposing the Annual Percentage Rate provided in this Agreement.

(4) The priority of our security interest in the Premises is adversely affected by government action to the extent that the value of our security interest is less than 120 percent of the Credit Limit.

(5) You are in default of any of the following "material obligations" under this Agreement:

    (a) Any of you fails to honor your obligations on any prior security interest in the Premises.

    (b) Any of you does not pay any other obligation you owe to us or to others as and when that obligation comes due, or a proceeding is begun by or against any of you under the Federal Bankruptcy Code.

    (c) Any of you are incarcerated or declared legally incompetent.

    (d) Any of you fails to promptly provide us with satisfactory financial information which we may request from time to time or to cooperate with us in appraising the Premises which we may elect to do from time to time.

    (e) If there are more than one of you, the death of the person on whose income we primarily relied in agreeing to open the Account for you.

    (f) You move out of the Premises or convert the Premises from your residence or vacation home to an investment or rental property.

    (g) You permit an intervening lien to be filed against the Premises that would take priority over future advances made by us.

(6) We are notified by our regulatory agency that continued advances on your Account constitute an unsafe and unsound practice.

(7) The maximum Annual Percentage Rate is reached.

(8) An event occurs which gives us the right to declare your Account to be in default.

We will send you a Notice Of Credit Freeze not later than three business days after we take such action, advising you of the specific reasons for our action. Our Notice Of Credit Freeze will advise you that you may request reinstatement of your credit privileges when the condition which led to our action no longer exists (and provided that no other condition listed above exists that would allow us to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances).

**4. The Draw Period Ends.**

**YOUR OBLIGATIONS CONTINUE ON TEMPORARY SUSPENSION:** Upon temporary suspension, whether by you or by us, you remain obligated to repay all amounts owed to us as provided in this Agreement, including our Finance Charges and other charges. This means you must continue to make at least the Minimum Payments each month under the terms of this Agreement.

**REINSTATEMENT:** You may request reinstatement of the credit privileges on your Account for the remainder of the Draw Period at any time after the condition that permitted us to temporarily reduce your Credit Limit or suspend your ability to obtain advances ceases to exist (provided that no other condition exists that would allow us to freeze your Account by temporarily reducing your Credit Limit or suspending your ability to obtain advances). If you request reinstatement you may be required to pay any reasonable appraisal and credit report fees we actually incur in investigating whether any condition permitting the freeze continues to exist. We will reinstate credit privileges on your Account when we find that those conditions have ceased to exist. If any one of you or any Owner of the Premises requested temporary suspension of the Account, we will reinstate your Account for the remainder of the Draw Period if all of you advise us in writing of a desire to reinstate the Account. However, we may refuse to reinstate your Account until we are assured that our rights in any security for your Account have not been adversely affected by the temporary freeze.

**TAXES; REPAIRS:** You agree to pay all taxes on the Premises and to maintain the Premises in good condition and repair.

**OTHER ADVANCES:** If you fail to purchase property insurance, or do not pay taxes when they come due, or do not properly maintain the Premises, we may, if we choose (but without any obligation on our part), advance sums on your behalf for these purposes in order to protect our interest in the Premises. Any advances we make on your behalf will not excuse you from your failure to honor your promises and obligations in this Agreement. The amounts we advance on your behalf will be charged to your Account in the same manner as any other advance made by us to you hereunder.

**OWNERSHIP OF SPECIAL CHECKS:** You agree that the special checks and any other credit instruments or devices which we may supply to you to use in connection with your Account are our property. Unused special checks and any other credit instruments or devices must be returned to us immediately upon demand. We will retain all special checks and other credit instruments you draw in connection with your Account.

**PROOF OF ADVANCES:** Your Statements will indicate the current status of your Account and identify the transactions posted during the billing cycle. If you need evidence of an advance or other transaction, we will provide you with a photographic or other reasonable reproduction of any special check or other document that you request. You agree that such evidence will be satisfactory to you for all purposes.

**REFUSAL TO HONOR REQUESTS FOR ADVANCES:** We will not be responsible if, for any reason, anyone fails or refuses to honor special Account checks or any other credit instrument or device we provide to you to obtain advances on your Account.

**AMENDMENTS:** We may amend this Agreement by entering into a separate written agreement with you, or by making a change that is either beneficial to you or insignificant. However, you will be responsible for increases in taxes and property insurance premiums on the Premises. If we temporarily reduce the rate or fees charged on your Account below those contained in this Agreement, we can impose the agreed rate or fees by giving you notice of the change in terms.

066 (rev 03/09)

- 6 -

BANK COPY

The paragraphs in this Agreement that are entitled "Advances & Term," "Our Charges for Your Advances, #1. Periodic Finance Charges" "Payment Options," "Change to Payment Option" and "Our Absolute Obligation to Make Advances" assume that you have not elected the Fixed Rate Lock Conversion Option described below. However, if you elect the Fixed Rate Lock Conversion Option, the following terms modify the above-listed paragraphs, as described below:

FIXED RATE LOCK CONVERSION OPTION:
After you open your Home Equity Line of Credit Account, you may ask us to change your variable interest rate to a fixed rate of interest on all or a portion of your principal balance ("Fixed Rate Lock"), as long as we consider your Account to have been in good standing at all times. This option will be available only during the Draw Period. If there is more than one Borrower on your Account, all of you agree that we may establish a Fixed Rate Lock upon the request of any one or more of you.

The minimum amount of your principal balance for which you may elect a Fixed Rate Lock is $5,000. The repayment term for any Fixed Rate Lock must be at least 12 months and may not exceed 180 months or the maturity date of your Home Equity Line of Credit Account, whichever is earlier. You may have up to four Fixed Rate Locks outstanding on your Account at any one time. However, you may not transfer a Fixed Rate Lock balance to a new Fixed Rate Lock balance for a period of 12 months following the establishment of the Fixed Rate Lock balance, and you may not transfer additional amounts to any Fixed Rate Lock once it has been established. The portion of your credit line that is not transferred to a Fixed Rate Lock is called your Revolving Account. The amount of each Fixed Rate Lock will reduce your available credit on your Revolving Account. As you repay the principal balance of each Fixed Rate Lock, your available credit on your Revolving Account will increase as a result.

The fixed rate of interest applicable to a Fixed Rate Lock will be determined at the time of each Fixed Rate Lock request and will be based on our current market rate at that time for Fixed Rate Home Equity Loans, except that the rate applicable to a Fixed Rate Lock will never be greater than 18% **ANNUAL PERCENTAGE RATE** or less than 3.99% **ANNUAL PERCENTAGE RATE**. The rate may depend on a number of factors, including loan amount, loan-to-value ratio, property type, credit history and the automatic payment deduction option, if any, you have selected. Once the rate of each Fixed Rate Lock has been established, that rate will not change. A recent **ANNUAL PERCENTAGE RATE** that we have charged on a $10,000 Fixed Rate Home Equity loan was 8.74%. This Annual Percentage Rate included only interest and not other costs. As an example, the monthly payment for a Fixed Rate Lock of $10,000 at 8.74% **ANNUAL PERCENTAGE RATE** for a period of 120 months would be $125.27. The amount of each   Fixed Rate Lock payment will be included in your minimum Payment Due on your monthly statement.

Regardless of the Draw Period Payment Option you select on your Revolving Account, repayment of each Fixed Rate Lock will be based on substantially equal monthly payments for a term you choose (but not to exceed 180 months or the maturity date on the Account, whichever is earlier) in an amount sufficient to repay the principal balance of each Fixed Rate Lock, together with interest at the Annual Percentage Rate for each Fixed Rate Lock. A daily periodic Finance Charge will be imposed on your Fixed Rate Lock balance from the date each Fixed Rate Lock is established, based on the "average daily balance" method. The amount of your final payment for each Fixed Rate Lock may vary, depending on whether your monthly payments are received early, on time, or following their due dates. After each Fixed Rate Lock is established, the minimum monthly Payment Due on your Account will include the minimum monthly payment for your Revolving Account described above, plus the minimum monthly payments for all Fixed Rate Locks outstanding. The minimum monthly Payment Due for your Account will be reflected on your monthly billing statement. Payments received will be applied to the minimum monthly payment for each Fixed Rate Lock in the order each Fixed Rate Lock was established. We may charge a fee of $50 to your Revolving Account for each Fixed Rate Lock. This fee is a **FINANCE CHARGE.**

BINDING EFFECT: If more than one of you signs as Borrower, each of you will be liable, separately and together, for all advances obtained on the Account. All of you agree that any one or more of you may obtain advances on the Account. This Agreement obligates you and your estate, heirs and personal representatives and benefits us and our successors and assigns. We may add or release parties, or permit the addition or substitution of collateral subject to our security interest, or modify, extend or amend this Agreement without in any way affecting your obligations on this Agreement.

CONTINUED EFFECTIVENESS: If we honor special Account checks or other requests for advances after your death or declaration of legal incompetency, but before we receive actual written notice of either event, those advances will be valid, legal and binding obligations on you and your estate, heirs and personal representatives.

IRREGULAR PAYMENTS; DELAY IN ENFORCEMENT: We may accept partial or late payments of sums due on your Account without losing any of our rights under this Agreement. We may even accept checks or drafts marked "paid in full" or with similar language indicating that our accepting the payment would be in full satisfaction of your outstanding balance, without being bound by that language or losing any of our rights under this Agreement. Any such payments must be mailed to: Sovereign Bank, Mail Stop 10-421-CP2, Consumer Finance, P.O. Box 12646, Reading, PA 19612. We can delay enforcing our rights under this Agreement without losing them.

CREDIT REPORTS AND APPRAISALS: From time to time, we may review your Account to determine whether, in our reasonable opinion, a material change has occurred in your financial circumstances that would leave you unable to fulfill the repayment obligations under this Agreement. As part of such reviews, we may obtain additional credit reports on you, inspect or reappraise the Premises, and request additional financial information from you. You agree to cooperate with us in performing such reviews and to promptly provide satisfactory financial information to us.

BANK COPY

**ACCOUNT SERVICING:** You expressly consent to our using prerecorded /artificial voice messages and/or an automatic telephone dialing system while servicing or collecting your Account, as the law allows. In doing so, you agree that we and any assignee of the Agreement may use any telephone number you provide us including any number provided on the credit application even if that number is for a cellular telephone and/or our using the number results in charges to you.

**TRANSFER AND ASSIGNMENT:** Your rights under this Agreement belong only to you. You cannot transfer or assign them to anyone else. We may transfer and assign our rights and obligations under this Agreement and the Mortgage/Loan Security Agreement at any time without your consent. The person to whom we transfer and assign this Agreement and the Mortgage/Loan Security Agreement shall be entitled to all of our rights and subject to all of our obligations under this Agreement and the Mortgage/Loan Security Agreement. None of your obligations shall be affected by our transfer and assignment.

**APPLICABLE LAW; ENTIRE AGREEMENT:** You agree that this Agreement is to be governed by Pennsylvania law (without regard to principles of conflicts of law or choice of law), except and to the extent governed by federal law applicable to federal savings banks, including 12 USC 1463 and 1464. If this is a New Agreement, it is the entire agreement between you and us. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

**YOU ACKNOWLEGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.** PLEASE RETAIN A COPY FOR YOUR RECORDS.

*Michael E Carey* _____ (SEAL)  
Borrower  
MICHAEL E CAREY

_____ (SEAL)  
Borrower

_____ (SEAL)  
Borrower

_____ (SEAL)  
Borrower

_____ (SEAL)  
Borrower

_____ (SEAL)  
Borrower

_____ (SEAL)  
Borrower

_____ (SEAL)  
Borrower

After Recording Return To:
Santander Bank, N.A.
Mail Code 10-6438-CC7
601 Penn St., Reading, PA 19601

Tax ID# ███████████
This document was prepared by: <u>Madeline Perez</u>

_____[Space Above This Line For Recording Data]_____

# SANTANDER HOME LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1] Michael E Carey
Lender ("Lender"): SANTANDER BANK, N.A.
If applicable, Successor in interest to: Sovereign Bank with respect to the Note and Mortgage or
Security Instrument defined and modified in this Agreement.

Date of first lien or security instrument ("Mortgage") and Note ("Note"): <u>August 24, 2009</u>
Loan Number: ███████████
Property Address: <u>150 Big Pine Lane Jesey Shore PA 17740</u>("Property"):
        **(Attach Legal Description as Exhibit "A" if being Recorded)**

Original Recorded Date: <u>September 11, 2009</u>  County: <u>Clinton County</u>
Book/Instrument/Volume/Liber: <u>Book 2009</u>  Page: <u>04721</u>

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Santander Home Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, if applicable, and (2) the Note secured by the Mortgage.
The Note and Mortgage or Security Instrument together, as they may previously have been amended, are
referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have
the meaning given to them in the Loan Documents.

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Loan #: ███████████
████ MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship and, as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. If applicable, the Property has not been condemned;

   C. If applicable, there has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Santander Home Loan Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/31/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on 04/30/2014.

   A. The Maturity Date will be: 03/31/2039.

Loan #: ▮
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender ($2,329.19) but not previously credited to my Loan. The new principal balance of my Note will be $41,078.00 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 4.250% will begin to accrue on the New Principal Balance of $41,078.00 and the first new monthly payment on the New Principal Balance will be due on 04/30/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| [1-16] | 4.250% | 03/31/2014 | $295.24 | 04/30/2014 | [192] |

The above terms in this Section 3.C. will supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. Additional Agreements. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; or (ii) the Lender has waived this requirement in writing (although any person who signed the Loan Documents but does not sign this Agreement.

B. That this Agreement shall supersede the terms of any modification, forbearance, or other

Loan #: ▮▮▮▮
▮▮▮▮MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

workout plan that I previously entered into with Lender.

C. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property, if applicable, or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property. (IF APPLICABLE)

G. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

H. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

I. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Santander Home Loan Modification Program.

J. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (b) companies that perform support services for the Santander Home Loan Modification Program; and (c) any HUD certified housing counselor.

K. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

Loan #:

MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement.

SANTANDER BANK, N.A.
If applicable, Successor in interest to: Sovereign Bank with respect to the Note and Mortgage or
Security Instrument defined and modified in this Agreement.

By: _____  STEVEN FISHER
Title:                                            VP

COMMONWEALTH OF PENNSYLVANIA, BERKS COUNTY SS:

On this, the _15_ (day) of _APRIL_ (month), 201_4_, before me, a Notary Public,
personally appeared _STEVEN Fisher_, who acknowledged
themself to be the _____VP_____, of Santander Bank, N.A., a corporation, and
that he/she as such Officer, being authorized to do so, executed the foregoing instrument for the
purposes therein contained by signing the name of the Corporation by himself as such Officer.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE TOROK
Notary Public
READING CITY, BERKS COUNTY
Commission Expires Oct 24, 2017

Loan #: ▮▮▮▮▮▮▮
MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13

[BORROWER SIGNATURE PAGE]

_Michael E Carey_
Michael E Carey, Borrower

_Lycoming_____COUNTY SS:

On this, the _11_ (day) of _April_ (month), 201_4_, before me, a Notary Public,
personally appeared, Michael E Carey, Borrower(s), known to me (or satisfactorily proven), to be the
persons whose names are subscribed to the within instrument and acknowledged that they executed the
same for the purposes here in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Helen L. Worner, Notary Public
Hughesville Boro, Lycoming County
My Commission Expires Aug. 9, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Loan #: ▮▮▮▮▮▮
▮▮▮▮MASTER CONSUMER STEP MODIFICATION 1 BORROWER Rev. 10-17-13